Joel W. Baruch  SBN 85903
Corey A. Hall  SBN 295470
LAW OFFICE OF JOEL W. BARUCH, PC
2020 Main Street,  Suite 900
Irvine, California 92614
Telephone (949) 864-9662
Facsimile (949) 851-3185

Attorneys for Plaintiff REBECCA MADRID

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—EASTERN DIVISION

| | |
|---|---|
| REBECCA MADRID, | CASE NO. |
| Plaintiff, | *Assigned for All Purposes to:* *Dept.* |
| vs. | Date Filed: Trial Date: |
| COUNTY OF RIVERSIDE DISTRICT ATTORNEY'S OFFICE aka COUNTY OF RIVERSIDE, a public entity; MIKE HESTRIN, District Attorney for County of Riverside; VINCE FABRIZIO, Chief Deputy District Attorney for County of Riverside; HEIDI CHEBAHTAH, District Attorney Investigator— County of Riverside; DOE 1 FEMALE INVESTIGATOR, District Attorney- County of Riverside; and DOES 2 Through 25, Inclusive, | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| Defendants. | |

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1

COMES NOW, Plaintiff, REBECCA MADRID, who makes this Complaint for Damages and Demand for Jury Trial as follows:

### JURISDICTIONAL ALLEGATIONS

1. As to the federal law claims contained in this Complaint, the original jurisdiction of the United States District Court is invoked pursuant to 42 U.S.C. §1331, in that these federal claims involve federal questions with amounts in controversy over $75,000.

2. As to the state law claims contained in this Complaint, the supplemental jurisdiction of the United State District Court is invoked pursuant to 28 U.S.C. §1367, in that the state law claims and the federal law claims have common questions of law and fact.

3. Venue of this action in the Eastern District of California is sought pursuant to 28 U.S.C. §1391, in that both the state and federal law claims arose in the County of Riverside, State of California.

### GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4. Plaintiff, REBECCA MADRID (hereafter MADRID) is, and at all times herein mentioned was, a citizen of the State of California.  Up until her termination of employment on March 29, 2017, Plaintiff MADRID was a Deputy District Attorney, Step IV, for Defendant COUNTY OF RIVERSIDE.

5. Defendant, COUNTY OF RIVERSIDE DISTRICT ATTORNEY'S OFFICE aka COUNTY OF RIVERSIDE (hereafter RIVERSIDE COUNTY) is a law enforcement agency existing and operating within RIVERSIDE COUNTY.  At all times herein mentioned, Defendant RIVERSIDE COUNTY was the employer of Plaintiff MADRID until her termination from the employment on March 29, 2017.

6. Defendant, MIKE HESTRIN (hereafter HESTRIN), is, and at all times herein mentioned was, the District Attorney for Co-Defendant RIVERSIDE COUNTY.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

2

7. Defendant, VINCE FABRIZIO (hereafter FABRIZIO) is, and at all times herein mentioned was, a Chief Deputy District Attorney for Defendant RIVERSIDE COUNTY.

8. Defendant, HEIDI CHEBAHTAH (hereafter CHEBATAH) is, and at all times herein mentioned was, an investigator for District Attorney's Office of Co-Defendant RIVERSIDE COUNTY. On information and belief, Defendant CHEBAHTAH has recently retired from the District Attorney's Officer, but still is believed to be a citizen of the State of California.

9. Defendant, DOE 1 FEMALE INVESTIGATOR (hereafter DOE 1 INVESTIGATOR) is, and at all times herein mentioned was, an investigator with the District Attorney's Office of Co-Defendant RIVERSIDE COUNTY. Plaintiff will seek to amend this Complaint when the true name of Defendant DOE 1 FEMALE INVESTIGATOR is finally ascertained.

10. Plaintiff is not aware of the true names and/or capacities of those individuals or entities sued herein as DOES 2 Through 25 and, therefore, sues these DOE defendants by their fictitious names. Plaintiff will seek to amend this Complaint when the true names and/or capacities of these DOE defendants are finally ascertained.

11. At all times herein mentioned, Defendants HESTRIN, FABRIZIO, CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR, and DOES 2 Through 25, inclusive, were agents and employees of the District Attorney's office of Co-Defendant RIVERSIDE COUNTY. In doing the things hereinafter mentioned, said individual defendants were, at all times, acting with the course and scope of their employment with the District Attorney's Office of Co-Defendant RIVERSIDE COUNTY.

12. At all times herein mentioned, Defendants HESTRIN and FABRIZIO, , were policy-makers for the District Attorney's Office of Co-Defendant RIVERSIDE

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

3

COUNTY. Said Defendants HESTRIN and FABRIZIO, were also decision-makers in Plaintiff's alleged wrongful termination from her employment with the District Attorney's Office of Co-Defendant RIVERSIDE COUNTY.

13. As to the state law causes of action contained in this Complaint, Plaintiff MADRID filed a timely government tort claim exhausting her administrative remedies on September 19, 2017. A true and correct copy of this government tort claim is attached hereto as **Exhibit A**. Defendant, RIVERSIDE COUNTY, rejected this government tort claim by letter of October 5, 2017, a true and correct copy of which is attached hereto as **Exhibit B**.

## FACTS— RE EDUCATION AND LEGAL CAREER OF PLAINTIFF MADRID:

14. Plaintiff MADRID, with a date of birth of May 31, 1962, is an unmarried female attorney licensed to practice law in the State of California. Since December 4, 1990, Plaintiff MADRID has been admitted with the California State Bar to practice law in this state. Plaintiff MADRID does not have any record of public discipline for the last 27 years since being admitted to practice law in this state.

15. Plaintiff MADRID attended undergraduate studies and law school at the University of New Mexico. She entered the University of New Mexico with an academic scholarship. She made the Dean's List from 1982-1985, she was inducted into the Golden Key National Honor Society, and she also received a scholarship from the New Mexico Broadcaster's Association in the Spring of 1984. She graduated in May, 1985 with a Bachelor of Arts Degree in English Creative Writing.

16. Plaintiff MADRID attended law school at the University of New Mexico and obtained her J.D. degree in May, 1990. She received these honors in law school: (a) In the Spring of 1989, she was the Texas Young Lawyers Trial Competition Regional Champion; (b) In the Spring of 1989, she was the recipient of the American College of Trial Lawyers Medal for Excellence in Advocacy; and, (c) In the years 1989-1990, she was on the Honor Roll.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

17. Starting her career as a prosecutor in the County of Los Angeles District Attorney's in December of 1990, Plaintiff MADRID prosecuted misdemeanor and felony cases through August, 1993. She prosecuted felony cases of all types, including drug charges, fraud, credit card and identity theft, residential burglary, terrorist threats, armed bank robbery, indecent exposure, armed kidnap for robbery, mayhem, and first degree murder.

18. From August 1993 to July 1995, Plaintiff MADRID worked as a prosecutor in the district attorney's Workers Compensation Fraud Unit. In this capacity, she prosecuted complex medical/ legal insurance fraud cases. She participated in the drafting and execution of countywide search warrants involving hundreds of targets. She also conducted lectures and training for insurance company fraud investigators and fellow deputy district attorneys.

19. From July 1995 to August 1996, Plaintiff MADRID worked in the district attorney's City of Compton Branch Office. In that capacity, she prosecuted all classes of felony cases, including drug violations, armed robbery, assault with a deadly weapon causing great bodily injury, and first degree murder with personal use of an automatic assault rifle.

20. Plaintiff MADRID left the LA County District Attorney's Office in September 1996. She worked as a senior litigation associate in the firm of Richards, Watson & Gershon, PC for a little less than one year— August 1997. In that capacity, she litigated cases involving land use, zoning, eminent domain, and various aspects of municipal law. She also served on the associate hiring committee. She also lectured to the litigation department on appellate decisions impacting the validity of municipal ordinances. She also served as the Assistant City Prosecutor for the cities of Rancho Palos Verdes and Westlake Village, handling municipal ordinance violations. She was also invited as a guest lecturer to a trial advocacy class at the University of Southern California School of Law contrasting criminal and civil law practice.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

21.    In August of 1997, Plaintiff MADRID decided that a civil law practice was not what she wanted to pursue, and, accordingly, she was hired back as a deputy district attorney in the County of Los Angeles District Attorney's Office.  Her first assignment was as a prosecutor in the Central Trials section of that office.  In that capacity, she vertically prosecuted burglary, fraud, and violence crimes, kidnapping of a child under age 14, sexual abuse of a child, domestic violence, armed robbery, attempted murder, and first degree murder.  She also handled a felony trial court calendar.  She served in that particular job capacity until February of 1999.

22.    In February of 1999, while still a prosecutor in the County of Los Angeles District Attorney's Office, she served as a Deputy District Attorney in the Sexually Violent Predator section of the office.  In this capacity, she vertically prosecuted sexually violent predator commitment proceedings from inception to jury trial.  She also litigated issues relating to the diagnostic features of numerous psychiatric disorders as enumerated in the DSM-IV-TR and various statistical instruments used by psychologists and psychiatrists to measure those disorders.  She also presented a lecture to fellow deputy district attorneys on the elements of a Sexually Violent Predator Civil Commitment statute.  She served in that particular job capacity until June, 2011.

23.    In June of 2001, while still a prosecutor in the County of Los Angeles District Attorney's Office, she served as a Deputy District Attorney in the Elder Abuse section of the office.  In this capacity, she vertically prosecuted complex cases of real estate and bank fraud, theft by false pretenses, physical abuse and neglect, and violent crimes committed against elders.  She litigated issues involving diminished capacity, mental competency, dementia, and cause of death.  She served in that particular job capacity until January 2003.

24.     In January, 2003, while still a prosecutor in the County of Los Angeles District Attorney's Office, she served as a Deputy District Attorney in the Appellate Division section of the office.  In this capacity, she litigated Petitions for Writs of

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Habeas Corpus throughout the County of Los Angeles.  She researched, drafted and filed informal responses, returns, and conducted evidentiary hearings in cases involving violent crime.  She briefed and argued cases involving post-conviction DNA testing, post-conviction discovery in death penalty cases, and post-conviction immigration issues.  She served in this capacity until about December 2007, when she returned to her original home state— New Mexico— to reside for the time being.

25.     From April 2008, when she was admitted to the New Mexico State Bar, to August 2008, Plaintiff MADRID worked in Albuquerque, New Mexico, for the Office of the District Attorney Second Judicial District as a senior trial attorney in the Crimes Against Children Unit.  In that capacity, she vertically prosecuted crimes against children, including homicide, sexual assault, child pornography, physical abuse and neglect, and kidnapping.  As noted, she was only in this position for about four (4) months.

26.     Starting in January 2009, Plaintiff MADRID was hired by Defendant RIVERSIDE COUNTY as a deputy district attorney.  She was initially assigned to the Writs & Appeals section of the office.  In that capacity, she briefed and argued appeals, petitions for mandate, and habeas corpus, petitions for certificates of rehabilitation and pardons, and petitions to seal and destroy records.  She also conducted evaluations regarding the disclosure of acts of moral turpitude pursuant to *Brady v. Maryland* (1963) 373 U.S. 83.  She also researched and drafted emergency motions for trial prosecutors throughout the various district attorney offices in Defendant RIVERSIDE COUNTY on cases ranging from misdemeanors to death penalty cases.  She also drafted memoranda and special projects for the office outlining and updating changes in the law.  She also advised prosecutors on a daily basis on evidentiary, discovery, and ethical issues.  She served in that capacity until April 2011.

27.     Starting in April 2011, Plaintiff MADRID was assigned to the Sexually Violent Predators Unit.  In this capacity, she was the sole countywide prosecutor

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

assigned to vertically prosecute sexually violent predator commitment proceedings from inception to jury trial.  She served in that capacity until January 2012.

28.    From January 2012 to May 2012, Plaintiff MADRID was briefly assigned to the office's Forensic Mental Health Unit/ Sexually Violent Predators Unit/ Veteran's Court.

29.    In May 2012, Plaintiff MADRID was assigned to the office's Southwest Drug Court.  In this capacity, she prosecuted drug cases and also handled the drug court calendar for that court.  In a collaborative setting with the Department of Mental Health, the Probation Department, criminal defense counsel in the area, and the judge, she evaluated and negotiated plea dispositions on cases deemed appropriate for disposition in the ROC Program, a collaborative court with the aim of providing intense rehabilitation services to recovering addicts.  She served in that capacity until May 2013.

30.    In May 2013, Plaintiff MADRID was assigned to the Juvenile Division, where she adjudicated juvenile petitions from initial filing through court trial.  In this capacity, she handled the Juvenile Court calendar.  She also litigated law and motion matters, including a case of first impression opposing a defense Writ before the County of Riverside Court of Appeal in the matter of *S.S. v. The Superior Court of Riverside County*, Case No. E061258. She served in that capacity until September of 2015.

31.    In September 2015 until the date of her termination on March 29, 2017, Plaintiff MADRID was assigned to the Domestic Violence/ Grand Theft Auto Felony Prosecution Unit 2.  In that capacity, she prosecuted felony cases of domestic violence, stalking, felony grand theft auto and carjacking, armed robbery, first degree residential burglary, assault with a deadly weapon, and identity theft.   The Felony Prosecution Unit 2 were known as "high volume" units, where caseloads averaged over 100 per prosecutor in any given month.

32.    All told, Plaintiff MADRID worked as a Deputy District Attorney for the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

County of Los Angeles for 17 years and for the District Attorney's Office of Defendant RIVERSIDE COUNTY for over 8 years.

33.    While employed as a Deputy District Attorney for Defendant RIVERSIDE COUNTY, Plaintiff MADRID served with distinction, earning good performance evaluations and, also, an award of Employee of the Month in 2014.

### FACTS—SUPPORTING ALLEGATIONS IN ALL CAUSES OF ACTION OF COMPLAINT

34.    During her employment as a Deputy District Attorney, Step IV, in the District Attorney's Office of Defendant RIVERSIDE COUNTY, Plaintiff MADRID was a public employee who could not be terminated except for "good cause" as defined in the Memorandum of Understanding (MOU) between Defendant RIVERSIDE COUNTY and the Riverside County District Attorney's Association. The particular MOU does not require Plaintiff MADRID to exhaust administrative remedies under its terms before filing a lawsuit in state or federal court.  Further, the terms of this MOU do not apply to any cause of action contained in this Complaint, and no cause of action contained in this action is substantially dependent upon the analysis of the MOU.  Also, as to any cause of action contained in this Complaint, the District Court will not have to interpret the MOU, as opposed to merely looking to, consulting, or referring to pertinent provisions if the need arises.  In other words, all claims contained in this Complaint can be litigated without reference to rights and duties established in the MOU— therefore, no claim contained herein is subject to pre-emption under Section 301 of the Labor Management Relations Act (29 U.S.C. §185[a]).

35.    On September 28, 2016, Deputy District Attorney Melanie Deutsch, also employed by Defendant RIVERSIDE COUNTY,  alleged that she heard Plaintiff MADRID make a comment about wishing to be dead and shooting up the workplace. At all times herein mentioned, Plaintiff MADRID has categorically denied making those comments.   Instead, because she was overworked with a responsibility of

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

handling more than 100 open criminal case files at any one time, Plaintiff MADRID claims all that she said was "just shoot me", referring in exasperation to being overworked.

36.     On September 29, 2016, the District Attorney's Office of Defendant RIVERSIDE COUNTY  opened up an investigation into the claim made by DDA Deutsch.  Initially, on September 29, 2016, Plaintiff MADRID was placed on administrative leave with pay pending the outcome of this investigation into the claim of DDA Deutsch.

37.     On September 30, 2016, Plaintiff MADRID, on the direction of the District Attorney's Office of Defendant RIVERSIDE COUNTY, consulted with an LMFT and a psychiatrist from Kaiser Permanente.  The Kaiser psychiatrist changed her leave status from paid administrative leave to leave for a medical condition under the California Family Rights Act (*California Gov't. Code* §12945.2) or the federal equivalent, the Family Medical Leave Act (29 U.S.C. §§2601, et seq.).   This change in leave status (1) indicated that Ms. Madrid was "not a danger to herself or others"; and, (2) that she should remain off work for medical reasons under CFRA/ FMLA leave.  The District Attorney's Office agreed to change her leave status from "paid admin leave" to "CFRA/ FMLA leave".  Consequently, Plaintiff MADRID remained on leave status under the CFRA/ FMLA until October 30, 2016 and was due to return work at the DA's Office on October 31, 2016.

38.     The fact that Plaintiff MADRID was not in the status of "paid admin leave" from September 30, 2016 through October 30, 2016 is highly significant to the events which occurred afterwards.  According to Defendant RIVERSIDE COUNTY's personnel and policy rules, "paid admin leave" means that the affected employee is under "house arrest" between regular working hours and must be available for duty.  However, when an employee is on medical leave under the CFRA/ FMLA, he or she is using their own accrued vacation pay and sick pay instead of Riverside County funds— i.e., the employee is not under "house arrest" and their time and pursuits are

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

10

their own and he or she is not acting within the course and scope of employment for Defendant RIVERSIDE COUNTY.

39.     On October 31, 2016, Ms. Madrid's return to work date, the District Attorney's Office of Defendant RIVERSIDE COUNTY placed her on "paid administrative leave" pending Defendant RIVERSIDE COUNTY's evaluation of her ability to adequately and safely perform the functions of her deputy district attorney position.  At that point, the District Attorney's Office of Defendant RIVERSIDE COUNTY  had completed its investigation of the alleged workplace comments made by Plaintiff MADRID on September 28, 2016.  All that remained was for Plaintiff, under relevant provisions of the MOU, to attend a fitness for duty examination by a physician selected by Defendant RIVERSIDE COUNTY and obtain a clearance to the effect that she was not a danger to herself or to others.

40.     On this same date of October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, and Deputy Director of Administration Ginika Ezinwa.  At this meeting, the following occurred:

A)     Plaintiff MADRID was told that she had to sign a document placing her back on administrative leave with pay effective that day.   Neither the document nor anything stated in the meeting gave notice to Plaintiff that Defendant RIVERSIDE COUNTY was requiring her to submit to a test for alcohol and/or drugs.  In fact, she was only told in this meeting that she would have to immediately attend a "medical examination" at the County's Health & Wellness Facility.

B)     Plaintiff was advised that, if she did not agree to immediately attend this "medical examination", that it would be "insubordination" and a terminable offense.

C)     Plaintiff was also forced to have two female District Attorney Investigators drive her to the facility for the "medical examination"— Defendants CHEBATAH and DOE 1 FEMALE INVESTIGATOR.  She was not permitted to

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

voluntarily attend the "medical examination" and was told that she could not even drive her own vehicle to the facility.

D) Plaintiff believed the so-called "medical examination" was going to be a "mental examination" regarding her fitness for duty. However, no representative of Defendant RIVERSIDE COUNTY at this meeting advised Plaintiff that her belief was incorrect and/or that the "fitness for duty" examination by the County's physician was not the same as this "medical examination."

41. At all times herein mentioned, Plaintiff MADRID did not believe that she could refuse to attend the so-called "medical examination", since her refusal to do so, as told to her at this October 31st meeting, would have resulted in her discharge from the employment. In other words, Plaintiff had no rational choice but to attend the "medical examination" and to be accompanied by two District Attorney Investigators— Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR.

42. On October 31, 2016, Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR drove Plaintiff MADRID to the designated County facility for the "medical examination". Plaintiff was not permitted to leave the sight of the two District Attorney investigators and was forced to do what they said.

43. On October 31, 2016, upon arrival to the County's facility for the "medical examination", Plaintiff MADRID learned that no "medical examination" would in fact occur. In fact, no physician was present and a "medical examination" did not occur. What did occur was that Plaintiff was, under threat of losing her job, forced to submit to an alcohol and drug screen test. Plaintiff's blood was drawn for the alcohol test by a nurse or technician and she was coerced into submitting to a urine sample test. The nurse stood outside the bathroom door while Plaintiff was urinating into the test capsule.

44. After completing the alcohol and drug screen test, the nurse advised Plaintiff MADRID that her "fitness for duty" examination by a mental health professional selected by Defendant RIVERSIDE COUNTY nwould take place on

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

November 2, 2016.  The mental health professional selected was Dr. Elizabeth White.

45.    On November 2, 2016, Plaintiff MADRID attended the fitness for duty examination with Dr. White, Defendant RIVERSIDE COUNTY's  designated mental health professional.  She was there for about 8 hours.  Plaintiff took personality tests and submitted to a long interview.  To this date, Plaintiff  has never been provided with a copy of Dr. White's report of this fitness for duty examination.  On information and belief, Dr. White's report ultimately informed Defendant RIVERSIDE COUNTY that Ms. Madrid was "not a danger to herself and/or to others".

46.    Also, on November 2, 2016, her urine sample was tested by technicians for the County's facility.  The sample tested positive for marijuana and no other substances.  On information and belief, on November 7, 2016, a medical review doctor from the County's facility issued a final determination that Plaintiff had tested positive for marijuana on October 31, 2016.  On further information and belief, the County's facility conducting the testing reported the positive result to the DA's Office on November 28, 2016; and, upon receiving that result, the District Attorney's Office of Defendant RIVERSIDE COUNTY officially opened up an administrative investigation on alleged new charges.

47.    On December 12, 2016, Plaintiff, while still on paid administrative leave, was personally served at her home with a notice to appear for a formal interview with DA investigators from the District Attorney's Internal Affairs Division.  The notice generally advised Plaintiff MADRID that she was the subject of an administrative investigation for allegations of conduct that "adversely affected the employee or operation of the department".

48.    On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave between September 29, 2016 and October 25, 2016. Commander Berakovich wrote a report about that interview and his conclusions from the interview. He made several mistakes and misstatements in that report, including, but not limited to, the following:

A) "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis." As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

B) "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*." Commander Berakovich negligently or deliberately mis-cited Policy C-10. Policy C-10 does <u>not</u> prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

C) As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or "on call" status as applying to Plaintiff. In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

49. The District Attorney's Office of Defendant RIVERSIDE COUNTY relied on Plaintiff's coerced positive drug test for marijuana on October 31, 2016, and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

also on Commander Berakovich's intentional or negligent inaccurate investigation report and its conclusions to erroneously take adverse employment actions against Plaintiff MADRID.

50. On February 23, 2017, a Notice to Terminate was issued to Plaintiff MADRID in accordance with the MOU provisions. In part, the Notice to Terminate indicated that the "this action is being taken against you for the following causes specified in Article X, Section 2 in the current Memorandum of Understanding between the County of Riverside and the Riverside County Deputy District Attorneys Association". Cited in the Notice were these two provisions:

— "m.     Conduct either during or outside of duty hours which
           adversely affects the employee's job performance
           or operation of the department in which she is employed."

— "o.     Substance abuse in violation of the Board of
           Supervisors' Alcohol and Drug Abuse Policy
           C-10."

51. On March 15, 2017, Madrid had a *Skelly* hearing.

52. On March 21, 2017, Plaintiff MADRID was issued a termination letter. The termination letter specifically indicated that the workplace violence statements, which were alleged by DDA Deutsch and denied by Plaintiff, were neither used nor factored in the cause for termination. The sole reason for termination was testing positive for marijuana on October 31, 2016. In other words, based on the above, Madrid was fired for smoking marijuana when she had not been "on duty" as defined by Policy C-10— i.e. as noted previously in this tort claim, Ms. Madrid was on CFRA/ FMLA leave between September 30, 2016 and October 31, 2016. A true and correct copy of this termination letter, dated March 21, 2017, is attached hereto as **Exhibit C**.

///

///

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

15

## FIRST CAUSE OF ACTION

**(VIOLATION OF PLAINTIFF'S CIVIL RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES— FOURTH AMENDMENT TO UNITED STATES CONSTITUTION— 42 U.S.C. §§ 1983, ET SEQ.— BROUGHT BY PLAINTIFF AGAINST DEFENDANTS MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 25)**

53. Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-12, 14-33, and 39-52, as though fully set forth.

54. At all times herein mentioned, the Fourth Amendment to the United States Constitution provided that all citizens have the right to be free from unreasonable searches and seizures by governmental officials acting under the color of authority.

55. On October 31, 2016, without prior notice, Plaintiff MADRID was forced to attend a so-called "medical examination" by Defendant FABRIZIO, acting on orders from Defendant HESTRIN. Plaintiff was told that she had to attend this "medical examination" or she would be terminated for insubordination. Also, acting on the orders of Defendants HESTRIN and FABRIZIO, Plaintiff was involuntarily taken to this "medical examination" by Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR. Plaintiff did not voluntarily consent to attending this "medical examination", nor did she voluntarily consent to having Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR take her to the County's facility for the same. Further, there was no arrest or search warrant authorizing her attendance at this "medical examination" where alcohol and drug testing occurred.

56. Once Plaintiff arrived at the County's facility, no "medical examination" occurred and no physician to conduct the examination was present. Instead, Plaintiff

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

was forced to blow into a breathalyzer for alcohol testing and, further, was forced to give a urine sample for a drug screen.  Further, upon completion of this alcohol testing and drug screen, Plaintiff was told that she would have to attend a "fitness for duty" examination on November 2, 2016 by a mental health professional selected by the County— Dr. Elizabeth White.

57.   Also, on November 2, 2016, her urine sample was tested by technicians for the County's facility.  The sample tested positive for marijuana and no other substances.  On information and belief, on November 7, 2016, a medical review doctor from the County's facility issued a final determination that Plaintiff had tested positive for marijuana on October 31, 2016.  On further information and belief, the County's facility conducting the testing reported the positive result to the District Attorney's  Office of Defendant RIVERSIDE COUNTY on November 28, 2016; and, upon receiving that result, the District Attorney's Office of Defendant RIVERSIDE COUNTY officially opened up an administrative investigation on alleged new charges.

58.   On information and belief, Dr. Elizabeth White, the mental health professional selected by Defendant RIVERSIDE COUNTY to conduct Plaintiff's "fitness for duty" examination, determined that Plaintiff MADRID was neither a danger to herself nor others.  Therefore, except for the positive marijuana test, which was coerced by Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, Plaintiff woould have been allowed to return to work in her capacity as Deputy District Attorney, Step IV, for Defendant RIVERSIDE COUNTY.

59.   On December 12, 2016, Plaintiff, while still on paid administrative leave, was personally served at her home with a notice to appear for a formal interview with DA investigators from the District Attorney's Office Internal Affairs Division.  The notice generally advised Plaintiff MADRID that she was the subject of an administrative investigation for allegations of conduct that "adversely affected the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

17

employee or operation of the department."

60.    On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements in that report, including, but not limited to, the following:

A)    "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

B)    "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-10.  Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

C)    As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or  "on call" status as applying to Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

61.     On February 23, 2017, a Notice to Terminate was issued to Plaintiff MADRID in accordance with the MOU provisions.  In part, the Notice to Terminate indicated that the "this action is being taken against you for the following causes specified in Article X, Section 2 in the current Memorandum of Understanding between the County of Riverside and the Riverside County Deputy District Attorneys Association".  Cited in the Notice were these two provisions:

— "m.     Conduct either during or outside of duty hours which adversely affects the employee's job performance or operation of the department in which she is employed."

— "o.     Substance abuse in violation of the Board of Supervisors' Alcohol and Drug Abuse Policy C-10."

62.     On March 29, 2017, Plaintiff MADRID was issued a termination letter. The termination letter specifically indicated that the workplace violence statements, which were alleged by DDA Deutsch and denied by Plaintiff, were neither used nor factored in the cause for termination.   The sole reason for termination was testing positive for marijuana on October 31, 2016.  In other words, based on the above, Madrid was fired for using marijuana when she had not been "on duty" as defined by Policy C-10— i.e. as noted previously in this tort claim, Ms. Madrid was on CFRA/ FMLA leave between September 30, 2016 and October 31, 2016.  A true and correct copy of this termination letter, dated March 29, 2017, has been attached hereto as **Exhibit C**.

63.     Based on the above factual events, it appears that the initial reason for investigating Plaintiff MADRID— i.e., her alleged statements of workplace violence as reported by DDA Deutsch on September 28, 2016— had concluded with a finding

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

in favor of Plaintiff. Plaintiff's ultimate termination was entirely based on allegations that she had tested positive for marijuana on October 31, 2016, meaning that she had used the substance within two weeks of the October 31, 2016 meeting. Between September 30, 2016 and October 31, 2016, the period when she allegedly used the marijuana eventually showing up on a positive test, Plaintiff was on authorized medical leave under the CFRA/ FMLA— i.e. she was using her own time and was not "on duty" as defined by the C-10 Alcohol and Drug Substance Policy of Defendant RIVERSIDE COUNTY or as defined under the relevant MOU between Plaintiff's union and Defendant RIVERSIDE COUNTY.

64. At all times herein mentioned, the C-10 Alcohol and Drug Substance Abuse Policy of Defendant RIVERSIDE COUNTY did not prevent a deputy district attorney like Plaintiff from using marijuana while not "on duty", so long as the use of marijuana did not adversely affect the employee's job performance or operation of the department in which he or she was employed. In other words, Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

65. Further, Defendant RIVERSIDE COUNTY's C-10 Alcohol and Drug Substance Abuse Policy defines "on duty" as including persons in the County's employ who are on "standby" or "on call". As noted previously herein, this inclusion did not fit Plaintiff MADRID at any time— i.e. she had never been placed on a "standby" or "on call" status during the entire period of her employment with Defendant RIVERSIDE COUNTY.

66. Further, the results of Plaintiff's positive test for marijuana, forcibly taken without a warrant and without voluntary consent on October 31, 2016, were not officially communicated to Defendant RIVERSIDE COUNTY until November 28, 2016. It was not until December 12, 2016, Plaintiff, this time while on paid administrative leave, was generally advised that she was the subject of an

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

administrative investigation for allegations of conduct that "adversely affected the employee or operation of the department"— i.e. the positive marijuana drug screen. Thereafter, she was interviewed by Defendant RIVERSIDE COUNTY's District Attorney Commander, Ed Berakovich, on December 19, 2016, and given her *Miranda* admonishments, which she waived.  As noted previously herein, Commander Berakovich intentionally or negligently (and erroneously)  determined that Plaintiff was on paid administrative leave when she used the marijuana showing up on the positive drug test of October 31, 2016— i.e. in fact, Plaintiff was on authorized medical leave for a health condition between September 30, 2016 and October 31, 2016; therefore, she was on her own time and not working as an employee of Defendant RIVERSIDE COUNTY when she used that marijuana leading to the positive drug test.

67.     Further, by the time the District Attorney's office of Defendant RIVERSIDE COUNTY, received the result of the positive marijuana test on November 29, 2016, the citizens of the State of California had overwhelmingly voted to pass Proposition 64 on November 9, 2016.  This Proposition immediately allowed Californians who are 21 and older to possess, transport, buy and use up to an ounce of cannabis for recreational purposes and allow individuals to grow as many as six plants. The measure would also allow retail sales of marijuana and impose a 15% tax.

68.     In other words, by the time that Plaintiff (a) was advised on December 12, 2016 that she was under a new administrative investigation for allegations of conduct that "adversely affected the employee or operation of the department"; (b) was interviewed by District Attorney Commander Ed Berakovich on December 19, 2016; (c) was issued a Notice to Terminate on February 23, 2017; and, (d) was terminated entirely based on the positive marijuana test, Plaintiff's recreational use of marijuana was legal in the State of California.

69.     Further, at all times herein mentioned, Defendant RIVERSIDE

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

COUNTY did not have a policy in place to requires its employees, including, but not limited to, Plaintiff MADRID, to submit to alcohol and/or drug testing as a term and condition of employment. The MOU between Plaintiff's union and Defendant RIVERSIDE COUNTY also did not require its members to submit to alcohol and/or drug testing as a term and condition of employment. Both Defendant RIVERSIDE COUNTY and the relevant MOU did allow for a "fitness for duty" examination for employees who met the criteria; however, this "fitness for duty" examination policy was totally silent as to whether the examination required the particular employee to submit to alcohol and/or drug testing.

69. At all times herein mentioned, the individually-named defendants in this cause of action were acting under color of authority on October 31, 2016, when they deceptively required Plaintiff to attend a so-called "medical examination" at the County's facility and then forced Plaintiff to take an alcohol and drug screen.

70. At all times herein mentioned, the individually-named defendants effectively detained Plaintiff, and coerced her into giving a urine sample, without a warrant and without voluntary consent. These actions violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, and exposes the individually-named defendants to the damages and remedies as hereinafter described.

71. Under the circumstances, the positive marijuana test was "fruit of the poisonous tree" under the Fourth Amendment to the United States Constitution and could not be used to support Plaintiff's termination of employment by Defendant RIVERSIDE COUNTY.

72. As a direct result of this aforesaid Fourth Amendment violation, Plaintiff has sustained, and will continue to sustain for a period of time in the future, compensatory and general damages in an amount according to proof.

73. Plaintiff, if the prevailing party, is entitled to her reasonable attorney's fees and costs in prosecuting this cause of action in an amount according to proof at

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

trial under the statutory scheme of 42 U.S.C. §§1983, et seq.

74.    The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action.  Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim.  These facts, include, but are not limited to, the following:

A)    Co-Defendant RIVERSIDE COUNTY, the employer of the individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening.  Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening.  At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening.  Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B)    On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility.  Plaintiff asked, "what kind of medical examination", and the answer was "I don't know".  Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired.  Plaintiff was then told that she

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

23

would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)      On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D)      Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff MADRID herself was a victim of a drugging, kidnapping and sexual assault by a

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

24

male. As a result, she came back from vacation to the District Attorney's office with a lingering psychological disability of anxiety and depression because of that unfortunate incident in Europe. Despite this awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it. In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

E)      By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination. There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

■      On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino. On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility. Also, Ms. Postil did not receive any discipline.

■      On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense. His sentence included 3 years probation and 46 days in jail to be served in home confinement. Mr. Degonia was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position. Mr. Degonia also was not required to submit to alcohol testing and drug

screening.

■ On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense. This arrest and conviction occurred in San Diego County. DeLimon had also been involved in a previous incident in San Diego County in 2006 involving an altercation with the police outside a bar. Although DeLimon was not arrested in the earlier 2006 incident, he was placed on paid administrative leave by the Riverside County District Attorney's Office, for whom he was working at the time. By the time of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY. Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline. In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■ Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011. At the time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court. Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him. Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense. Nevertheless, Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY. Scalisi, too,

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

never had to undergo either alcohol and/or drug testing by his employer.

■　　　Deputy District Attorney Tim Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)　　　On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)　　　On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements in that report, including, but not limited to, the following:

■　　　"By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

27

part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis." As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

■      "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*." Commander Berakovich negligently or deliberately mis-cited Policy C-10. Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

■      As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or "on call" status as applying to Plaintiff. In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

Defendants HESTRIN and FABRIZIO used this erroneous investigative report by Commander Berakovich to terminate Plaintiff, knowing that he was incorrect in his assessments, and further knowing that Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution was deliberately violated on October 31, 2016 and thereafter.

///

///

///

///

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

28

**SECOND CAUSE OF ACTION**

**(VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I, SECTION 13 ADDRESSING "UNREASONABLE SEARCHES AND SEIZURES"— CALIFORNIA BANE ACT RE *CALIFORNIA CIVIL CODE SECTION 52.1*— BROUGHT BY PLAINTIFF AGAINST DEFENDANTS RIVERSIDE COUNTY, MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 50).**

75.     Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-74, as though fully set forth.

76.     At all times herein mentioned, the California Constitution at article 1, section 13, provided as follows:  "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

77.     At all times herein mentioned, *California Civil Code* §52.1, otherwise known as the Bane Act,  provided in pertinent part as follows:

" (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

(c) An action brought pursuant to subdivision (a) or (b) may be filed

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has his or her place of business...."

78. By engaging in the unlawful conduct more fully described in other paragraphs of this Complaint— in particular paragraphs 39 through 44— Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of Defendant RIVERSIDE COUNTY violated the rights of Plaintiff to be free from unreasonable and warrantless searches and seizures guaranteed to every citizen of this state. This violation of constitutional rights directly led to Plaintiff's termination on March 29, 2017.

79. Further, at all times herein mentioned, the individually-named defendants in this cause of action, acting on behalf of Defendant RIVERSIDE COUNTY, interfered by threat, intimidation, and coercion with Plaintiff's enjoyment of her constitutional rights under both the California Constitution, article 1, section 13, and the Fourth Amendment to the United States Constitution.

80. By the terms of the Bane Act, set forth above, Plaintiff is entitled to the damages and remedies provided under *California Civil Code* §52. Section 52 allows the following types of damages in this cause of action: "actual" damages, meaning special and general damages, punitive damages, and, also, allows for attorney's fees in the court's discretion.

81. As a direct consequence of the aforesaid violation of constitutional rights, the named defendants herein used "fruit of the poisonous tree" to terminate Plaintiff.

82. As a direct result of her termination, Plaintiff has sustained and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

83. Plaintiff, if the prevailing party on this cause of action, is entitled to her reasonable attorney's fees in an amount determined by the court after trial

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

(*California Civil Code* §52[b][3]).

84. Plaintiff is also entitled to an award of punitive damages against the individually-named defendants in this cause of action (i.e. Despite the Bane Act, Plaintiff cannot obtain punitive damages from Defendant RIVERSIDE COUNTY by virtue of the absolute immunity provided by *California Gov't Code* §818). The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action. Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim. These facts, include, but are not limited to, the following:

A) Co-Defendant RIVERSIDE COUNTY, the employer of the individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening. Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening. At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening. Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B) On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN. Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility. Plaintiff asked,

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

"what kind of medical examination", and the answer was "I don't know".  Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired.  Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)     On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D)     Defendants HESTRIN and, on information and belief, FABRIZIO were knowledgeable and well aware of the fact that Plaintiff MADRID, while

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012. Plaintiff MADRID herself was a victim of a drugging, kidnapping, and sexual assault by a male. As a result, she came back from vacation to the District Attorney's office with a lingering psychological disability of anxiety and depression because of that unfortunate incident in Europe. Despite this awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it. In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

E)      By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination. There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

■      On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino. On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility. Also, Ms. Postil did not receive any discipline.

■      On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense. His sentence included 3 years probation and 46 days in jail to be served in home confinement. Mr. Degonia

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position. Mr. Degonia also was not required to submit to alcohol testing and drug screening.

■ On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense. This arrest and conviction occurred in San Diego County. DeLimon had also been involved in a previous incident in San Diego County in 2006 involving an altercation with the police outside a bar. Although DeLimon was not arrested in the earlier 2006 incident, he was placed on paid administrative leave by the Riverside County District Attorney's Office, for whom he was working at the time. By the time of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY. Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline. In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■ Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011. At the time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court. Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him. Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense. Nevertheless,

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

34

Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY. Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■    Deputy District Attorney Tom Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense. Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)    On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time. If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse. Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)    On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich. She was given her *Miranda* rights prior to the interview and she agreed to waive them. During that interview, Ms. Madrid advised the Commander of her prior marijuana use. In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave between September 29, 2016 and October 25, 2016. Commander Berakovich wrote a report about that interview and his conclusions from the interview. He made several mistakes and misstatements

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

in that report, including, but not limited to, the following:

■ "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis." As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

■ "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*." Commander Berakovich negligently or deliberately mis-cited Policy C-10. Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

■ As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or "on call" status as applying to Plaintiff. In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

Defendants HESTRIN and FABRIZIO used this erroneous investigative report by Commander Berakovich to terminate Plaintiff, knowing that he was incorrect in his assessments, and further knowing that Plaintiff's right to be free from unreasonable searches and seizures under both article 1, section 13 of the California Constitution and the Fourth Amendment to the United States Constitution was deliberately violated on October 31, 2016 and thereafter.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

36

## THIRD CAUSE OF ACTION

### (*MONELL* CLAIM AGAINST DEFENDANT COUNTY
### OF RIVERSIDE— 42 U.S.C. SECTION 1983, ET SEQ.)

85.    Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-12, 14-33, and 39-85, as though fully set forth.

86.    At all times herein mentioned, Defendant MIKE HESTRIN was the elected District Attorney for Defendant COUNTY OF RIVERSIDE.  In that position, Defendant HESTRIN was the final policy-making person for the District Attorney's Office.

87.    At all times herein mentioned, Defendants FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR were employees of the District Attorney's office of Defendant RIVERSIDE COUNTY who served in their respective positions by virtue of Co-Defendant HESTRIN.

88.    As noted previously in this Complaint, Defendants FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR violated the constitutional rights of Plaintiff under the Fourth Amendment to the United States Constitution by forcing Plaintiff, without a warrant and without probable cause, to take an alcohol test and drug screen test.  When the drug screen test came back as positive for marijuana use during a period of time when Plaintiff was on authorized CFRA/ FMLA leave, the positive results were used against Plaintiff to terminate her from her long-time employment as a deputy district attorney for the District Attorney's Office.

89.    Defendant HESTRIN, as the final policy-making agent for the District Attorney's office of Defendant RIVERSIDE COUNTY, allowed his law enforcement employees to first violate the constitutional rights of Plaintiff and then used the "fruit of the poisonous tree" (i.e. the positive drug test) to terminate Plaintiff, thus effectively destroying her career as a law enforcement official.  By virtue of the fact that Defendant HESTRIN was a local government official who ratified subordinates' unconstitutional conduct, Defendant RIVERSIDE COUNTY is liable for his actions

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

in monetary damages pursuant to the United States Supreme Court decision in *Monell v. Department of Soc. Svcs.,* 436 U.S. 658 (1978).

90.    As a direct consequence of this *Monell* violation addressed pursuant to 42 U.S.C. Sections 1983, et seq., Plaintiff has sustained, and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

91.    Plaintiff, if the prevailing party, is entitled to her reasonable attorney's fees pursuant to pertinent sections of the statutory scheme for 42 U.S.C. Sections 1983, et seq.

### FOURTH C AUSE OF ACTION
### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS—
### BROUGHT BY PLAINTIFFS AGAINST DEFENDANTS
### COUNTY OF RIVERSIDE, HESTRIN, FABRIZIO,
### CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND
### DOES 2 THROUGH 25)

92.    Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-91, as though fully set forth.

93.    On September 29, 2016, the District Attorney's Office of Defendant RIVERSIDE COUNTY commenced its investigation into a claim by DDA Deutsch that Plaintiff MADRID made statements suggesting that she was a danger to herself or to others in the workplace.

94.    On information and belief, by October 30, 2016, the District Attorney's Office of Defendant RIVERSIDE COUNTY had concluded its investigation into the workplace violence allegations, and had determined there was insufficient proof to find that Plaintiff had violated its policy against workplace violence.  Further, on information and belief, Defendant RIVERSIDE COUNTY had, by October 30, 2016, made the decision as a result of its investigation to allow Plaintiff to return to work in

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

her previous position without imposing any discipline. By October 30, 2016, all that remained was for Plaintiff to attend the "fitness for duty" examination by a mental health professional selected by the County. Further, by October 30, 2016, although Plaintiff had not yet been advised of the appointment with the County's mental health professional to take place on November 2, 2016, that appointment had already been made by County officials so that Plaintiff could obtain the clearance necessary to return to work.

95.     As noted previously herein, during the entire period of the workplace violence investigation, Plaintiff was on medical leave under the CFRA/ FMLA. This means that she was using her own time to pay her salary during that time, and she was not under "house arrest" which would have occurred had she been placed on administrative leave with pay during the same period of time.

96.     Because she was on authorized medical leave under the CFRA/ FMLA from September 30, 2016 to October 31, 2016, Plaintiff was not working for the District Attorney's Office and, consequently, any alcohol or marijuana she used during that same period was on her own time and not on the employer's time. Further, her use of alcohol or marijuana during that same period of time could not possibly have been while "on duty" and could not have adversely affected the operations of the District Attorney's Office.

97.     With this knowledge, requiring Plaintiff to meet with Defendant FABRIZIO on October 31, 2016 for a forced attendance at a planned so-called "medical examination", was totally unnecessary and was a fishing expedition without probable cause to believe Plaintiff was using alcohol and/ or marijuana during the period of her authorized leave under the CFRA/ FMLA.

98.     On October 31, 2016, Ms. Madrid's return to work date, the District Attorney's Office of Defendant RIVERSIDE COUNTY placed her on "paid administrative leave" pending Defendant RIVERSIDE COUNTY's evaluation of her ability to adequately and safely perform the functions of her deputy district attorney

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

position— as noted above, this evaluation was to take place on November 2, 2016. At that point, the District Attorney's Office of Defendant RIVERSIDE COUNTY had completed its investigation of the alleged workplace comments made by Plaintiff MADRID on September 28, 2016. All that remained was for Plaintiff, under relevant provisions of the MOU, to attend a fitness for duty examination by a physician selected by Defendant RIVERSIDE COUNTY and obtain a clearance to the effect that she was not a danger to herself or to others.

99.    On this same date of October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, and Deputy Director of Administration Ginika Ezinwa. At this meeting, the following occurred:

A)    Plaintiff MADRID was told that she had to sign a document placing her back on administrative leave with pay effective that day. Neither the document nor anything stated in the meeting gave notice to Plaintiff that Defendant RIVERSIDE COUNTY was requiring her to submit to a test for alcohol and/or drugs. In fact, she was only told in this meeting that she would have to immediately attend a "medical examination" at the County's Health & Wellness Facility.

B)    Plaintiff was advised that, if she did not agree to immediately attend this "medical examination", that it would be "insubordination" and a terminable offense.

C)    Plaintiff was also forced to have two female District Attorney Investigators drive her to the facility for the "medical examination"— Defendants CHEBATAH and DOE 1 FEMALE INVESTIGATOR. She was not permitted to voluntarily attend the "medical examination" and was told that she could not even drive her own vehicle to the facility.

D)    Plaintiff believed the so-called "medical examination" was going to be a "mental examination" regarding her fitness for duty. However, no representative of Defendant RIVERSIDE COUNTY at this meeting advised Plaintiff

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

that her belief was incorrect and/or that the "fitness for duty" examination by the County's physician was not the same as this "medical examination."

100. There is no document or policy of Defendant RIVERSIDE COUNTY which requires its employees to submit to random alcohol testing or drug screening, whether as part of a "fitness for duty" examination or not.

10. At all times herein mentioned, Plaintiff MADRID did not believe that she could refuse to attend the so-called "medical examination", since her refusal to do so, as told to her at this October 31st meeting, would have resulted in her discharge from the employment. In other words, Plaintiff had no rational choice but to attend the "medical examination" and to be accompanied by two District Attorney Investigators— Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR.

102. On October 31, 2016, Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR drove Plaintiff MADRID to the designated County facility for the "medical examination". Plaintiff was not permitted to leave the sight of the two District Attorney investigators and was forced to do what they said.

103. On October 31, 2016, upon arrival to the County's facility for the "medical examination", Plaintiff MADRID learned that no "medical examination" would in fact occur. In fact, no physician was present and a "medical examination" did not occur. What did occur was that Plaintiff was, under threat of losing her job, forced to submit to an alcohol and drug screen test. Plaintiff's blood was drawn for the alcohol test by a nurse or technician and she was coerced into submitting to a urine sample test. The nurse stood outside the bathroom door while Plaintiff was urinating into the test capsule.

104. After completing the alcohol and drug screen test, the nurse advised Plaintiff MADRID that her "fitness for duty" examination by a mental health professional selected by Defendant RIVERSIDE COUNTY would take place on November 2, 2016. The mental health professional selected was Dr. Elizabeth White.

105. On November 2, 2016, Plaintiff MADRID attended the fitness for duty

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

examination with Dr. White, Defendant RIVERSIDE COUNTY's  designated mental health professional.  She was there for about 8 hours.  Plaintiff took personality tests and submitted to a long interview.  To this date, Plaintiff  has never been provided with a copy of Dr. White's report of this fitness for duty examination.  On information and belief, Dr. White's report ultimately informed Defendant RIVERSIDE COUNTY that Ms. Madrid was "not a danger to herself and/or to others".

106.   The coerced drug screening of October 31, 2016, conducted in violation of Plaintiff's constitutional rights under the Fourth Amendment and California Constitution, article 1, section 13, should never have occurred under the circumstances.  This drug screen, which showed a positive test for marijuana, directly led to Plaintiff's termination as a law enforcement prosecutor and has forever damaged her career and self-esteem.  Plaintiff should have been allowed to return to work once receiving clearance from its own psychologist who determined that she was neither danger to herself nor others in the District Attorney's office.

107.   Further, at all times herein mentioned, individual defendants HESTRIN, and, on information and belief, FABRIZIO,  were knowledgeable of the fact that Plaintiff MADRID battled anxiety and depression as a result of a 2012 drugging, kidnapping and rape.  Consequently, they knew that she was a person who could be pushed over the edge with false accusations that ultimately led to the loss of her job.

108.   Further, at all times herein mentioned, individual defendants HESTRIN and FABRIZIO were knowledgeable of the fact that neither RIVERSIDE COUNTY's C-10 Alcohol and Substance Abuse Policy, nor the prevailing MOU, allowed for alcohol testing and drug screening of Plaintiff under the circumstances.  Nevertheless, using artifice and device, they required Plaintiff to attend the October 31, 2016 meeting and undergo a "medical examination", which was not a "medical examination" at all.

109.   At all times herein mentioned, *California Gov't. Code* §815.2 was in

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

full force and effect.  This code section provides that a public entity is liable for an injury caused by the act or omission of an employee acting within his or her scope of employment if, in fact, one or more of its employees could be held liable for that same act or omission.  Therefore, Defendant RIVERSIDE COUNTY is also named as a defendant in this cause of action.

110.   The aforesaid unlawful conduct of individual defendants HESTRIN, FABRIZIO, CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR was intentionally done and was extreme, outrageous, despicable, and was undertaken with the intention of causing, or taken in reckless disregard of the probabilityit would cause, Plaintiff severe emotional upset and distress.

111.    Plaintiff ultimately lost her relatively high paying law enforcement career as a result of the aforesaid unlawful and deceitful conduct of the individually defendants named in this cause of action, and has thereby suffered, and continues to suffer, severe emotional distress, anxiety and depression.

112.   Plaintiff has, in fact, sustained extreme emotional distress by the outrageous conduct of the individually-named defendants in this cause of action, and is entitled to compensatory and general damages in an amount according to proof at the trial of this action.

113.   Plaintiff is also entitled to an award of punitive damages against the individually-named defendants in this cause of action.  The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action.  Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim.  These facts, include, but are not limited to, the following:

A)    Co-Defendant RIVERSIDE COUNTY, the employer of the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening.  Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening.  At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening.  Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B)      On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility.  Plaintiff asked Defendant FABRIZIO, "what kind of medical examination", and his answer was "I don't know".  Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired. Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)      On October 31, 2016, once arriving at the County's facility for the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D)   Defendants HESTRIN and, on information and belief,  FABRIZIO were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff MADRID herself was a victim of a drugging, kidnapping,  and sexual assault by a male.  As a result, she came back from vacation to the District Attorney's office with a lingering psychological disability of anxiety and depression because of that unfortunate incident in Europe.  Despite this awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it.  In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

E)    By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination.  There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

■    On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino.  On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

■    On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense.  His sentence included 3 years probation and 46 days in jail to be served in home confinement.  Mr. Degonia was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position. Mr. Degonia also was not required to submit to alcohol testing and drug screening.

■    On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense.  This arrest and conviction occurred in San Diego County.  DeLimon had also been involved in a previous incident in San Diego County in 2006 involving an altercation with the police outside a bar.  Although DeLimon was not arrested in the earlier 2006 incident, he was placed on paid administrative leave by the Riverside County District Attorney's Office, for whom he was working at the time.  By the time

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY. Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline. In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■     Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011. At the time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court. Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him. Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense. Nevertheless, Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY. Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■     Deputy District Attorney Tom Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense. Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)     On information and belief, from January 1, 2016 to the present

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)	On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements in that report, including, but not limited to, the following:

■	"By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

■	"[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

10.  Policy C-10 does <u>not</u> prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

■      As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or  "on call" status as applying to Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

Defendants HESTRIN and FABRIZIO used this erroneous investigative report by Commander Berakovich to terminate Plaintiff, knowing that he was incorrect in his assessments, and further knowing that Plaintiff's right to be free from unreasonable searches and seizures under both article 1, section 13 of the California Constitution and the Fourth Amendment to the United States Constitution was deliberately violated on October 31, 2016 and thereafter.

## FIFTH CAUSE OF ACTION
**(FALSE IMPRISONMENT— BROUGHT BY PLAINTIFFS AGAINST DEFENDANTS COUNTY OF RIVERSIDE, HESTRIN, FABRIZIO,  CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 25)**

114.  Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-113, as though fully set forth.

115.  At all times herein mentioned, the crime of false imprisonment was a misdemeanor in the State of California (*California Penal Code* §236-237).  There is also a private cause of action for tort damages for false imprisonment.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

116.  As District Attorney investigators for Defendant RIVERSIDE COUNTY, both Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR are considered to be "peace officers" in the State of California pursuant to *California Penal Code* §830.1

117.  On October 31, 2016, acting on the directions and orders of Defendants HESTRIN and FABRIZIO, Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR violated Plaintiff's liberty interest by substantially restraining her through fraud, deceit, coercion, and duress, to take her to a so-called "medical examination". This "medical examination" was, in actuality, an alcohol test and drug screen test, which was not consented to by Plaintiff.

118.  At all times herein mentioned, Plaintiff believed that she would suffer injury if she did not comply with the wishes of the individual defendants named in this cause of action.

119.  At all times herein mentioned, *California Gov't. Code* §815.2 was in full force and effect. This code section provides that a public entity is liable for an injury caused by the act or omission of an employee acting within his or her scope of employment if, in fact, one or more of its employees could be held liable for that same act or omission. Therefore, Defendant RIVERSIDE COUNTY is also named as a defendant in this cause of action.

120.  The aforesaid unlawful conduct of individual defendants HESTRIN, FABRIZIO, CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR was intentionally done and was extreme, outrageous, despicable, and was undertaken with the intention of causing, or taken in reckless disregard of the probability, the threat and fear of her personal and physical safety if she did not comply with the unlawful false imprisonment committed by the individual defendants named in this cause of action.

121.  Plaintiff has, in fact, sustained extreme emotional distress by the outrageous conduct of the individually-named defendants in this cause of action, and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

50

is entitled to compensatory and general damages in an amount according to proof at the trial of this action.

122.   Plaintiff is also entitled to an award of punitive damages against the individually-named defendants in this cause of action.  The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action.  Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim.  These facts, include, but are not limited to, the following:

A)   Co-Defendant RIVERSIDE COUNTY, the employer of the individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening.  Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening.  At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening.  Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B)   On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility.  Plaintiff asked, "what kind of medical examination", and the answer was "I don't know".  Plaintiff

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

51

was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired. Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators. The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff. They also did not have her voluntary and uncoerced consent. Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C) On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present. Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside. Ultimately, the drug test was positive for marijuana and negative for all other controlled substances. The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave). Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree." All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D) Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff MADRID herself was a victim of a drugging, kidnapping, and sexual assault by a male.  As a result, she came back from vacation to the District Attorney's office with a lingering psychological disability of anxiety and depression because of that unfortunate incident in Europe.  Despite this

awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it.  In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

E)      By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination.  There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

■       On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino.  On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

■       On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense.  His sentence included 3 years probation and 46 days in jail to be served in home confinement.  Mr. Degonia

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position.  Mr. Degonia also was not required to submit to alcohol testing and drug screening.

■     On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense.  This arrest and conviction occurred in San Diego County.  DeLimon had also been involved in a previous incident in San Diego County in 2006 involving an altercation with the police outside a bar.  Although DeLimon was not arrested in the earlier 2006 incident, he was placed on paid administrative leave by the Riverside County District Attorney's Office, for whom he was working at the time.  By the time of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY.  Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■     Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court.  Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him.  Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense.  Nevertheless,

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

54

Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■        Deputy District Attorney Tom Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)        On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)        On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

in that report, including, but not limited to, the following:

- "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis." As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

- "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*." Commander Berakovich negligently or deliberately mis-cited Policy C-10. Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

- As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or "on call" status as applying to Plaintiff. In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

Defendants HESTRIN and FABRIZIO used this erroneous investigative report by Commander Berakovich to terminate Plaintiff, knowing that he was incorrect in his assessments, and further knowing that Plaintiff's right to be free from unreasonable searches and seizures under both article 1, section 13 of the California Constitution and the Fourth Amendment to the United States Constitution was deliberately violated on October 31, 2016 and thereafter.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

56

**SIXTH CAUSE OF ACTION**

**(VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I, SECTION 7 ADDRESSING "DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW— CALIFORNIA BANE ACT RE *CALIFORNIA CIVIL CODE SECTION 52.1*— BROUGHT BY PLAINTIFF AGAINST DEFENDANTS RIVERSIDE COUNTY, MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 50**).

123.   Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-122, as though fully set forth.

124.   At all times herein mentioned, article 1, section 7 of the California Constitution provides that a citizen of this state may not be deprived of life, liberty, or due process of law.

125.   At all times herein mentioned, *California Civil Code* §52.1, otherwise known as the Bane Act,  provided in pertinent part as follows:

" (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

(c) An action brought pursuant to subdivision (a) or (b) may be filed either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has his or her place of business...."

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

57

126. By engaging in the unlawful conduct more fully described in other paragraphs of this Complaint— in particular paragraphs 39 through 44— Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of Defendant RIVERSIDE COUNTY violated the rights of Plaintiff to be free from deprivation of life, liberty, or due property without due process of law. This violation of constitutional rights directly led to Plaintiff's termination on March 29, 2017.

127. Further, at all times herein mentioned, the individually-named defendants in this cause of action, acting on behalf of Defendant RIVERSIDE COUNTY, interfered by threat, intimidation, and coercion with Plaintiff's enjoyment of her constitutional rights under the California Constitution, article 1, section 7.

128. By the terms of the Bane Act, set forth above, Plaintiff is entitled to the damages and remedies provided under *California Civil Code* §52. Section 52 allows the following types of damages in this cause of action: "actual" damages, meaning special and general damages, punitive damages, and, also, allows for attorney's fees in the court's discretion.

129. As a direct consequence of the aforesaid violation of constitutional rights, the named defendants herein used "fruit of the poisonous tree" to terminate Plaintiff.

130. As a direct result of her termination, Plaintiff has sustained and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

131. Plaintiff, if the prevailing party on this cause of action, is entitled to her reasonable attorney's fees in an amount determined by the court after trial (*California Civil Code* §52[b][3]).

132. Plaintiff is also entitled to an award of punitive damages against the individually-named defendants in this cause of action (i.e. Despite the Bane Act, Plaintiff cannot obtain punitive damages from Defendant RIVERSIDE COUNTY by

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

virtue of the absolute immunity provided by *California Gov't Code* §818). The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action. Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim. These facts, include, but are not limited to, the following:

A)      Co-Defendant RIVERSIDE COUNTY, the employer of the individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening. Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening. At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening. Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B)      On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN. Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility. Plaintiff asked, "what kind of medical examination", and the answer was "I don't know". Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired. Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)    On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D)    Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff MADRID herself was a victim of a drugging and sexual assault by a male.  As a result, she came back from vacation to the District Attorney's office with a lingering

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

psychological disability of anxiety and depression because of that unfortunate incident in Europe. Despite this awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it. In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

E)      By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination. There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

■      On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino. On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility. Also, Ms. Postil did not receive any discipline.

■      On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense. His sentence included 3 years probation and 46 days in jail to be served in home confinement. Mr. Degonia was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position. Mr. Degonia also was not required to submit to alcohol testing and drug screening.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

61

■ On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense. This arrest and conviction occurred in San Diego County. DeLimon had also been involved in a previous incident in San Diego County in 2006 involving an altercation with the police outside a bar. Although DeLimon was not arrested in the earlier 2006 incident, he was placed on paid administrative leave by the Riverside County District Attorney's Office, for whom he was working at the time. By the time of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY. Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline. In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■ Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011. At the time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court. Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him. Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense. Nevertheless, Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY. Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

■        Deputy District Attorney Tom Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)        On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)        On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements in that report, including, but not limited to, the following:

■        "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

63

*while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

■     "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-10.  Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

■     As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or  "on call" status as applying to Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

Defendants HESTRIN and FABRIZIO used this erroneous investigative report by Commander Berakovich to terminate Plaintiff, knowing that he was incorrect in his assessments, and further knowing that Plaintiff's right to be free from unreasonable searches and seizures under both article 1, section 13 of the California Constitution and the Fourth Amendment to the United States Constitution was deliberately violated on October 31, 2016 and thereafter.

///

///

///

///

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

64

**SEVENTH CAUSE OF ACTION**

**(VIOLATION OF CONSTITUTIONAL RIGHT TO DUE PROCESS AND EQUAL PROTECTION OF THE LAW— FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION RE 42 U.S.C. SECTIONS 1983, ET SEQ.— BROUGHT BY PLAINTIFF AGAINST DEFENDANTS RIVERSIDE COUNTY, MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 50**).

133.  Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-132, as though fully set forth.

134.  At all times herein mentioned, the Fourteenth Amendment to the United States Constitution provided that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

135.  Based on the allegations contained in this entire Complaint, and incorporated provisions as noted above, the above-named individual defendants, acting on behalf of and with the ratification of Defendant RIVERSIDE COUNTY, separately and each violated the Fourteenth Amendment's proscription against deprivation of Plaintiff's liberty interest (violations of her Fourth Amendment rights as contained in the First Cause of Action and false imprisonment as contained in Fifth Cause of Action of this Complaint), Plaintiff's property interest in her long-time job as a deputy district attorney for Defendant Riverside County, and also denied her equal protection under the law (otherwise known as "class-of-one discrimination") in that she was treated differently from those other deputy district attorneys who broke the law of the State of California by his or her convictions of DUI and who managed

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

65

to retain their jobs.

136. The manner in which Plaintiff was treated by her employer and its authorized agents— the individually-named defendants in this cause of action whose actions were supported and ratified by their employer, Defendant RIVERSIDE COUNTY, "shocks the conscience".

137. As a direct result of this aforesaid Fourth Amendment violation, Plaintiff has sustained, and will continue to sustain for a period of time in the future, compensatory and general damages in an amount according to proof.

138. Plaintiff, if the prevailing party, is entitled to her reasonable attorney's fees and costs in prosecuting this cause of action in an amount according to proof at trial under the statutory scheme of 42 U.S.C. §§1983, et seq.

139. The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action. Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim. These facts, include, but are not limited to, the following:

A) Co-Defendant RIVERSIDE COUNTY, the employer of the individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening. Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening. At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening. Therefore, on October 31, 2016, the individually-named

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

66

defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B) On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN. Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility. Plaintiff asked, "what kind of medical examination", and the answer was "I don't know". Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired. Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators. The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff. They also did not have her voluntary and uncoerced consent. Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C) On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present. Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside. Ultimately, the drug test was positive for marijuana and negative for all other controlled substances. The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave). Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause,

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree." All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D) Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012. Plaintiff MADRID herself was a victim of a drugging and sexual assault by a male. As a result, she came back from vacation to the District Attorney's office with a lingering psychological disability of anxiety and depression because of that unfortunate incident in Europe. Despite this awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it. In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

E) By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination. There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

■ On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino. On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

■        On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense.  His sentence included 3 years probation and 46 days in jail to be served in home confinement.  Mr. Degonia was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position.  Mr. Degonia also was not required to submit to alcohol testing and drug screening.

■        On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense.  This arrest and conviction occurred in San Diego County.  DeLimon had also been involved in a previous incident in San Diego County in 2006 involving an altercation with the police outside a bar.  Although DeLimon was not arrested in the earlier 2006 incident, he was placed on paid administrative leave by the Riverside County District Attorney's Office, for whom he was working at the time.  By the time of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY.  Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■        Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court.  Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him.  Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense.  Nevertheless, Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■　　　　Deputy District Attorney Tim Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)　　　On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)　　　On December 19, 2016, Ms. Madrid was required to attend an

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements in that report, including, but not limited to, the following:

■     "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

■     "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-10.  Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

■     As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or  "on call" status as applying to Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District

Attorney's office of Defendant RIVERSIDE COUNTY.

Defendants HESTRIN and FABRIZIO used this erroneous investigative report by Commander Berakovich to terminate Plaintiff, knowing that he was incorrect in his assessments, and further knowing that Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution was deliberately violated on October 31, 2016 and thereafter.

**EIGHTH CAUSE OF ACTION**

**(VIOLATION OF RIGHT TO PRIVACY UNDER CALIFORNIA CONSTITUTION, ARTICLE 1, SECTION 1— CALIFORNIA BANE ACT RE *CALIFORNIA CIVIL CODE SECTION 52.1*— BROUGHT BY PLAINTIFF AGAINST DEFENDANTS RIVERSIDE COUNTY, MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 50**).

140.   Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-139, as though fully set forth.

141.   At all times herein mentioned, article 1, section 1 of the California Constitution provided that: "[A]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."   Article 1, section 1 protected the "privacy" rights of Plaintiff MADRID.

142.   At all times herein mentioned, *California Civil Code* §52.1, otherwise known as the Bane Act,  provided in pertinent part as follows:

"  (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

(c) An action brought pursuant to subdivision (a) or (b) may be filed either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has his or her place of business...."

143.   By engaging in the unlawful conduct more fully described in other paragraphs of this Complaint— in particular paragraphs 39 through 44— Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of Defendant RIVERSIDE COUNTY violated the rights of Plaintiff to be free from unreasonable and warrantless searches and seizures guaranteed to every citizen of this state.  This violation of constitutional rights directly led to Plaintiff's termination on March 29, 2017.

144.   By engaging in the unlawful conduct more fully described in other paragraphs of this Complaint— in particular paragraphs 39 through 44— Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of Defendant RIVERSIDE COUNTY violated the rights of Plaintiff to be free from invasions of the privacy interest of Plaintiff MADRID that is guaranteed to every citizen of this state. This violation of constitutional rights directly led to Plaintiff's termination on March 29, 2017.

145.   Facts supporting this claim that Plaintiff MADRID's privacy interest, guaranteed under article 1, section 1 of the California Constitution, was violated by the said actions of Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of and with the ratification of their employer— Defendant, RIVERSIDE COUNTY, include, but are not limited to, the

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

following:

A)      As noted above in this cause of action, the particular unlawful conduct set forth in paragraphs 39-44 of this Complaint;

B)      The fact that Defendant, RIVERSIDE COUNTY, did not have any drug testing policy or requirement attached to either Plaintiff's employment with Defendant RIVERSIDE COUNTY;

C)      The fact that Plaintiff's union MOU did not have drug testing policy or requirement for the conduction of a "fitness for duty" examination;

D)      The fact that Plaintiff was forced to submit to alcohol testing and a drug screen test without any reasonable cause or suspicion (i.e. she was told that she would to attend the so-called "medical examination" as part of the "fitness for duty" examination, and then her liberty was restrained by peace officers who forcibly took her to the testing site);

E)      The fact that Plaintiff was forced/ coerced, and/or by artifice and trickery, to have a so-called "medical examination" at the County's facility on October 31, 2016 (i.e. the individually-named defendants in this cause of action were law enforcement officials who lied to Plaintiff about a "medical examination" being required under the "fitness for duty" examination, and instead had peace officers accompany to her an alcohol test and drug screen against her will);

F)      The fact that, for a period of at least one month prior to the October 31, 2016 alcohol test and drug screening, Plaintiff was off work on her own time pursuant to an authorized CFRA/ FMLA medical leave (i.e. if any drug such as marijuana would have shown up on the drug screen of October 31, 2016, it would necessarily have to have been ingested or used during a period when she was "off duty", thereby demonstrating that Plaintiff could not have possibly violated Defendant RIVERSIDE COUNTY's C-10 Alcohol and Substance Abuse Policy).

G)      The fact that Plaintiff was not given her *Miranda* warnings by any of the individual defendants named in this cause of action before forcibly transporting

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

74

her to the County facility for the alcohol and drug screen on October 31, 2016; and,

H)  The fact that Plaintiff was forced to take an alcohol test and drug screen under the auspices that she was having a "fitness for duty" examination arising out of the investigation into workplace violence allegations against Plaintiff by a colleague, when in fact Plaintiff had been "cleared" of any wrongdoing as a result of that investigation.

146.  By the terms of the Bane Act, set forth above, Plaintiff is entitled to the damages and remedies provided under *California Civil Code* §52.  Section 52 allows the following types of damages in this cause of action: "actual" damages, meaning special and general damages, punitive damages, and, also, allows for attorney's fees in the court's discretion.

147.  As a direct consequence of the aforesaid violation of constitutional rights, the named defendants herein used "fruit of the poisonous tree" to terminate Plaintiff.  Further, in obtaining the drug screen sample, which tested positive for marijuana, invaded her liberty interest and her privacy interest, and denied her due process of law, as guaranteed by pertinent provisions of the California Constitution.

148.  As a direct result of her termination, Plaintiff has sustained and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

149.  Plaintiff, if the prevailing party on this cause of action, is entitled to her reasonable attorney's fees in an amount determined by the court after trial (*California Civil Code* §52[b][3]).

150.  Plaintiff is also entitled to an award of punitive damages against the individually-named defendants in this cause of action (i.e. Despite the Bane Act, Plaintiff cannot obtain punitive damages from Defendant RIVERSIDE COUNTY by virtue of the absolute immunity provided by *California Gov't Code* §818).  The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

75

acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action.  Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim.  These facts, include, but are not limited to, the following:

A)    Co-Defendant RIVERSIDE COUNTY, the employer of the individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening.  Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening.  At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening.  Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B)    On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility.  Plaintiff asked, "what kind of medical examination", and the answer was "I don't know".  Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired.  Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)      On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D)      Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff MADRID herself was a victim of a drugging and sexual assault by a male.  As a result, she came back from vacation to the District Attorney's office with a lingering psychological disability of anxiety and depression because of that unfortunate incident in Europe.  Despite this awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it. In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

E)   By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination.  There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

■   On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino.  On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

■   On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense.  His sentence included 3 years probation and 46 days in jail to be served in home confinement.  Mr. Degonia was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position.  Mr. Degonia also was not required to submit to alcohol testing and drug screening.

■   On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense.  This arrest and conviction occurred in San Diego County.  DeLimon

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

had also been involved in a previous incident in San Diego County in 2006 involving an altercation with the police outside a bar.  Although DeLimon was not arrested in the earlier 2006 incident, he was placed on paid administrative leave by the Riverside County District Attorney's Office, for whom he was working at the time.  By the time of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY.  Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■   Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court.  Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him.  Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense.  Nevertheless, Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■   Deputy District Attorney Tom Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

79

convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)    On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)    On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements in that report, including, but not limited to, the following:

■    "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

80

personal medical leave under the CFRA/ FMLA.

■   "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*."   Commander Berakovich negligently or deliberately mis-cited Policy C-10.  Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

■   As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or  "on call" status as applying to Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

Defendants HESTRIN and FABRIZIO used this erroneous investigative report by Commander Berakovich to terminate Plaintiff, knowing that he was incorrect in his assessments, and further knowing that Plaintiff's right to be free from unreasonable searches and seizures under both article 1, section 13 of the California Constitution and the Fourth Amendment to the United States Constitution was deliberately violated on October 31, 2016 and thereafter.

**NINTH CAUSE OF ACTION**

**(VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT—**
*CALIFORNIA GOVERNMENT CODE SECTION 12945.2—*
**BROUGHT BY PLAINTIFF AGAINST DEFENDANT RIVERSIDE COUNTY AND DOES 2 THROUGH 50)**

151.   Plaintiff realleges and incorporates herein those matters contained in

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

paragraphs 4-13, 14-33, and 39-150, as though fully set forth.

152. At all times herein mentioned, the California Fair Employment and Housing Act was in full force and effect. *California Government Code* §12945.2 is a section of the Act which is otherwise known as the "California Family Rights Act" (CFRA).

153. On September 28, 2016, Deputy District Attorney Melanie Deutsch, also employed by Defendant RIVERSIDE COUNTY, alleged that she heard Plaintiff MADRID make a comment about wishing to be dead and shooting up the workplace. At all times herein mentioned, Plaintiff MADRID has categorically denied making those comments. Instead, because she was overworked with a responsibility of handling more than 100 open criminal case files at any one time, Plaintiff MADRID claims all that she said was "just shoot me", referring in exasperation to being overworked.

154. On September 29, 2016, the District Attorney's Office of Defendant RIVERSIDE COUNTY opened up an investigation into the claim made by DDA Deutsch. Initially, on September 29, 2016, Plaintiff MADRID was placed on administrative leave with pay pending the outcome of this investigation into the claim of DDA Deutsch.

155. On September 30, 2016, Plaintiff MADRID, with the consent of the District Attorney's Office of Defendant RIVERSIDE COUNTY, changed her leave status from paid administrative leave to leave for a medical condition under the California Family Rights Act (*California Gov't. Code* §12945.2) or the federal equivalent, the Family Medical Leave Act (29 U.S.C. §§2601, et seq.). This change in leave status was the result of Plaintiff's evaluation by her own LMFT at Kaiser Permanent and psychiatrist at Kaiser Permanente which: (1) indicated that Ms. Madrid was "not a danger to herself or others"; and, (2) that she should remain off work for medical reasons under CFRA/ FMLA leave. The District Attorney's Office agreed to change her leave status from "paid admin leave" to "CFRA/ FMLA leave".

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Consequently, Plaintiff MADRID remained on leave status under the CFRA/ FMLA until October 30, 2016 and was due to return work at the DA's Office on October 31, 2016.

156.   On October 31, 2016, Ms. Madrid's return to work date, the District Attorney's Office of Defendant RIVERSIDE COUNTY placed her on "paid administrative leave" pending Defendant RIVERSIDE COUNTY's evaluation of her ability to adequately and safely perform the functions of her deputy district attorney position— as noted above, this evaluation was to take place on November 2, 2016. At that point, the District Attorney's Office of Defendant RIVERSIDE COUNTY had completed its investigation of the alleged workplace comments made by Plaintiff MADRID on September 28, 2016.  All that remained was for Plaintiff, under relevant provisions of the MOU, to attend a fitness for duty examination by a physician selected by Defendant RIVERSIDE COUNTY and obtain a clearance to the effect that she was not a danger to herself or to others.

157.     On this same date of October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, and Deputy Director of Administration Ginika Ezinwa.  At this meeting, the following occurred:

A)     Plaintiff MADRID was told that she had to sign a document placing her back on administrative leave with pay effective that day.   Neither the document nor anything stated in the meeting gave notice to Plaintiff that Defendant RIVERSIDE COUNTY was requiring her to submit to a test for alcohol and/or drugs. In fact, she was only told in this meeting that she would have to immediately attend a "medical examination" at the County's Health & Wellness Facility.

B)     Plaintiff was advised that, if she did not agree to immediately attend this "medical examination", that it would be "insubordination" and a terminable offense.

C)     Plaintiff was also forced to have two female District Attorney

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Investigators drive her to the facility for the "medical examination"— Defendants CHEBATAH and DOE 1 FEMALE INVESTIGATOR.  She was not permitted to voluntarily attend the "medical examination" and was told that she could not even drive her own vehicle to the facility.

D)   Plaintiff believed the so-called "medical examination" was going to be a "mental examination" regarding her fitness for duty.  However, no representative of Defendant RIVERSIDE COUNTY at this meeting advised Plaintiff that her belief was incorrect and/or that the "fitness for duty" examination by the County's physician was not the same as this "medical examination."

158.  At all times herein mentioned, Plaintiff MADRID did not believe that she could refuse to attend the so-called "medical examination", since her refusal to do so, as told to her at this October 31st meeting, would have resulted in her discharge from the employment.  In other words, Plaintiff had no rational choice but to attend the "medical examination" and to be accompanied by two District Attorney Investigators— Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR.

159.   On October 31, 2016, Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR drove Plaintiff MADRID to the designated County facility for the "medical examination".  Plaintiff was not permitted to leave the sight of the two District Attorney investigators and was forced to do what they said.

160.  On October 31, 2016, upon arrival to the County's facility for the "medical examination", Plaintiff MADRID learned that no "medical examination" would in fact occur.  In fact, no physician was present and a "medical examination" did not occur.  What did occur was that Plaintiff was, under threat of losing her job, forced to submit to an alcohol and drug screen test.  Plaintiff's blood was drawn for the alcohol test by a nurse or technician and she was coerced into submitting to a urine sample test.  The nurse stood outside the bathroom door while Plaintiff was urinating into the test capsule.

161.  After completing the alcohol and drug screen test, the nurse advised

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

84

Plaintiff MADRID that her "fitness for duty" examination by a mental health professional selected by Defendant RIVERSIDE COUNTY nwould take place on November 2, 2016.  The mental health professional selected was Dr. Elizabeth White.

162.   On November 2, 2016, Plaintiff MADRID attended the fitness for duty examination with Dr. White, Defendant RIVERSIDE COUNTY's  designated mental health professional.  She was there for about 8 hours.  Plaintiff took personality tests and submitted to a long interview.  To this date, Plaintiff  has never been provided with a copy of Dr. White's report of this fitness for duty examination.  On information and belief, Dr. White's report ultimately informed Defendant RIVERSIDE COUNTY that Ms. Madrid was "not a danger to herself and/or to others."

163.   As of November 2, 2016, when Plaintiff was declared "fit for duty" by the County's mental health professional, this was the first opportunity for Defendant RIVERSIDE COUNTY to return to work from CFRA medical leave.  As of this date, the investigation into the workplace violence allegations against Plaintiff had been determined in her favor and she was declared "fit for duty".  However, at that point Defendant RIVERSIDE COUNTY apparently was waiting for the official results of the alcohol and drug screen test that is the subject of the constitutional and statutory causes of action alleged in this Complaint.  Defendant RIVERSIDE COUNTY did not officially learn that Plaintiff had tested positive for marijuana use until November 28, 2016.

164.   Plaintiff was never returned to her same position as Deputy District Attorney, Step IV, at any time after her CFRA medical leave expired on October 31, 2016.  From October 31, 2016 to the date of her termination on March 29, 2016, she had been placed on administrative leave with pay.  Plaintiff was informed in writing that she was terminated because of the drug screen test that was purportedly positive for marijuana on October 31, 2016, which was forcibly taken in violation of her constitutional and statutory rights as alleged herein in other causes of action.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Because, as alleged in this Complaint, the positive marijuana test was "fruit of the poisonous tree", the second and last opportunity for Defendant RIVERSIDE COUNTY  to allow Plaintiff to return to work from authorized CFRA leave was on November 28, 2016.

165.   Pertinent provisions of the California Code of Regulations require an employer in this state, after granting a requested CFRA leave, to allow the employee on leave to return to his or her same or comparable position upon the end of the CFRA leave.  (2 CCR §11089[a][1]).  It is an unlawful employment practice in this state for an employer, after granting the request for a CFRA leave, to refuse to reinstate the employee to the same or comparable position at the end of the leave, subject to specific defenses.  (2 CCR §11089[a][2]).  There are only two defenses for the employer.  2 CCR §11089(d)(1) provides that reinstatement to the same or comparable position is an employer's defense if the employee's employment would have ceased or his or her hours would have been reduced.  2 CCR §11089(d)(2) provides that reinstatement to the same or comparable position is an employer's defense is that the employee is what is known as a "key employee"— as to this second "key employee" defense, it is the employer's burden by a preponderance of the evidence to demonstrate that all seven (7) different requirements for the defense exist.

166.   Neither of the two employer defenses as noted in the immediately above paragraph are available to Defendant RIVERSIDE COUNTY in this action.  As to the "key employee" defense, there are absolutely no facts to suggest that Defendant RIVERSIDE COUNTY relied on it when the County terminated her on March 29, 2017.  As to the first defense noted above— "if the employment would have ceased....", the constitutional and statutory violations alleged in the other causes of action in the Complaint, if true and accurate, would mean that Defendant RIVERSIDE COUNTY could not rely on the same.

167.   On November 28, 2017, Plaintiff attempted to file an administrative

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

complaint with the DFEH and to obtain an immediate "right to sue" letter from the agency's online service. Plaintiff's counsel has an account with the DFEH for this purpose. However, the DFEH had recently changed its online service and it has been inoperable. The attempts of Plaintiff's counsel to obtain the DFEH administrative complaint and "right to sue" from this online service have been thwarted. Therefore, Plaintiff's counsel has filed by mail an administrative complaint with the DFEH on the FEHA causes of action in this Complaint, and will obtain the "right to sue" notice by mail. This Complaint and paragraph will be amended once that "right to sue" notice has been obtained by mail.

168. As a direct result of Defendant RIVERSIDE COUNTY's violation of pertinent provisions of the CFRA, Plaintiff has sustained, and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

169. Plaintiff, if the prevailing party, is entitled to her reasonable attorney's fees and costs pursuant to *California Government Code* §12965(b) in an amount according to proof at the trial of this action.

WHEREFORE, Plaintiff prays for the following relief:

On the First and Seventh Causes of Action:

1.	For compensatory and general damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

2.	For attorney's fees pursuant to 42 U.S.C. Sections 1983, et seq.

3.	For punitive damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

On the Second, Sixth, and Eighth Causes of Action:

1.	For compensatory and general damages against Defendants RIVERSIDE COUNTY, HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

2.     For attorney's fees pursuant to *California Civil Code* §52(b)(3).

3.     For punitive damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

On the Third Causes of Action:

1.     For compensatory and general damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

2.     For attorney's fees pursuant to 42 U.S.C. Sections 1983, et seq.

On the Fourth and Fifth Causes of Action:

1.     For compensatory and general damages against Defendants RIVERSIDE COUNTY, HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

2.     For punitive damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

On the Ninth Cause of Action:

1.     For compensatory and general damages against Defendants RIVERSIDE COUNTY, HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

2.     For attorney's fees and expenses/ costs pursuant to *California Government Code* §12965(b).

3.     For punitive damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

On All Causes of Action:

1.     For costs of the suit herein incurred.

2.     For such other and further relief as this court may deem proper and just.

///

///

///

///

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Dated: November 30, 2017        LAW OFFICES OF JOEL W. BARUCH, PC


By _____

Joel W. Baruch, Counsel for Plaintiff


## DEMAND FOR JURY TRIAL

1.    Plaintiff herein demands a trial by jury.


Dated: November 30, 2017        LAW OFFICES OF JOEL W. BARUCH, PC


By _____

Joel W. Baruch, Counsel for Plaintiff


**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**