Joel W. Baruch  SBN 85903
Corey A. Hall  SBN 295470
LAW OFFICE OF JOEL W. BARUCH, PC
2020 Main Street,  Suite 900
Irvine, California 92614
Telephone (949) 864-9662
Facsimile (949) 851-3185

Attorneys for Plaintiff REBECCA MADRID

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA—EASTERN DIVISION

REBECCA MADRID,

               Plaintiff,

vs.

COUNTY OF RIVERSIDE
DISTRICT ATTORNEY'S
OFFICE aka COUNTY OF
RIVERSIDE, a public entity;
MIKE HESTRIN, District
Attorney for County of Riverside;
VINCE FABRIZIO, Chief Deputy
District Attorney for County of
Riverside; HEIDI CHEBAHTAH,
District Attorney Investigator—
County of Riverside; DOE 1
FEMALE INVESTIGATOR,
District Attorney- County of
Riverside; and DOES 2 Through
25, Inclusive,

               Defendants.

CASE NO. 5:17-cv-02405-JGB-SP

*Assigned for All Purposes to the
Honorable Jesus G. Bernal*

**FIRST AMENDED COMPLAINT
FOR DAMAGES AND DEMAND
FOR JURY TRIAL**

**Date Filed: November 30, 2017
Trial Date: Not Set**

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

1

COMES NOW, Plaintiff, REBECCA MADRID, who makes this Complaint for Damages and Demand for Jury Trial as follows:

### JURISDICTIONAL ALLEGATIONS

1.      As to the federal law claims contained in this Complaint, the original jurisdiction of the United States District Court is invoked pursuant to 42 U.S.C. §1331, in that these federal claims involve federal questions with amounts in controversy over $75,000.

2.      As to the state law claims contained in this Complaint, the supplemental jurisdiction of the United State District Court is invoked pursuant to 28 U.S.C. §1367, in that the state law claims and the federal law claims have common questions of law and fact.

3.      Venue of this action in the Eastern District of California is sought pursuant to 28 U.S.C. §1391, in that both the state and federal law claims arose in the County of Riverside, State of California.

### GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4.      Plaintiff, REBECCA MADRID (hereafter MADRID) is, and at all times herein mentioned was, a citizen of the State of California.  Up until her termination of employment on March 29, 2017, Plaintiff MADRID was a Deputy District Attorney, Step IV, for Defendant COUNTY OF RIVERSIDE.

5.      Defendant, COUNTY OF RIVERSIDE DISTRICT ATTORNEY'S OFFICE aka COUNTY OF RIVERSIDE (hereafter RIVERSIDE COUNTY) is a law enforcement agency existing and operating within RIVERSIDE COUNTY.  At all times herein mentioned, Defendant RIVERSIDE COUNTY was the employer of Plaintiff MADRID until her termination from the employment on March 29, 2017.

6.      Defendant, MIKE HESTRIN (hereafter HESTRIN), is, and at all times herein mentioned was, the District Attorney for Co-Defendant RIVERSIDE COUNTY.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

7.     Defendant, VINCE FABRIZIO (hereafter FABRIZIO) is, and at all times herein mentioned was, a Chief Deputy District Attorney for Defendant RIVERSIDE COUNTY.

8.     Defendant, HEIDI CHEBAHTAH (hereafter CHEBATAH) is, and at all times herein mentioned was, an investigator for District Attorney's Office of Co-Defendant RIVERSIDE COUNTY.  On information and belief, Defendant CHEBAHTAH has recently retired from the District Attorney's Officer, but still is believed to be a citizen of the State of California.

9.     Defendant, DOE 1 FEMALE INVESTIGATOR (hereafter DOE 1 INVESTIGATOR) is, and at all times herein mentioned was, an investigator with the District Attorney's Office of Co-Defendant RIVERSIDE COUNTY.  Plaintiff will seek to amend this Complaint when the true name of Defendant DOE 1 FEMALE INVESTIGATOR is finally ascertained.

10.     Plaintiff is not aware of the true names and/or capacities of those individuals or entities sued herein as DOES 2 Through 25 and, therefore, sues these DOE defendants by their fictitious names.  Plaintiff will seek to amend this Complaint when the true names and/or capacities of these DOE defendants are finally ascertained.

11.     At all times herein mentioned, Defendants HESTRIN, FABRIZIO, CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR, and DOES 2 Through 25, inclusive, were agents and employees of the District Attorney's office of Co-Defendant RIVERSIDE COUNTY.  In doing the things hereinafter mentioned, said individual defendants were, at all times, acting with the course and scope of their employment with the District Attorney's Office of Co-Defendant RIVERSIDE COUNTY.

12.     At all times herein mentioned, Defendants HESTRIN and FABRIZIO, , were policy-makers for the District Attorney's Office of Co-Defendant RIVERSIDE

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

COUNTY.  Said Defendants HESTRIN and FABRIZIO, were also decision-makers in Plaintiff's alleged wrongful termination from her employment with the District Attorney's Office of Co-Defendant RIVERSIDE COUNTY.

13.    As to the state law causes of action contained in this Complaint, Plaintiff MADRID filed a timely government tort claim exhausting her administrative remedies on September 19, 2017.  A true and correct copy of this government tort claim is attached hereto as **Exhibit A**.  Defendant, RIVERSIDE COUNTY, rejected this government tort claim by letter of October 5, 2017, a true and correct copy of which is attached hereto as **Exhibit B**.

**FACTS— RE EDUCATION AND LEGAL CAREER**
**OF PLAINTIFF MADRID:**

14.    Plaintiff MADRID, with a date of birth of May 31, 1962, is an unmarried female attorney licensed to practice law in the State of California.  Since December 4, 1990, Plaintiff MADRID has been admitted with the California State Bar to practice law in this state.  Plaintiff MADRID does not have any record of public discipline for the last 27 years since being admitted to practice law in this state.

15.    Plaintiff MADRID  attended undergraduate studies and law school at the University of New Mexico.  She entered the University of New Mexico with an academic scholarship.  She made the Dean's List from 1982-1985, she was inducted into the Golden Key National Honor Society, and she also received a scholarship from the New Mexico Broadcaster's Association in the Spring of 1984.  She graduated in May, 1985 with a Bachelor of Arts Degree in English Creative Writing.

16.    Plaintiff MADRID attended law school at the University of New Mexico and obtained her J.D. degree in May, 1990.  She received these honors in law school: (a) In the Spring of 1989, she was the Texas Young Lawyers Trial Competition Regional Champion; (b) In the Spring of 1989, she was the recipient of the American College of Trial Lawyers Medal for Excellence in Advocacy; and, (c) In the years 1989-1990, she was on the Honor Roll.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

17.     Starting her career as a prosecutor in the County of Los Angeles District Attorney's in December of 1990, Plaintiff MADRID prosecuted misdemeanor and felony cases through August, 1993.  She prosecuted felony cases of all types, including drug charges, fraud, credit card and identity theft, residential burglary, terrorist threats, armed bank robbery, indecent exposure, armed kidnap for robbery, mayhem, and first degree murder.

18.     From August 1993 to July 1995, Plaintiff MADRID worked as a prosecutor in the district attorney's Workers Compensation Fraud Unit.  In this capacity, she prosecuted complex medical/ legal insurance fraud cases.  She participated in the drafting and execution of countywide search warrants involving hundreds of targets.  She also conducted lectures and training for insurance company fraud investigators and fellow deputy district attorneys.

19.     From July 1995 to August 1996, Plaintiff MADRID worked in the district attorney's City of Compton Branch Office.  In that capacity, she prosecuted all classes of felony cases, including drug violations, armed robbery, assault with a deadly weapon causing great bodily injury, and first degree murder with personal use of an automatic assault rifle.

20.     Plaintiff MADRID left the LA County District Attorney's Office in September 1996.  She worked as a senior litigation associate in the firm of Richards, Watson & Gershon, PC for a little less than one year— August 1997.  In that capacity, she litigated cases involving land use, zoning, eminent domain, and various aspects of municipal law.  She also served on the associate hiring committee.  She also lectured to the litigation department on appellate decisions impacting the validity of municipal ordinances.  She also served as the Assistant City Prosecutor for the cities of Rancho Palos Verdes and Westlake Village, handling municipal ordinance violations.  She was also invited as a guest lecturer to a trial advocacy class at the University of Southern California School of Law contrasting criminal and civil law practice.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

21.     In August of 1997, Plaintiff MADRID decided that a civil law practice was not what she wanted to pursue, and, accordingly, she was hired back as a deputy district attorney in the County of Los Angeles District Attorney's Office.  Her first assignment was as a prosecutor in the Central Trials section of that office.  In that capacity, she vertically prosecuted burglary, fraud, and violence crimes, kidnapping of a child under age 14, sexual abuse of a child, domestic violence, armed robbery, attempted murder, and first degree murder.  She also handled a felony trial court calendar.  She served in that particular job capacity until February of 1999.

22.     In February of 1999, while still a prosecutor in the County of Los Angeles District Attorney's Office, she served as a Deputy District Attorney in the Sexually Violent Predator section of the office.  In this capacity, she vertically prosecuted sexually violent predator commitment proceedings from inception to jury trial.  She also litigated issues relating to the diagnostic features of numerous psychiatric disorders as enumerated in the DSM-IV-TR and various statistical instruments used by psychologists and psychiatrists to measure those disorders.  She also presented a lecture to fellow deputy district attorneys on the elements of a Sexually Violent Predator Civil Commitment statute.  She served in that particular job capacity until June, 2011.

23.     In June of 2001, while still a prosecutor in the County of Los Angeles District Attorney's Office, she served as a Deputy District Attorney in the Elder Abuse section of the office.  In this capacity, she vertically prosecuted complex cases of real estate and bank fraud, theft by false pretenses, physical abuse and neglect, and violent crimes committed against elders.  She litigated issues involving diminished capacity, mental competency, dementia, and cause of death.  She served in that particular job capacity until January 2003.

24.     In January, 2003, while still a prosecutor in the County of Los Angeles District Attorney's Office, she served as a Deputy District Attorney in the Appellate Division section of the office.  In this capacity, she litigated Petitions for Writs of

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Habeas Corpus throughout the County of Los Angeles.  She researched, drafted and filed informal responses, returns, and conducted evidentiary hearings in cases involving violent crime.  She briefed and argued cases involving post-conviction DNA testing, post-conviction discovery in death penalty cases, and post-conviction immigration issues.  She served in this capacity until about December 2007, when she returned to her original home state— New Mexico— to reside for the time being.

25.     From April 2008, when she was admitted to the New Mexico State Bar, to August 2008, Plaintiff MADRID worked in Albuquerque, New Mexico, for the Office of the District Attorney Second Judicial District as a senior trial attorney in the Crimes Against Children Unit.  In that capacity, she vertically prosecuted crimes against children, including homicide, sexual assault, child pornography, physical abuse and neglect, and kidnapping.  As noted, she was only in this position for about four (4) months.

26.     Starting in January 2009, Plaintiff MADRID was hired by Defendant RIVERSIDE COUNTY as a deputy district attorney.  She was initially assigned to the Writs & Appeals section of the office.  In that capacity, she briefed and argued appeals, petitions for mandate, and habeas corpus, petitions for certificates of rehabilitation and pardons, and petitions to seal and destroy records.  She also conducted evaluations regarding the disclosure of acts of moral turpitude pursuant to *Brady v. Maryland* (1963) 373 U.S. 83.  She also researched and drafted emergency motions for trial prosecutors throughout the various district attorney offices in Defendant RIVERSIDE COUNTY on cases ranging from misdemeanors to death penalty cases.  She also drafted memoranda and special projects for the office outlining and updating changes in the law.  She also advised prosecutors on a daily basis on evidentiary, discovery, and ethical issues.  She served in that capacity until April 2011.

27.     Starting in April 2011, Plaintiff MADRID was assigned to the Sexually Violent Predators Unit.  In this capacity, she was the sole countywide prosecutor

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  assigned to vertically prosecute sexually violent predator commitment proceedings

2  from inception to jury trial.  She served in that capacity until January 2012.

3       28.    From January 2012 to May 2012, Plaintiff MADRID was briefly

4  assigned to the office's Forensic Mental Health Unit/ Sexually Violent Predators

5  Unit/ Veteran's Court.

6       29.    In May 2012, Plaintiff MADRID was assigned to the office's Southwest

7  Drug Court.  In this capacity, she prosecuted drug cases and also handled the drug

8  court calendar for that court.  In a collaborative setting with the Department of Mental

9  Health, the Probation Department, criminal defense counsel in the area, and the judge,

10  she evaluated and negotiated plea dispositions on cases deemed appropriate for

11  disposition in the ROC Program, a collaborative court with the aim of providing

12  intense rehabilitation services to recovering addicts.  She served in that capacity until

13  May 2013.

14       30.    In May 2013, Plaintiff MADRID was assigned to the Juvenile Division,

15  where she adjudicated juvenile petitions from initial filing through court trial.  In this

16  capacity, she handled the Juvenile Court calendar.  She also litigated law and motion

17  matters, including a case of first impression opposing a defense Writ before the

18  County of Riverside Court of Appeal in the matter of *S.S. v. The Superior Court of*

19  *Riverside County*, Case No. E061258. She served in that capacity until September of

20  2015.

21       31.    In September 2015 until the date of her termination on March 29, 2017,

22  Plaintiff MADRID was assigned to the Domestic Violence/ Grand Theft Auto Felony

23  Prosecution Unit 2.  In that capacity, she prosecuted felony cases of domestic

24  violence, stalking, felony grand theft auto and carjacking, armed robbery, first degree

25  residential burglary, assault with a deadly weapon, and identity theft.   The Felony

26  Prosecution Unit 2 were known as "high volume" units, where caseloads averaged

27  over 100 per prosecutor in any given month.

28       32.    All told, Plaintiff MADRID worked as a Deputy District Attorney for the

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  County of Los Angeles for 17 years and for the District Attorney's Office of

2  Defendant RIVERSIDE COUNTY for over 8 years.

3       33.    While employed as a Deputy District Attorney for Defendant

4  RIVERSIDE COUNTY, Plaintiff MADRID served with distinction, earning good

5  performance evaluations and, also, an award of Employee of the Month in 2014.

6               **FACTS—SUPPORTING ALLEGATIONS IN ALL CAUSES**

7                  **OF ACTION OF COMPLAINT**

8       34.    During her employment as a Deputy District Attorney, Step IV, in the

9  District Attorney's Office of Defendant RIVERSIDE COUNTY, Plaintiff MADRID

10 was a public employee who could not be terminated except for "good cause" as

11 defined in the Memorandum of Understanding (MOU) between Defendant

12 RIVERSIDE COUNTY and the Riverside County District Attorney's Association.

13 The particular MOU does not require Plaintiff MADRID to exhaust administrative

14 remedies under its terms before filing a lawsuit in state or federal court.  Further, the

15 terms of this MOU do not apply to any cause of action contained in this Complaint,

16 and no cause of action contained in this action is substantially dependent upon the

17 analysis of the MOU.  Also, as to any cause of action contained in this Complaint, the

18 District Court will not have to interpret the MOU, as opposed to merely looking to,

19 consulting, or referring to pertinent provisions if the need arises.  In other words, all

20 claims contained in this Complaint can be litigated without reference to rights and

21 duties established in the MOU— therefore, no claim contained herein is subject to

22 pre-emption under Section 301 of the Labor Management Relations Act (29 U.S.C.

23 §185[a]).

24      35.    On September 28, 2016, Deputy District Attorney Melanie Deutsch, also

25 employed by Defendant RIVERSIDE COUNTY,  alleged that she heard Plaintiff

26 MADRID make a comment about wishing to be dead and shooting up the workplace.

27 At all times herein mentioned, Plaintiff MADRID has categorically denied making

28 those comments.   Instead, because she was overworked with a responsibility of

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   handling more than 100 open criminal case files at any one time, Plaintiff MADRID

2   claims all that she said was "just shoot me", referring in exasperation to being

3   overworked.

4          36.    On September 29, 2016, the District Attorney's Office of Defendant

5   RIVERSIDE COUNTY  opened up an investigation into the claim made

6   by DDA Deutsch.  Initially, on September 29, 2016, Plaintiff MADRID was placed

7   on administrative leave with pay pending the outcome of this investigation into the

8   claim of DDA Deutsch.

9          37.    On September 30, 2016, Plaintiff MADRID, on the direction of the

10  District Attorney's Office of Defendant RIVERSIDE COUNTY, consulted with an

11  LMFT and a psychiatrist from Kaiser Permanente.  The Kaiser psychiatrist changed

12  her leave status from paid administrative leave to leave for a medical condition under

13  the California Family Rights Act (*California Gov't. Code* §12945.2) or the federal

14  equivalent, the Family Medical Leave Act (29 U.S.C. §§2601, et seq.).   This change

15  in leave status (1) indicated that Ms. Madrid was "not a danger to herself or others";

16  and, (2) that she should remain off work for medical reasons under CFRA/ FMLA

17  leave.  The District Attorney's Office agreed to change her leave status from "paid

18  admin leave" to "CFRA/ FMLA leave".  Consequently, Plaintiff MADRID remained

19  on leave status under the CFRA/ FMLA until October 30, 2016 and was due to return

20  work at the DA's Office on October 31, 2016.

21         38.    The fact that Plaintiff MADRID was not in the status of "paid admin

22  leave" from September 30, 2016 through October 30, 2016 is highly significant to the

23  events which occurred afterwards.  According to Defendant RIVERSIDE COUNTY's

24  personnel and policy rules, "paid admin leave" means that the affected employee is

25  under "house arrest" between regular working hours and must be available for duty.

26  However, when an employee is on medical leave under the CFRA/ FMLA, he or she

27  is using their own accrued vacation pay and sick pay instead of Riverside County

28  funds— i.e., the employee is not under "house arrest" and their time and pursuits are

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  their own and he or she is not acting within the course and scope of employment for

2  Defendant RIVERSIDE COUNTY.

3      39.   On October 31, 2016, Ms. Madrid's return to work date, the District

4  Attorney's Office of Defendant RIVERSIDE COUNTY placed her on "paid

5  administrative leave" pending Defendant RIVERSIDE COUNTY's evaluation of her

6  ability to adequately and safely perform the functions of her deputy district attorney

7  position.  At that point, the District Attorney's Office of Defendant RIVERSIDE

8  COUNTY  had completed its investigation of the alleged workplace comments made

9  by Plaintiff MADRID on September 28, 2016.  All that remained was for Plaintiff,

10 under relevant provisions of the MOU, to attend a fitness for duty examination by a

11 physician selected by Defendant RIVERSIDE COUNTY and obtain a clearance to the

12 effect that she was not a danger to herself or to others.

13      40.   On this same date of October 31, 2016, Plaintiff MADRID was required

14 to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, and

15 Deputy Director of Administration Ginika Ezinwa.  At this meeting, the following

16 occurred:

17         A)   Plaintiff MADRID was told that she had to sign a document

18 placing her back on administrative leave with pay effective that day.   Neither the

19 document nor anything stated in the meeting gave notice to Plaintiff that Defendant

20 RIVERSIDE COUNTY was requiring her to submit to a test for alcohol and/or drugs.

21 In fact, she was only told in this meeting that she would have to immediately attend a

22 "medical examination" at the County's Health & Wellness Facility.

23         B)   Plaintiff was advised that, if she did not agree to immediately

24 attend this "medical examination", that it would be "insubordination" and a

25 terminable offense.

26         C)   Plaintiff was also forced to have two female District Attorney

27 Investigators drive her to the facility for the "medical examination"— Defendants

28 CHEBATAH and DOE 1 FEMALE INVESTIGATOR.  She was not permitted to

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  voluntarily attend the "medical examination" and was told that she could not even

2  drive her own vehicle to the facility.

3          D)      Plaintiff believed the so-called "medical examination" was going

4  to be a "mental examination" regarding her fitness for duty.  However, no

5  representative of Defendant RIVERSIDE COUNTY at this meeting advised Plaintiff

6  that her belief was incorrect and/or that the "fitness for duty" examination by the

7  County's physician was not the same as this "medical examination."

8      41.    At all times herein mentioned, Plaintiff MADRID did not believe

9  that she could refuse to attend the so-called "medical examination", since her refusal

10 to do so, as told to her at this October 31st meeting, would have resulted in her

11 discharge from the employment.  In other words, Plaintiff had no rational choice but

12 to attend the "medical examination" and to be accompanied by two District Attorney

13 Investigators— Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR.

14     42.    On October 31, 2016, Defendants CHEBAHTAH and DOE 1 FEMALE

15 INVESTIGATOR drove Plaintiff MADRID to the designated County  facility for the

16 "medical examination".  Plaintiff was not permitted to leave the sight of the two

17 District Attorney investigators and was forced to do what they said.

18     43.    On October 31, 2016, upon arrival to the County's facility for the

19 "medical examination", Plaintiff MADRID learned that no "medical examination"

20 would in fact occur.  In fact, no physician was present and a "medical examination"

21 did not occur.  What did occur was that Plaintiff was, under threat of losing her job,

22 forced to submit to an alcohol and drug screen test.  Plaintiff's blood was drawn for

23 the alcohol test by a nurse or technician and she was coerced into submitting to a

24 urine sample test.  The nurse stood outside the bathroom door while Plaintiff was

25 urinating into the test capsule.

26     44.    After completing the alcohol and drug screen test, the nurse advised

27 Plaintiff MADRID that her "fitness for duty" examination by a mental health

28 professional selected by Defendant RIVERSIDE COUNTY nwould take place on

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

12

November 2, 2016.  The mental health professional selected was Dr. Elizabeth White.

45.     On November 2, 2016, Plaintiff MADRID attended the fitness for duty examination with Dr. White, Defendant RIVERSIDE COUNTY's  designated mental health professional.  She was there for about 8 hours.  Plaintiff took personality tests and submitted to a long interview.  To this date, Plaintiff  has never been provided with a copy of Dr. White's report of this fitness for duty examination.  On information and belief, Dr. White's report ultimately informed Defendant RIVERSIDE COUNTY that Ms. Madrid was "not a danger to herself and/or to others".

46.     Also, on November 2, 2016, her urine sample was tested by technicians for the County's facility.  The sample tested positive for marijuana and no other substances.  On information and belief, on November 7, 2016, a medical review doctor from the County's facility issued a final determination that Plaintiff had tested positive for marijuana on October 31, 2016.  On further information and belief, the County's facility conducting the testing reported the positive result to the DA's Office on November 28, 2016; and, upon receiving that result, the District Attorney's Office of Defendant RIVERSIDE COUNTY officially opened up an administrative investigation on alleged new charges.

47.     On December 12, 2016, Plaintiff, while still on paid administrative leave, was personally served at her home with a notice to appear for a formal interview with DA investigators from the District Attorney's Internal Affairs Division.  The notice generally advised Plaintiff MADRID that she was the subject of an administrative investigation for allegations of conduct that "adversely affected the employee or operation of the department".

48.     On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements in that report, including, but not limited to, the following:

A)  "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

B)  "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-10.  Policy C-10 does <u>not </u>prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

C)  As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or  "on call" status as applying to Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

49.  The District Attorney's Office of Defendant RIVERSIDE COUNTY relied on Plaintiff's coerced positive drug test for marijuana on October 31, 2016, and

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

also on Commander Berakovich's intentional or negligent inaccurate investigation report and its conclusions to erroneously take adverse employment actions against Plaintiff MADRID.

50.    On February 23, 2017, a Notice to Terminate was issued to Plaintiff MADRID in accordance with the MOU provisions.  In part, the Notice to Terminate indicated that the  "this action is being taken against you for the following causes specified in Article X, Section 2 in the current Memorandum of Understanding between the County of Riverside and the Riverside County Deputy District Attorneys Association".  Cited in the Notice were these two provisions:

— "m.      Conduct either during or outside of duty hours which
            adversely affects the employee's job performance
            or operation of the department in which she is employed."
— "o.      Substance abuse in violation of the Board of
            Supervisors' Alcohol and Drug Abuse Policy
            C-10."

51.    On March 15, 2017, Madrid had a *Skelly* hearing.

52.    On March 21, 2017, Plaintiff MADRID was issued a termination letter. The termination letter specifically indicated that the workplace violence statements, which were alleged by DDA Deutsch and denied by Plaintiff, were neither used nor factored in the cause for termination.   The sole reason for termination was testing positive for marijuana on October 31, 2016.  In other words, based on the above, Madrid was fired for smoking marijuana when she had not been "on duty" as defined by Policy C-10— i.e. as noted previously in this tort claim, Ms. Madrid was on CFRA/ FMLA leave between September 30, 2016 and October 31, 2016.  A true and correct copy of this termination letter, dated March 21, 2017, is attached hereto as **Exhibit C**.

///

///

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

15

**FIRST CAUSE OF ACTION**

**(VIOLATION OF PLAINTIFF'S CIVIL RIGHTS TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES— FOURTH AMENDMENT TO UNITED STATES CONSTITUTION— 42 U.S.C. §§ 1983, ET SEQ.— BROUGHT BY PLAINTIFF AGAINST DEFENDANTS MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 25)**

53.     Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-12, 14-33, and 39-52, as though fully set forth.

54.     At all times herein mentioned, the Fourth Amendment to the United States Constitution provided that all citizens have the right to be free from unreasonable searches and seizures by governmental officials acting under the color of authority.

55.     On October 31, 2016, without prior notice, Plaintiff MADRID was forced to attend a so-called "medical examination" by Defendant FABRIZIO, acting on orders from Defendant HESTRIN.  Plaintiff was told that she had to attend this "medical examination" or she would be terminated for insubordination.  Also, acting on the orders of Defendants HESTRIN and FABRIZIO, Plaintiff was involuntarily taken to this "medical examination" by Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR.  Plaintiff did not voluntarily consent to attending this "medical examination", nor did she voluntarily consent to having Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR take her to the County's facility for the same.  Further, there was no arrest or search warrant authorizing her attendance at this "medical examination" where alcohol and drug testing occurred.

56.     Once Plaintiff arrived at the County's facility, no "medical examination" occurred and no physician to conduct the examination was present.  Instead, Plaintiff

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

16

1 was forced to blow into a breathalyzer for alcohol testing and, further, was forced to
2 give a urine sample for a drug screen.  Further, upon completion of this alcohol
3 testing and drug screen, Plaintiff was told that she would have to attend a "fitness for
4 duty" examination on November 2, 2016 by a mental health professional selected by
5 the County— Dr. Elizabeth White.

6     57.    Also, on November 2, 2016, her urine sample was tested by technicians
7 for the County's facility.  The sample tested positive for marijuana and no other
8 substances.  On information and belief, on November 7, 2016, a medical review
9 doctor from the County's facility issued a final determination that Plaintiff had tested
10 positive for marijuana on October 31, 2016.  On further information and belief, the
11 County's facility conducting the testing reported the positive result to the District
12 Attorney's  Office of Defendant RIVERSIDE COUNTY on November 28, 2016; and,
13 upon receiving that result, the District Attorney's Office of Defendant RIVERSIDE
14 COUNTY officially opened up an administrative investigation on alleged new
15 charges.

16     58.    On information and belief, Dr. Elizabeth White, the mental health
17 professional selected by Defendant RIVERSIDE COUNTY to conduct Plaintiff's
18 "fitness for duty" examination, determined that Plaintiff MADRID was neither a
19 danger to herself nor others.  Therefore, except for the positive marijuana test, which
20 was coerced by Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1
21 FEMALE INVESTIGATOR, Plaintiff woould have been allowed to return to work in
22 her capacity as Deputy District Attorney, Step IV, for Defendant RIVERSIDE
23 COUNTY.

24     59.    On December 12, 2016, Plaintiff, while still on paid administrative
25 leave, was personally served at her home with a notice to appear for a formal
26 interview with DA investigators from the District Attorney's Office Internal Affairs
27 Division.  The notice generally advised Plaintiff MADRID that she was the subject of
28 an administrative investigation for allegations of conduct that "adversely affected the

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

17

1    employee or operation of the department."

2        60.    On December 19, 2016, Ms. Madrid was required to attend an interview

3    by District Attorney Investigative Commander Ed Berakovich.  She was given her

4    *Miranda* rights prior to the interview and she agreed to waive them.  During that

5    interview, Ms. Madrid advised the Commander of her prior marijuana use.  In

6    particular, she told the Commander that she had been using marijuana while she was

7    off work on authorized CFRA/ FMLA medical leave  between September 29, 2016

8    and October 25, 2016.  Commander Berakovich wrote a report about that interview

9    and his conclusions from the interview.  He made several mistakes and misstatements

10   in that report, including, but not limited to, the following:

11       A)    "By testing positive and being under the influence of marijuana

12   *while on paid administrative leave*, you violated Board Policy C-10. which states in

13   part, 'it is the county policy that employees shall not be under the influence of drugs

14   *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff

15   MADRID was not on paid administrative leave between the operative dates of

16   September 29, 2016 through October 25, 2016— instead, as noted, she was on

17   personal medical leave under the CFRA/ FMLA.

18       B)    "[Policy C-10] further states 'an employee must not use or possess

19   controlled substances (illegal drugs or prescription drugs without a prescription) *at

20   any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-

21   10.  Policy C-10 does <u>not </u>prevent an employee from using controlled substance or

22   illegal drugs "at any time"; rather, it merely prevents the use of such substances either

23   while on duty or which would adversely affect an employee's performance while on

24   duty.

25       C)    As to Plaintiff's statement of marijuana use prior to September

26   29, 2016, Commander Berakovich negligently or intentionally relied on the "while on

27   duty" specification to include "standby" and/or  "on call" status as applying to

28   Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

61.    On February 23, 2017, a Notice to Terminate was issued to Plaintiff MADRID in accordance with the MOU provisions.  In part, the Notice to Terminate indicated that the  "this action is being taken against you for the following causes specified in Article X, Section 2 in the current Memorandum of Understanding between the County of Riverside and the Riverside County Deputy District Attorneys Association".  Cited in the Notice were these two provisions:

— "m.    Conduct either during or outside of duty hours which
adversely affects the employee's job performance
or operation of the department in which she is employed."

— "o.    Substance abuse in violation of the Board of
Supervisors' Alcohol and Drug Abuse Policy
C-10."

62.    On March 29, 2017, Plaintiff MADRID was issued a termination letter. The termination letter specifically indicated that the workplace violence statements, which were alleged by DDA Deutsch and denied by Plaintiff, were neither used nor factored in the cause for termination.   The sole reason for termination was testing positive for marijuana on October 31, 2016.  In other words, based on the above, Madrid was fired for using marijuana when she had not been "on duty" as defined by Policy C-10— i.e. as noted previously in this tort claim, Ms. Madrid was on CFRA/ FMLA leave between September 30, 2016 and October 31, 2016.  A true and correct copy of this termination letter, dated March 29, 2017, has been attached hereto as **Exhibit C**.

63.    Based on the above factual events, it appears that the initial reason for investigating Plaintiff MADRID— i.e., her alleged statements of workplace violence as reported by DDA Deutsch on September 28, 2016— had concluded with a finding

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

in favor of Plaintiff.  Plaintiff's ultimate termination was entirely based on allegations that she had tested positive for marijuana on October 31, 2016, meaning that she had used the substance within two weeks of the October 31, 2016 meeting.  Between September 30, 2016 and October 31, 2016, the period when she allegedly used the marijuana eventually showing up on a positive test, Plaintiff was on authorized medical leave under the CFRA/ FMLA— i.e.  she was using her own time and was not "on duty" as defined by the C-10 Alcohol and Drug Substance Policy of Defendant RIVERSIDE COUNTY or as defined under the relevant MOU between Plaintiff's union and Defendant RIVERSIDE COUNTY.

64.    At all times herein mentioned, the C-10 Alcohol and Drug Substance Abuse Policy of Defendant RIVERSIDE COUNTY did not prevent a deputy district attorney like Plaintiff  from using marijuana while not "on duty", so long as the use of marijuana did not adversely affect the employee's job performance or operation of the department in which he or she was employed.  In other words, Policy C-10 does not prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

65.    Further, Defendant RIVERSIDE COUNTY's C-10 Alcohol and Drug Substance Abuse Policy defines "on duty" as including persons in the County's employ who are on "standby" or "on call".  As noted previously herein, this inclusion did not fit Plaintiff MADRID at any time— i.e. she had never been placed on a "standby" or "on call" status during the entire period of her employment with Defendant RIVERSIDE COUNTY.

66.    Further, the results of Plaintiff's positive test for marijuana, forcibly taken without a warrant and without voluntary consent on October 31, 2016, were not officially communicated to Defendant RIVERSIDE COUNTY until November 28, 2016.  It was not until December 12, 2016, Plaintiff, this time while on paid administrative leave, was generally advised that she was the subject of an

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   administrative investigation for allegations of conduct that "adversely affected the

2   employee or operation of the department"— i.e. the positive marijuana drug screen.

3   Thereafter, she was interviewed by Defendant RIVERSIDE COUNTY's District

4   Attorney Commander, Ed Berakovich, on December 19, 2016, and given her *Miranda*

5   admonishments, which she waived.  As noted previously herein, Commander

6   Berakovich intentionally or negligently (and erroneously)  determined that Plaintiff

7   was on paid administrative leave when she used the marijuana showing up on the

8   positive drug test of October 31, 2016— i.e. in fact, Plaintiff was on authorized

9   medical leave for a health condition between September 30, 2016 and October 31,

10  2016; therefore, she was on her own time and not working as an employee of

11  Defendant RIVERSIDE COUNTY when she used that marijuana leading to the

12  positive drug test.

13      67.    Further, by the time the District Attorney's office of Defendant

14  RIVERSIDE COUNTY, received the result of the positive marijuana test on

15  November 29, 2016, the citizens of the State of California had overwhelmingly

16  voted to pass Proposition 64 on November 9, 2016.  This Proposition immediately

17  allowed Californians who are 21 and older to possess, transport, buy and use up to an

18  ounce of cannabis for recreational purposes and allow individuals to grow as many as

19  six plants. The measure would also allow retail sales of marijuana and impose a 15%

20  tax.

21      68.    In other words, by the time that Plaintiff (a) was advised on December

22  12, 2016 that she was under a new administrative investigation for allegations of

23  conduct that "adversely affected the employee or operation of the department"; (b)

24  was interviewed by District Attorney Commander Ed Berakovich on December 19,

25  2016; (c) was issued a Notice to Terminate on February 23, 2017; and, (d) was

26  terminated entirely based on the positive marijuana test, Plaintiff's recreational use of

27  marijuana was legal in the State of California.

28      69.    Further, at all times herein mentioned, Defendant RIVERSIDE

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

21

COUNTY did not have a policy in place to requires its employees, including, but not limited to, Plaintiff MADRID, to submit to alcohol and/or drug testing as a term and condition of employment.  The MOU between Plaintiff's union and Defendant RIVERSIDE COUNTY also did not require its members to submit to alcohol and/or drug testing as a term and condition of employment. Both Defendant RIVERSIDE COUNTY and the relevant MOU did allow for a "fitness for duty" examination for employees who met the criteria; however, this "fitness for duty" examination policy was totally silent as to whether the examination required the particular employee to submit to alcohol and/or drug testing.

69.     At all times herein mentioned, the individually-named defendants in this cause of action were acting under color of authority on October 31, 2016, when they deceptively required Plaintiff to attend a so-called "medical examination" at the County's facility and then forced Plaintiff to take an alcohol and drug screen.

70.     At all times herein mentioned, the individually-named defendants effectively detained Plaintiff, and coerced her into giving a urine sample, without a warrant and without voluntary consent.  These actions violated Plaintiff's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution, and exposes the individually-named defendants to the damages and remedies as hereinafter described.

71.     Under the circumstances, the positive marijuana test was "fruit of the poisonous tree" under the Fourth Amendment to the United States Constitution and could not be used to support Plaintiff's termination of employment by Defendant RIVERSIDE COUNTY.

72.     As a direct result of this aforesaid Fourth Amendment violation, Plaintiff has sustained, and will continue to sustain for a period of time in the future, compensatory and general damages in an amount according to proof.

73.     Plaintiff, if the prevailing party, is entitled to her reasonable attorney's fees and costs in prosecuting this cause of action in an amount according to proof at

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  trial under the statutory scheme of 42 U.S.C. §§1983, et seq.

2       74.    The individually-named defendants in this cause of action— MIKE
3  HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE
4  INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and
5  despicably, and therefore Plaintiff is entitled to an award of punitive damages as to
6  each of them in an amount according to proof at the trial of this action.  Facts
7  supporting this punitive damage claim have been noted above and, further, there are
8  additional facts supporting the claim.  These facts, include, but are not limited to, the
9  following:

10       A)    Co-Defendant RIVERSIDE COUNTY, the employer of the
11  individually-named defendants in this cause of action, had an alcohol and drug testing
12  policy (Policy C-10) which did not provide for random or particularized alcohol
13  testing and drug screening.  Further, the MOU by and between Plaintiff's union and
14  Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or
15  particularized alcohol testing and drug screening.  At all times herein mentioned, the
16  individually-named defendants in this cause of action were well aware and
17  knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol
18  testing and drug screening.  Therefore, on October 31, 2016, the individually-named
19  defendants in this cause of action had to, and did, use trickery and artifice to obtain
20  alcohol and drug testing of Plaintiff.

21       B)    On October 31, 2016, Plaintiff MADRID was required to attend a
22  meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been
23  given his marching orders by the District Attorney of the County, Defendant
24  HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately
25  undergo an undefined "medical examination" at a County facility.  Plaintiff asked,
26  "what kind of medical examination", and the answer was "I don't know".  Plaintiff
27  was also told that, if she did not attend the "medical examination", it would be
28  considered insubordination and she would be fired.  Plaintiff was then told that she

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

        C)    On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

        D)    Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff MADRID herself was a victim of a drugging, kidnapping and sexual assault by a

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

male.  As a result, she came back from vacation to the District Attorney's office with

a lingering psychological disability of anxiety and depression because of that

unfortunate incident in Europe.  Despite this awareness and knowledge, Defendants

HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff

to take an alcohol test and drug screen, where no policy of RIVERSIDE COUNTY

allowed it.  In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the

top law enforcement officials in the County, knew that they were violating the Fourth

Amendment in procuring this alcohol and drug testing.

         E)    By forcing Plaintiff to take an alcohol and drug test on October

31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-

one" discrimination.  There are at least three past and recent incidents in the District

Attorney's office where both were involved in letting deputy district attorneys in the

office "off the hook" for being arrested and then convicted for driving under the

influence.

        ■    On October 25, 2015, Defendant HESTRIN's former live-in

girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP

in San Bernardino.  On information and belief, she was convicted of the lesser offense

of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was

never placed on administrative leave, was not subjected to an in-house investigation

for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for

Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or

drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

        ■    On February 5, 2016, Deputy District Attorney Josh Degonia was

also arrested for DUI and pled no contest to that offense.  His sentence included 3

years probation and 46 days in jail to be served in home confinement.  Mr. Degonia

was placed on administrative leave by the District Attorney's Office of Defendant

RIVERSIDE COUNTY, however he was allowed to come back to work in his same

position.  Mr. Degonia also was not required to submit to alcohol testing and drug

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

1  screening.

2        ■       On August 7, 2013, Deputy District Attorney Daniel Enrique

3  DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to

4  that offense.  This arrest and conviction occurred in San Diego County.  DeLimon

5  had also been involved in a previous incident in San Diego County in 2006 involving

6  an altercation with the police outside a bar.  Although DeLimon was not arrested in

7  the earlier 2006 incident, he was placed on paid administrative leave by the Riverside

8  County District Attorney's Office, for whom he was working at the time.  By the time

9  of the later 2013 arrest and conviction for DUI, DeLimon was working as a

10  veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE

11  COUNTY.  Although he was placed on administrative leave after the conviction, he

12  was not forced to submit to alcohol and drug testing, and he was not subjected to any

13  discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE

14  COUNTY awarded him with the coveted Prosecutor of the Year award while he was

15  or should have still been on probation for his 2013 DUI conviction.

16        ■       Although not a prosecutor, Peter Scalisi was a criminal defense

17  lawyer who was hired as the Assistant Public Defender for the Public Defender's

18  Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the

19  time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and

20  Substance Abuse as existed in this case before the court.  Interestingly, when Deputy

21  District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013

22  (see above bullet point), he chose Peter Scalisi, then privately practicing, as the

23  attorney to represent him.  Scalisi himself, when he was hired and retained by the

24  Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September

25  2011, had been arrested and convicted for a second time DUI offense.  Nevertheless,

26  Defendant RIVERSIDE COUNTY did not place him on probation or administrative

27  leave with pay; rather he was allowed to continue as the Assistant Public Defender for

28  the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too,

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

1  never had to undergo either alcohol and/or drug testing by his employer.

2          ■    Deputy District Attorney Tim Mulhere previously was a

3  prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY,

4  who was fired around 2008 by the former District Attorney, Rod Pacheco, for being

5  convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf

6  of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy

7  district attorney.

8          F)    On information and belief, from January 1, 2016 to the present

9  date, numerous deputy district attorneys, as well as civilian staff members,. employed

10  by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on

11  "off duty" hours and during their leisure time.  If these marijuana-using deputy

12  district attorneys and other staff members allowed their marijuana use to affect their

13  job performance and/or the operations of the District Attorney's office, they too

14  would be subjected to discipline as being in violation of Defendant RIVERSIDE

15  COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant

16  RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a

17  random or individualized basis.

18          G)    On December 19, 2016, Ms. Madrid was required to attend an

19  interview by District Attorney Investigative Commander Ed Berakovich.  She was

20  given her *Miranda* rights prior to the interview and she agreed to waive them.  During

21  that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In

22  particular, she told the Commander that she had been using marijuana while she was

23  off work on authorized CFRA/ FMLA medical leave  between September 29, 2016

24  and October 25, 2016.  Commander Berakovich wrote a report about that interview

25  and his conclusions from the interview.  He made several mistakes and misstatements

26  in that report, including, but not limited to, the following:

27          ■    "By testing positive and being under the influence of marijuana

28  *while on paid administrative leave*, you violated Board Policy C-10. which states in

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

1 part, 'it is the county policy that employees shall not be under the influence of drugs
2 *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff
3 MADRID was not on paid administrative leave between the operative dates of
4 September 29, 2016 through October 25, 2016— instead, as noted, she was on
5 personal medical leave under the CFRA/ FMLA.

6         ■    "[Policy C-10] further states 'an employee must not use or possess
7 controlled substances (illegal drugs or prescription drugs without a prescription) *at*
8 *any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-
9 10.  Policy C-10 does <u>not </u>prevent an employee from using controlled substance or
10 illegal drugs "at any time"; rather, it merely prevents the use of such substances either
11 while on duty or which would adversely affect an employee's performance while on
12 duty.

13         ■    As to Plaintiff's statement of marijuana use prior to September
14 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on
15 duty" specification to include "standby" and/or  "on call" status as applying to
16 Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's
17 Office, Plaintiff MADRID has never been in a position where she was placed on
18 either "standby" or "on call status", a fact known to management in the District
19 Attorney's office of Defendant RIVERSIDE COUNTY.

20       Defendants HESTRIN and FABRIZIO used this erroneous investigative
21 report by Commander Berakovich to terminate Plaintiff, knowing that he was
22 incorrect in his assessments, and further knowing that Plaintiff's right to be free from
23 unreasonable searches and seizures under the Fourth Amendment to the United States
24 Constitution was deliberately violated on October 31, 2016 and thereafter.

25 ///
26 ///
27 ///
28 ///

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

**SECOND CAUSE OF ACTION**

**(VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I, SECTION 13 ADDRESSING "UNREASONABLE SEARCHES AND SEIZURES"— CALIFORNIA BANE ACT RE *CALIFORNIA CIVIL CODE SECTION 52.1*— BROUGHT BY PLAINTIFF AGAINST DEFENDANTS RIVERSIDE COUNTY, MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 50).**

75.     Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-74, as though fully set forth.

76.     At all times herein mentioned, the California Constitution at article 1, section 13, provided as follows:  "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

77.     At all times herein mentioned, *California Civil Code* §52.1, otherwise known as the Bane Act,  provided in pertinent part as follows:

"  (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

(c) An action brought pursuant to subdivision (a) or (b) may be filed

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has his or her place of business...."

78.     By engaging in the unlawful conduct more fully described in other paragraphs of this Complaint— in particular paragraphs 39 through 44— Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of Defendant RIVERSIDE COUNTY violated the rights of Plaintiff to be free from unreasonable and warrantless searches and seizures guaranteed to every citizen of this state.  This violation of constitutional rights directly led to Plaintiff's termination on March 29, 2017.

79.     Further, at all times herein mentioned, the individually-named defendants in this cause of action, acting on behalf of Defendant RIVERSIDE COUNTY, interfered by threat, intimidation, and coercion with Plaintiff's enjoyment of her constitutional rights under both the California Constitution, article 1, section 13, and the Fourth Amendment to the United States Constitution.

80.     By the terms of the Bane Act, set forth above, Plaintiff is entitled to the damages and remedies provided under *California Civil Code* §52.  Section 52 allows the following types of damages in this cause of action: "actual" damages, meaning special and general damages, punitive damages, and, also, allows for attorney's fees in the court's discretion.

81.     As a direct consequence of the aforesaid violation of constitutional rights, the named defendants herein used "fruit of the poisonous tree" to terminate Plaintiff.

82.     As a direct result of her termination, Plaintiff has sustained and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

83.     Plaintiff, if the prevailing party on this cause of action, is entitled to her reasonable attorney's fees in an amount determined by the court after trial

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   (*California Civil Code* §52[b][3]).

2        84.    Plaintiff is also entitled to an award of punitive damages against the

3   individually-named defendants in this cause of action (i.e. Despite the Bane Act,

4   Plaintiff cannot obtain punitive damages from Defendant RIVERSIDE COUNTY by

5   virtue of the absolute immunity provided by *California Gov't Code* §818).  The

6   individually-named defendants in this cause of action— MIKE HESTRIN, VINCE

7   FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have

8   acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff

9   is entitled to an award of punitive damages as to each of them in an amount according

10  to proof at the trial of this action.  Facts supporting this punitive damage claim have

11  been noted above and, further, there are additional facts supporting the claim.  These

12  facts, include, but are not limited to, the following:

13        A)    Co-Defendant RIVERSIDE COUNTY, the employer of the

14  individually-named defendants in this cause of action, had an alcohol and drug testing

15  policy (Policy C-10) which did not provide for random or particularized alcohol

16  testing and drug screening.  Further, the MOU by and between Plaintiff's union and

17  Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or

18  particularized alcohol testing and drug screening.  At all times herein mentioned, the

19  individually-named defendants in this cause of action were well aware and

20  knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol

21  testing and drug screening.  Therefore, on October 31, 2016, the individually-named

22  defendants in this cause of action had to, and did, use trickery and artifice to obtain

23  alcohol and drug testing of Plaintiff.

24        B)    On October 31, 2016, Plaintiff MADRID was required to attend a

25  meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been

26  given his marching orders by the District Attorney of the County, Defendant

27  HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately

28  undergo an undefined "medical examination" at a County facility.  Plaintiff asked,

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

"what kind of medical examination", and the answer was "I don't know".  Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired.  Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)    On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D)    Defendants HESTRIN and, on information and belief, FABRIZIO were knowledgeable and well aware of the fact that Plaintiff MADRID, while

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012. Plaintiff MADRID herself was a victim of a drugging, kidnapping, and sexual assault by a male. As a result, she came back from vacation to the District Attorney's office with a lingering psychological disability of anxiety and depression because of that unfortunate incident in Europe. Despite this awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it. In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

       E)     By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination. There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

       ■     On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino. On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility. Also, Ms. Postil did not receive any discipline.

       ■     On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense. His sentence included 3 years probation and 46 days in jail to be served in home confinement. Mr. Degonia

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1    was placed on administrative leave by the District Attorney's Office of Defendant

2    RIVERSIDE COUNTY, however he was allowed to come back to work in his same

3    position.  Mr. Degonia also was not required to submit to alcohol testing and drug

4    screening.

5                   ■        On August 7, 2013, Deputy District Attorney Daniel Enrique

6    DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to

7    that offense.  This arrest and conviction occurred in San Diego County.  DeLimon

8    had also been involved in a previous incident in San Diego County in 2006 involving

9    an altercation with the police outside a bar.  Although DeLimon was not arrested in

10   the earlier 2006 incident, he was placed on paid administrative leave by the Riverside

11   County District Attorney's Office, for whom he was working at the time.  By the time

12   of the later 2013 arrest and conviction for DUI, DeLimon was working as a

13   veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE

14   COUNTY.  Although he was placed on administrative leave after the conviction, he

15   was not forced to submit to alcohol and drug testing, and he was not subjected to any

16   discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE

17   COUNTY awarded him with the coveted Prosecutor of the Year award while he was

18   or should have still been on probation for his 2013 DUI conviction.

19                  ■        Although not a prosecutor, Peter Scalisi was a criminal defense

20   lawyer who was hired as the Assistant Public Defender for the Public Defender's

21   Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the

22   time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and

23   Substance Abuse as existed in this case before the court.  Interestingly, when Deputy

24   District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013

25   (see above bullet point), he chose Peter Scalisi, then privately practicing, as the

26   attorney to represent him.  Scalisi himself, when he was hired and retained by the

27   Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September

28   2011, had been arrested and convicted for a second time DUI offense.  Nevertheless,

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■    Deputy District Attorney Tom Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)    On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)    On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  in that report, including, but not limited to, the following:

2  ■  "By testing positive and being under the influence of marijuana

3  *while on paid administrative leave*, you violated Board Policy C-10. which states in

4  part, 'it is the county policy that employees shall not be under the influence of drugs

5  *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff

6  MADRID was not on paid administrative leave between the operative dates of

7  September 29, 2016 through October 25, 2016— instead, as noted, she was on

8  personal medical leave under the CFRA/ FMLA.

9  ■  "[Policy C-10] further states 'an employee must not use or possess

10  controlled substances (illegal drugs or prescription drugs without a prescription) *at*

11  *any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-

12  10.  Policy C-10 does <u>not</u> prevent an employee from using controlled substance or

13  illegal drugs "at any time"; rather, it merely prevents the use of such substances either

14  while on duty or which would adversely affect an employee's performance while on

15  duty.

16  ■  As to Plaintiff's statement of marijuana use prior to September

17  29, 2016, Commander Berakovich negligently or intentionally relied on the "while on

18  duty" specification to include "standby" and/or  "on call" status as applying to

19  Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's

20  Office, Plaintiff MADRID has never been in a position where she was placed on

21  either "standby" or "on call status", a fact known to management in the District

22  Attorney's office of Defendant RIVERSIDE COUNTY.

23  Defendants HESTRIN and FABRIZIO used this erroneous investigative

24  report by Commander Berakovich to terminate Plaintiff, knowing that he was

25  incorrect in his assessments, and further knowing that Plaintiff's right to be free from

26  unreasonable searches and seizures under both article 1, section 13 of the California

27  Constitution and the Fourth Amendment to the United States Constitution was

28  deliberately violated on October 31, 2016 and thereafter.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

# THIRD CAUSE OF ACTION

## (*MONELL* CLAIM AGAINST DEFENDANT COUNTY
## OF RIVERSIDE— 42 U.S.C. SECTION 1983, ET SEQ.)

85.     Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-12, 14-33, and 39-85, as though fully set forth.

86.     At all times herein mentioned, Defendant MIKE HESTRIN was the elected District Attorney for Defendant COUNTY OF RIVERSIDE.  In that position, Defendant HESTRIN was the final policy-making person for the District Attorney's Office.

87.     At all times herein mentioned, Defendants FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR were employees of the District Attorney's office of Defendant RIVERSIDE COUNTY who served in their respective positions by virtue of Co-Defendant HESTRIN.

88.     As noted previously in this Complaint, Defendants FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR violated the constitutional rights of Plaintiff under the Fourth Amendment to the United States Constitution by forcing Plaintiff, without a warrant and without probable cause, to take an alcohol test and drug screen test.  When the drug screen test came back as positive for marijuana use during a period of time when Plaintiff was on authorized CFRA/ FMLA leave, the positive results were used against Plaintiff to terminate her from her long-time employment as a deputy district attorney for the District Attorney's Office.

89.     Defendant HESTRIN, as the final policy-making agent for the District Attorney's office of Defendant RIVERSIDE COUNTY, allowed his law enforcement employees to first violate the constitutional rights of Plaintiff and then used the "fruit of the poisonous tree" (i.e. the positive drug test) to terminate Plaintiff, thus effectively destroying her career as a law enforcement official.  By virtue of the fact that Defendant HESTRIN was a local government official who ratified subordinates' unconstitutional conduct, Defendant RIVERSIDE COUNTY is liable for his actions

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  in monetary damages pursuant to the United States Supreme Court decision in *Monell*

2  *v. Department of Soc. Svcs.,* 436 U.S. 658 (1978).

3      90.    As a direct consequence of this *Monell* violation addressed pursuant to

4  42 U.S.C. Sections 1983, et seq., Plaintiff has sustained, and will continue to sustain

5  for a period of time, compensatory and general damages in an amount according to

6  proof at the trial of this action.

7      91.    Plaintiff, if the prevailing party, is entitled to her reasonable attorney's

8  fees pursuant to pertinent sections of the statutory scheme for 42 U.S.C. Sections

9  1983, et seq.

10

11                    **FOURTH C AUSE OF ACTION**

12              **(INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS—**

13              **BROUGHT BY PLAINTIFFS AGAINST DEFENDANTS**

14              **COUNTY OF RIVERSIDE, HESTRIN, FABRIZIO,**

15              **CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND**

16              **DOES 2 THROUGH 25)**

17      92.    Plaintiff realleges and incorporates herein those matters contained in

18  paragraphs 4-13, 14-33, and 39-91, as though fully set forth.

19      93.    On September 29, 2016, the District Attorney's Office of Defendant

20  RIVERSIDE COUNTY commenced its investigation into a claim by DDA Deutsch

21  that Plaintiff MADRID made statements suggesting that she was a danger to herself

22  or to others in the workplace.

23      94.    On information and belief, by October 30, 2016, the District Attorney's

24  Office of Defendant RIVERSIDE COUNTY had concluded its investigation into the

25  workplace violence allegations, and had determined there was insufficient proof to

26  find that Plaintiff had violated its policy against workplace violence.  Further, on

27  information and belief, Defendant RIVERSIDE COUNTY had, by October 30, 2016,

28  made the decision as a result of its investigation to allow Plaintiff to return to work in

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

38

her previous position without imposing any discipline. By October 30, 2016, all that remained was for Plaintiff to attend the "fitness for duty" examination by a mental health professional selected by the County. Further, by October 30, 2016, although Plaintiff had not yet been advised of the appointment with the County's mental health professional to take place on November 2, 2016, that appointment had already been made by County officials so that Plaintiff could obtain the clearance necessary to return to work.

95.    As noted previously herein, during the entire period of the workplace violence investigation, Plaintiff was on medical leave under the CFRA/ FMLA. This means that she was using her own time to pay her salary during that time, and she was not under "house arrest" which would have occurred had she been placed on administrative leave with pay during the same period of time.

96.    Because she was on authorized medical leave under the CFRA/ FMLA from September 30, 2016 to October 31, 2016, Plaintiff was not working for the District Attorney's Office and, consequently, any alcohol or marijuana she used during that same period was on her own time and not on the employer's time. Further, her use of alcohol or marijuana during that same period of time could not possibly have been while "on duty" and could not have adversely affected the operations of the District Attorney's Office.

97.    With this knowledge, requiring Plaintiff to meet with Defendant FABRIZIO on October 31, 2016 for a forced attendance at a planned so-called "medical examination", was totally unnecessary and was a fishing expedition without probable cause to believe Plaintiff was using alcohol and/ or marijuana during the period of her authorized leave under the CFRA/ FMLA.

98.    On October 31, 2016, Ms. Madrid's return to work date, the District Attorney's Office of Defendant RIVERSIDE COUNTY placed her on "paid administrative leave" pending Defendant RIVERSIDE COUNTY's evaluation of her ability to adequately and safely perform the functions of her deputy district attorney

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

position— as noted above, this evaluation was to take place on November 2, 2016. At that point, the District Attorney's Office of Defendant RIVERSIDE COUNTY had completed its investigation of the alleged workplace comments made by Plaintiff MADRID on September 28, 2016.  All that remained was for Plaintiff, under relevant provisions of the MOU, to attend a fitness for duty examination by a physician selected by Defendant RIVERSIDE COUNTY and obtain a clearance to the effect that she was not a danger to herself or to others.

99.     On this same date of October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, and Deputy Director of Administration Ginika Ezinwa.  At this meeting, the following occurred:

A)     Plaintiff MADRID was told that she had to sign a document placing her back on administrative leave with pay effective that day.   Neither the document nor anything stated in the meeting gave notice to Plaintiff that Defendant RIVERSIDE COUNTY was requiring her to submit to a test for alcohol and/or drugs. In fact, she was only told in this meeting that she would have to immediately attend a "medical examination" at the County's Health & Wellness Facility.

B)     Plaintiff was advised that, if she did not agree to immediately attend this "medical examination", that it would be "insubordination" and a terminable offense.

C)     Plaintiff was also forced to have two female District Attorney Investigators drive her to the facility for the "medical examination"— Defendants CHEBATAH and DOE 1 FEMALE INVESTIGATOR.  She was not permitted to voluntarily attend the "medical examination" and was told that she could not even drive her own vehicle to the facility.

D)     Plaintiff believed the so-called "medical examination" was going to be a "mental examination" regarding her fitness for duty.  However, no representative of Defendant RIVERSIDE COUNTY at this meeting advised Plaintiff

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1    that her belief was incorrect and/or that the "fitness for duty" examination by the

2    County's physician was not the same as this "medical examination."

3        100.   There is no document or policy of Defendant RIVERSIDE COUNTY

4    which requires its employees to submit to random alcohol testing or drug screening,

5    whether as part of a "fitness for duty" examination or not.

6        10.   At all times herein mentioned, Plaintiff MADRID did not believe

7    that she could refuse to attend the so-called "medical examination", since her refusal

8    to do so, as told to her at this October 31st meeting, would have resulted in her

9    discharge from the employment.  In other words, Plaintiff had no rational choice but

10   to attend the "medical examination" and to be accompanied by two District Attorney

11   Investigators— Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR.

12       102.   On October 31, 2016, Defendants CHEBAHTAH and DOE 1

13   FEMALE INVESTIGATOR drove Plaintiff MADRID to the designated County

14   facility for the "medical examination".  Plaintiff was not permitted to leave the sight

15   of the two District Attorney investigators and was forced to do what they said.

16       103.   On October 31, 2016, upon arrival to the County's facility for the

17   "medical examination", Plaintiff MADRID learned that no "medical examination"

18   would in fact occur.  In fact, no physician was present and a "medical examination"

19   did not occur.  What did occur was that Plaintiff was, under threat of losing her job,

20   forced to submit to an alcohol and drug screen test.  Plaintiff's blood was drawn for

21   the alcohol test by a nurse or technician and she was coerced into submitting to a

22   urine sample test.  The nurse stood outside the bathroom door while Plaintiff was

23   urinating into the test capsule.

24       104.   After completing the alcohol and drug screen test, the nurse advised

25   Plaintiff MADRID that her "fitness for duty" examination by a mental health

26   professional selected by Defendant RIVERSIDE COUNTY would take place on

27   November 2, 2016.  The mental health professional selected was Dr. Elizabeth White.

28       105.   On November 2, 2016, Plaintiff MADRID attended the fitness for duty

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

examination with Dr. White, Defendant RIVERSIDE COUNTY's  designated mental health professional.  She was there for about 8 hours.  Plaintiff took personality tests and submitted to a long interview.  To this date, Plaintiff  has never been provided with a copy of Dr. White's report of this fitness for duty examination.  On information and belief, Dr. White's report ultimately informed Defendant RIVERSIDE COUNTY that Ms. Madrid was "not a danger to herself and/or to others".

106.   The coerced drug screening of October 31, 2016, conducted in violation of Plaintiff's constitutional rights under the Fourth Amendment and California Constitution, article 1, section 13, should never have occurred under the circumstances.  This drug screen, which showed a positive test for marijuana, directly led to Plaintiff's termination as a law enforcement prosecutor and has forever damaged her career and self-esteem.  Plaintiff should have been allowed to return to work once receiving clearance from its own psychologist who determined that she was neither danger to herself nor others in the District Attorney's office.

107.   Further, at all times herein mentioned, individual defendants HESTRIN, and, on information and belief, FABRIZIO,  were knowledgeable of the fact that Plaintiff MADRID battled anxiety and depression as a result of a 2012 drugging, kidnapping and rape.  Consequently, they knew that she was a person who could be pushed over the edge with false accusations that ultimately led to the loss of her job.

108.   Further, at all times herein mentioned, individual defendants HESTRIN and FABRIZIO were knowledgeable of the fact that neither RIVERSIDE COUNTY's C-10 Alcohol and Substance Abuse Policy, nor the prevailing MOU, allowed for alcohol testing and drug screening of Plaintiff under the circumstances.  Nevertheless, using artifice and device, they required Plaintiff to attend the October 31, 2016 meeting and undergo a "medical examination", which was not a "medical examination" at all.

109.   At all times herein mentioned, *California Gov't. Code* §815.2 was in

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

full force and effect.  This code section provides that a public entity is liable for an injury caused by the act or omission of an employee acting within his or her scope of employment if, in fact, one or more of its employees could be held liable for that same act or omission.  Therefore, Defendant RIVERSIDE COUNTY is also named as a defendant in this cause of action.

110.   The aforesaid unlawful conduct of individual defendants HESTRIN, FABRIZIO, CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR was intentionally done and was extreme, outrageous, despicable, and was undertaken with the intention of causing, or taken in reckless disregard of the probabilityit would cause, Plaintiff severe emotional upset and distress.

111.    Plaintiff ultimately lost her relatively high paying law enforcement career as a result of the aforesaid unlawful and deceitful conduct of the individually defendants named in this cause of action, and has thereby suffered, and continues to suffer, severe emotional distress, anxiety and depression.

112.   Plaintiff has, in fact, sustained extreme emotional distress by the outrageous conduct of the individually-named defendants in this cause of action, and is entitled to compensatory and general damages in an amount according to proof at the trial of this action.

113.   Plaintiff is also entitled to an award of punitive damages against the individually-named defendants in this cause of action.  The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action.  Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim.  These facts, include, but are not limited to, the following:

A)    Co-Defendant RIVERSIDE COUNTY, the employer of the

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening.  Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening.  At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening.  Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B)    On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility.  Plaintiff asked Defendant FABRIZIO, "what kind of medical examination", and his answer was "I don't know".  Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired.  Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)    On October 31, 2016, once arriving at the County's facility for the

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1    so-called "medical examination", no physician was present.  Instead, a nurse or

2    technician administered a breathalyzer exam for alcohol screening and also required

3    Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited

4    outside.  Ultimately, the drug test was positive for marijuana and negative for all

5    other controlled substances.  The positive drug test for marijuana was ultimately used

6    to terminate Plaintiff's employment, even though she was not "on duty" for at least

7    one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because

8    the drug screen test, which tested positive for marijuana, was the sole basis for

9    terminating Plaintiff, and because the drug test was taken without probable cause,

10   without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the

11   Fourth Amendment to the United States Constitution and was "fruit of the poisonous

12   tree."  All of the individually-named defendants in this cause of action were law

13   enforcement officials who were well aware that the drug test was taken in violation of

14   the Fourth Amendment, yet they terminated her anyway.

15            D)    Defendants HESTRIN and, on information and belief,  FABRIZIO

16   were knowledgeable and well aware of the fact that Plaintiff MADRID, while

17   working for the District Attorney's office, had a psychological disability resulting

18   from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff

19   MADRID herself was a victim of a drugging, kidnapping,  and sexual assault by a

20   male.  As a result, she came back from vacation to the District Attorney's office with

21   a lingering psychological disability of anxiety and depression because of that

22   unfortunate incident in Europe.  Despite this

23   awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a

24   scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen,

25   where no policy of RIVERSIDE COUNTY allowed it.  In exercising this scheme,

26   Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the

27   County, knew that they were violating the Fourth Amendment in procuring this

28   alcohol and drug testing.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

45

1    E)    By forcing Plaintiff to take an alcohol and drug test on October
2  31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-
3  one" discrimination.  There are at least three past and recent incidents in the District
4  Attorney's office where both were involved in letting deputy district attorneys in the
5  office "off the hook" for being arrested and then convicted for driving under the
6  influence.

7    ■    On October 25, 2015, Defendant HESTRIN's former live-in
8  girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP
9  in San Bernardino.  On information and belief, she was convicted of the lesser offense
10  of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was
11  never placed on administrative leave, was not subjected to an in-house investigation
12  for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for
13  Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or
14  drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

15    ■    On February 5, 2016, Deputy District Attorney Josh Degonia was
16  also arrested for DUI and pled no contest to that offense.  His sentence included 3
17  years probation and 46 days in jail to be served in home confinement.  Mr. Degonia
18  was placed on administrative leave by the District Attorney's Office of Defendant
19  RIVERSIDE COUNTY, however he was allowed to come back to work in his same
20  position.  Mr. Degonia also was not required to submit to alcohol testing and drug
21  screening.

22    ■    On August 7, 2013, Deputy District Attorney Daniel Enrique
23  DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to
24  that offense.  This arrest and conviction occurred in San Diego County.  DeLimon
25  had also been involved in a previous incident in San Diego County in 2006 involving
26  an altercation with the police outside a bar.  Although DeLimon was not arrested in
27  the earlier 2006 incident, he was placed on paid administrative leave by the Riverside
28  County District Attorney's Office, for whom he was working at the time.  By the time

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY.  Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■    Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court.  Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him.  Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense.  Nevertheless, Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■    Deputy District Attorney Tom Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)    On information and belief, from January 1, 2016 to the present

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  date, numerous deputy district attorneys, as well as civilian staff members,. employed

2  by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on

3  "off duty" hours and during their leisure time.  If these marijuana-using deputy

4  district attorneys and other staff members allowed their marijuana use to affect their

5  job performance and/or the operations of the District Attorney's office, they too

6  would be subjected to discipline as being in violation of Defendant RIVERSIDE

7  COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant

8  RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a

9  random or individualized basis.

10         G)    On December 19, 2016, Ms. Madrid was required to attend an

11  interview by District Attorney Investigative Commander Ed Berakovich.  She was

12  given her *Miranda* rights prior to the interview and she agreed to waive them.  During

13  that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In

14  particular, she told the Commander that she had been using marijuana while she was

15  off work on authorized CFRA/ FMLA medical leave  between September 29, 2016

16  and October 25, 2016.  Commander Berakovich wrote a report about that interview

17  and his conclusions from the interview.  He made several mistakes and misstatements

18  in that report, including, but not limited to, the following:

19         ■    "By testing positive and being under the influence of marijuana

20  *while on paid administrative leave*, you violated Board Policy C-10. which states in

21  part, 'it is the county policy that employees shall not be under the influence of drugs

22  *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff

23  MADRID was not on paid administrative leave between the operative dates of

24  September 29, 2016 through October 25, 2016— instead, as noted, she was on

25  personal medical leave under the CFRA/ FMLA.

26         ■    "[Policy C-10] further states 'an employee must not use or possess

27  controlled substances (illegal drugs or prescription drugs without a prescription) *at*

28  *any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

48

10.  Policy C-10 does <u>not</u> prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

■       As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or "on call" status as applying to Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District Attorney's office of Defendant RIVERSIDE COUNTY.

Defendants HESTRIN and FABRIZIO used this erroneous investigative report by Commander Berakovich to terminate Plaintiff, knowing that he was incorrect in his assessments, and further knowing that Plaintiff's right to be free from unreasonable searches and seizures under both article 1, section 13 of the California Constitution and the Fourth Amendment to the United States Constitution was deliberately violated on October 31, 2016 and thereafter.

## FIFTH CAUSE OF ACTION

### (FALSE IMPRISONMENT— BROUGHT BY PLAINTIFFS AGAINST DEFENDANTS COUNTY OF RIVERSIDE, HESTRIN, FABRIZIO,  CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 25)

114.   Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-113, as though fully set forth.

115.   At all times herein mentioned, the crime of false imprisonment was a misdemeanor in the State of California (*California Penal Code* §236-237).  There is also a private cause of action for tort damages for false imprisonment.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

116.   As District Attorney investigators for Defendant RIVERSIDE COUNTY, both Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR are considered to be "peace officers" in the State of California pursuant to *California Penal Code* §830.1

117.   On October 31, 2016, acting on the directions and orders of Defendants HESTRIN and FABRIZIO, Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR violated Plaintiff's liberty interest by substantially restraining her through fraud, deceit, coercion, and duress, to take her to a so-called "medical examination".  This "medical examination" was, in actuality, an alcohol test and drug screen test, which was not consented to by Plaintiff.

118.   At all times herein mentioned, Plaintiff believed that she would suffer injury if she did not comply with the wishes of the individual defendants named in this cause of action.

119.   At all times herein mentioned, *California Gov't. Code* §815.2 was in full force and effect.  This code section provides that a public entity is liable for an injury caused by the act or omission of an employee acting within his or her scope of employment if, in fact, one or more of its employees could be held liable for that same act or omission.  Therefore, Defendant RIVERSIDE COUNTY is also named as a defendant in this cause of action.

120.   The aforesaid unlawful conduct of individual defendants HESTRIN, FABRIZIO, CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR was intentionally done and was extreme, outrageous, despicable, and was undertaken with the intention of causing, or taken in reckless disregard of the probability, the threat and fear of her personal and physical safety if she did not comply with the unlawful false imprisonment committed by the individual defendants named in this cause of action.

121.   Plaintiff has, in fact, sustained extreme emotional distress by the outrageous conduct of the individually-named defendants in this cause of action, and

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   is entitled to compensatory and general damages in an amount according to proof at
2   the trial of this action.

3       122.   Plaintiff is also entitled to an award of punitive damages against the
4   individually-named defendants in this cause of action.  The individually-named
5   defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI
6   CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously,
7   fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an
8   award of punitive damages as to each of them in an amount according to proof at the
9   trial of this action.  Facts supporting this punitive damage claim have been noted
10  above and, further, there are additional facts supporting the claim.  These facts,
11  include, but are not limited to, the following:

12       A)   Co-Defendant RIVERSIDE COUNTY, the employer of the
13  individually-named defendants in this cause of action, had an alcohol and drug testing
14  policy (Policy C-10) which did not provide for random or particularized alcohol
15  testing and drug screening.  Further, the MOU by and between Plaintiff's union and
16  Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or
17  particularized alcohol testing and drug screening.  At all times herein mentioned, the
18  individually-named defendants in this cause of action were well aware and
19  knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol
20  testing and drug screening.  Therefore, on October 31, 2016, the individually-named
21  defendants in this cause of action had to, and did, use trickery and artifice to obtain
22  alcohol and drug testing of Plaintiff.

23       B)   On October 31, 2016, Plaintiff MADRID was required to attend a
24  meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been
25  given his marching orders by the District Attorney of the County, Defendant
26  HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately
27  undergo an undefined "medical examination" at a County facility.  Plaintiff asked,
28  "what kind of medical examination", and the answer was "I don't know".  Plaintiff

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired.  Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)     On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D)     Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff

MADRID herself was a victim of a drugging, kidnapping, and sexual assault by a

male.  As a result, she came back from vacation to the District Attorney's office with

a lingering psychological disability of anxiety and depression because of that

unfortunate incident in Europe.  Despite this

awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a

scheme to deceive and then coerce Plaintiff to take an alcohol test and drug screen,

where no policy of RIVERSIDE COUNTY allowed it.  In exercising this scheme,

Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the

County, knew that they were violating the Fourth Amendment in procuring this

alcohol and drug testing.

    E)  By forcing Plaintiff to take an alcohol and drug test on October

31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-

one" discrimination.  There are at least three past and recent incidents in the District

Attorney's office where both were involved in letting deputy district attorneys in the

office "off the hook" for being arrested and then convicted for driving under the

influence.

    ■  On October 25, 2015, Defendant HESTRIN's former live-in

girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP

in San Bernardino.  On information and belief, she was convicted of the lesser offense

of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was

never placed on administrative leave, was not subjected to an in-house investigation

for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for

Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or

drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

    ■  On February 5, 2016, Deputy District Attorney Josh Degonia was

also arrested for DUI and pled no contest to that offense.  His sentence included 3

years probation and 46 days in jail to be served in home confinement.  Mr. Degonia

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

was placed on administrative leave by the District Attorney's Office of Defendant
RIVERSIDE COUNTY, however he was allowed to come back to work in his same
position.  Mr. Degonia also was not required to submit to alcohol testing and drug
screening.

■ On August 7, 2013, Deputy District Attorney Daniel Enrique
DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to
that offense.  This arrest and conviction occurred in San Diego County.  DeLimon
had also been involved in a previous incident in San Diego County in 2006 involving
an altercation with the police outside a bar.  Although DeLimon was not arrested in
the earlier 2006 incident, he was placed on paid administrative leave by the Riverside
County District Attorney's Office, for whom he was working at the time.  By the time
of the later 2013 arrest and conviction for DUI, DeLimon was working as a
veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE
COUNTY.  Although he was placed on administrative leave after the conviction, he
was not forced to submit to alcohol and drug testing, and he was not subjected to any
discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE
COUNTY awarded him with the coveted Prosecutor of the Year award while he was
or should have still been on probation for his 2013 DUI conviction.

■ Although not a prosecutor, Peter Scalisi was a criminal defense
lawyer who was hired as the Assistant Public Defender for the Public Defender's
Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the
time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and
Substance Abuse as existed in this case before the court.  Interestingly, when Deputy
District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013
(see above bullet point), he chose Peter Scalisi, then privately practicing, as the
attorney to represent him.  Scalisi himself, when he was hired and retained by the
Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September
2011, had been arrested and convicted for a second time DUI offense.  Nevertheless,

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■    Deputy District Attorney Tom Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)    On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)    On December 19, 2016, Ms. Madrid was required to attend an interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  in that report, including, but not limited to, the following:

2  ■     "By testing positive and being under the influence of marijuana
3  *while on paid administrative leave*, you violated Board Policy C-10. which states in
4  part, 'it is the county policy that employees shall not be under the influence of drugs
5  *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff
6  MADRID was not on paid administrative leave between the operative dates of
7  September 29, 2016 through October 25, 2016— instead, as noted, she was on
8  personal medical leave under the CFRA/ FMLA.

9  ■     "[Policy C-10] further states 'an employee must not use or possess
10  controlled substances (illegal drugs or prescription drugs without a prescription) *at*
11  *any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-
12  10.  Policy C-10 does not prevent an employee from using controlled substance or
13  illegal drugs "at any time"; rather, it merely prevents the use of such substances either
14  while on duty or which would adversely affect an employee's performance while on
15  duty.

16  ■     As to Plaintiff's statement of marijuana use prior to September
17  29, 2016, Commander Berakovich negligently or intentionally relied on the "while on
18  duty" specification to include "standby" and/or  "on call" status as applying to
19  Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's
20  Office, Plaintiff MADRID has never been in a position where she was placed on
21  either "standby" or "on call status", a fact known to management in the District
22  Attorney's office of Defendant RIVERSIDE COUNTY.

23         Defendants HESTRIN and FABRIZIO used this erroneous investigative
24  report by Commander Berakovich to terminate Plaintiff, knowing that he was
25  incorrect in his assessments, and further knowing that Plaintiff's right to be free from
26  unreasonable searches and seizures under both article 1, section 13 of the California
27  Constitution and the Fourth Amendment to the United States Constitution was
28  deliberately violated on October 31, 2016 and thereafter.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

**<u>SIXTH CAUSE OF ACTION</u>**

**(VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I, SECTION 7 ADDRESSING "DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW— CALIFORNIA BANE ACT RE *CALIFORNIA CIVIL CODE SECTION 52.1*— BROUGHT BY PLAINTIFF AGAINST DEFENDANTS RIVERSIDE COUNTY, MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE INVESTIGATOR AND DOES 2 THROUGH 50).**

123.   Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-122, as though fully set forth.

124.   At all times herein mentioned, article 1, section 7 of the California Constitution provides that a citizen of this state may not be deprived of life, liberty, or due process of law.

125.   At all times herein mentioned, *California Civil Code* §52.1, otherwise known as the Bane Act,  provided in pertinent part as follows:

" (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

(c) An action brought pursuant to subdivision (a) or (b) may be filed either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has his or her place of business...."

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

126.    By engaging in the unlawful conduct more fully described in other paragraphs of this Complaint— in particular paragraphs 39 through 44— Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of Defendant RIVERSIDE COUNTY violated the rights of Plaintiff to be free from deprivation of life, liberty, or due property without due process of law. This violation of constitutional rights directly led to Plaintiff's termination on March 29, 2017.

127.    Further, at all times herein mentioned, the individually-named defendants in this cause of action, acting on behalf of Defendant RIVERSIDE COUNTY, interfered by threat, intimidation, and coercion with Plaintiff's enjoyment of her constitutional rights under the California Constitution, article 1, section 7.

128.    By the terms of the Bane Act, set forth above, Plaintiff is entitled to the damages and remedies provided under *California Civil Code* §52.  Section 52 allows the following types of damages in this cause of action: "actual" damages, meaning special and general damages, punitive damages, and, also, allows for attorney's fees in the court's discretion.

129.    As a direct consequence of the aforesaid violation of constitutional rights, the named defendants herein used "fruit of the poisonous tree" to terminate Plaintiff.

130.    As a direct result of her termination, Plaintiff has sustained and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

131.    Plaintiff, if the prevailing party on this cause of action, is entitled to her reasonable attorney's fees in an amount determined by the court after trial (*California Civil Code* §52[b][3]).

132.    Plaintiff is also entitled to an award of punitive damages against the individually-named defendants in this cause of action (i.e. Despite the Bane Act, Plaintiff cannot obtain punitive damages from Defendant RIVERSIDE COUNTY by

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

virtue of the absolute immunity provided by *California Gov't Code* §818).  The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action.  Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim.  These facts, include, but are not limited to, the following:

A)     Co-Defendant RIVERSIDE COUNTY, the employer of the individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening.  Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening.  At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening.  Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B)     On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility.  Plaintiff asked, "what kind of medical examination", and the answer was "I don't know".  Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired.  Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators. The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on Plaintiff. They also did not have her voluntary and uncoerced consent. Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

        C) On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present. Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside. Ultimately, the drug test was positive for marijuana and negative for all other controlled substances. The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave). Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree." All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

        D) Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012. Plaintiff MADRID herself was a victim of a drugging and sexual assault by a male. As a result, she came back from vacation to the District Attorney's office with a lingering

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

60

1   psychological disability of anxiety and depression because of that unfortunate

2   incident in Europe.  Despite this awareness and knowledge, Defendants HESTRIN

3   and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an

4   alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it.

5   In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law

6   enforcement officials in the County, knew that they were violating the Fourth

7   Amendment in procuring this alcohol and drug testing.

8           E)      By forcing Plaintiff to take an alcohol and drug test on October

9   31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-

10  one" discrimination.  There are at least three past and recent incidents in the District

11  Attorney's office where both were involved in letting deputy district attorneys in the

12  office "off the hook" for being arrested and then convicted for driving under the

13  influence.

14          ■       On October 25, 2015, Defendant HESTRIN's former live-in

15  girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP

16  in San Bernardino.  On information and belief, she was convicted of the lesser offense

17  of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was

18  never placed on administrative leave, was not subjected to an in-house investigation

19  for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for

20  Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or

21  drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

22          ■       On February 5, 2016, Deputy District Attorney Josh Degonia was

23  also arrested for DUI and pled no contest to that offense.  His sentence included 3

24  years probation and 46 days in jail to be served in home confinement.  Mr. Degonia

25  was placed on administrative leave by the District Attorney's Office of Defendant

26  RIVERSIDE COUNTY, however he was allowed to come back to work in his same

27  position.  Mr. Degonia also was not required to submit to alcohol testing and drug

28  screening.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1    ■  On August 7, 2013, Deputy District Attorney Daniel Enrique

2 DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to

3 that offense.  This arrest and conviction occurred in San Diego County.  DeLimon

4 had also been involved in a previous incident in San Diego County in 2006 involving

5 an altercation with the police outside a bar.  Although DeLimon was not arrested in

6 the earlier 2006 incident, he was placed on paid administrative leave by the Riverside

7 County District Attorney's Office, for whom he was working at the time.  By the time

8 of the later 2013 arrest and conviction for DUI, DeLimon was working as a

9 veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE

10 COUNTY.  Although he was placed on administrative leave after the conviction, he

11 was not forced to submit to alcohol and drug testing, and he was not subjected to any

12 discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE

13 COUNTY awarded him with the coveted Prosecutor of the Year award while he was

14 or should have still been on probation for his 2013 DUI conviction.

15    ■  Although not a prosecutor, Peter Scalisi was a criminal defense

16 lawyer who was hired as the Assistant Public Defender for the Public Defender's

17 Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the

18 time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and

19 Substance Abuse as existed in this case before the court.  Interestingly, when Deputy

20 District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013

21 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the

22 attorney to represent him.  Scalisi himself, when he was hired and retained by the

23 Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September

24 2011, had been arrested and convicted for a second time DUI offense.  Nevertheless,

25 Defendant RIVERSIDE COUNTY did not place him on probation or administrative

26 leave with pay; rather he was allowed to continue as the Assistant Public Defender for

27 the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too,

28 never had to undergo either alcohol and/or drug testing by his employer.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1     ■     Deputy District Attorney Tom Mulhere previously was a

2  prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY,

3  who was fired around 2008 by the former District Attorney, Rod Pacheco, for being

4  convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf

5  of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy

6  district attorney.

7       F)     On information and belief, from January 1, 2016 to the present

8  date, numerous deputy district attorneys, as well as civilian staff members,. employed

9  by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on

10  "off duty" hours and during their leisure time.  If these marijuana-using deputy

11  district attorneys and other staff members allowed their marijuana use to affect their

12  job performance and/or the operations of the District Attorney's office, they too

13  would be subjected to discipline as being in violation of Defendant RIVERSIDE

14  COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant

15  RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a

16  random or individualized basis.

17       G)    On December 19, 2016, Ms. Madrid was required to attend an

18  interview by District Attorney Investigative Commander Ed Berakovich.  She was

19  given her *Miranda* rights prior to the interview and she agreed to waive them.  During

20  that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In

21  particular, she told the Commander that she had been using marijuana while she was

22  off work on authorized CFRA/ FMLA medical leave  between September 29, 2016

23  and October 25, 2016.  Commander Berakovich wrote a report about that interview

24  and his conclusions from the interview.  He made several mistakes and misstatements

25  in that report, including, but not limited to, the following:

26     ■     "By testing positive and being under the influence of marijuana

27  *while on paid administrative leave*, you violated Board Policy C-10. which states in

28  part, 'it is the county policy that employees shall not be under the influence of drugs

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

1  *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff

2  MADRID was not on paid administrative leave between the operative dates of

3  September 29, 2016 through October 25, 2016— instead, as noted, she was on

4  personal medical leave under the CFRA/ FMLA.

5        ■        "[Policy C-10] further states 'an employee must not use or possess

6  controlled substances (illegal drugs or prescription drugs without a prescription) *at*

7  *any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-

8  10.  Policy C-10 does <u>not</u> prevent an employee from using controlled substance or

9  illegal drugs "at any time"; rather, it merely prevents the use of such substances either

10  while on duty or which would adversely affect an employee's performance while on

11  duty.

12        ■        As to Plaintiff's statement of marijuana use prior to September

13  29, 2016, Commander Berakovich negligently or intentionally relied on the "while on

14  duty" specification to include "standby" and/or  "on call" status as applying to

15  Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's

16  Office, Plaintiff MADRID has never been in a position where she was placed on

17  either "standby" or "on call status", a fact known to management in the District

18  Attorney's office of Defendant RIVERSIDE COUNTY.

19        Defendants HESTRIN and FABRIZIO used this erroneous investigative

20  report by Commander Berakovich to terminate Plaintiff, knowing that he was

21  incorrect in his assessments, and further knowing that Plaintiff's right to be free from

22  unreasonable searches and seizures under both article 1, section 13 of the California

23  Constitution and the Fourth Amendment to the United States Constitution was

24  deliberately violated on October 31, 2016 and thereafter.

25  ///

26  ///

27  ///

28  ///

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

**SEVENTH CAUSE OF ACTION**

**(VIOLATION OF CONSTITUTIONAL RIGHT TO DUE PROCESS**

**AND EQUAL PROTECTION OF THE LAW— FOURTEENTH**

**AMENDMENT TO THE UNITED STATES CONSTITUTION RE**

**42 U.S.C. SECTIONS 1983, ET SEQ.— BROUGHT BY PLAINTIFF**

**AGAINST DEFENDANTS RIVERSIDE COUNTY, MIKE HESTRIN,**

**VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE**

**INVESTIGATOR AND DOES 2 THROUGH 50**).

133.   Plaintiff realleges and incorporates herein those matters contained in paragraphs 4-13, 14-33, and 39-132, as though fully set forth.

134.   At all times herein mentioned, the Fourteenth Amendment to the United States Constitution provided that "all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

135.   Based on the allegations contained in this entire Complaint, and incorporated provisions as noted above, the above-named individual defendants, acting on behalf of and with the ratification of Defendant RIVERSIDE COUNTY, separately and each violated the Fourteenth Amendment's proscription against deprivation of Plaintiff's liberty interest (violations of her Fourth Amendment rights as contained in the First Cause of Action and false imprisonment as contained in Fifth Cause of Action of this Complaint), Plaintiff's property interest in her long-time job as a deputy district attorney for Defendant Riverside County, and also denied her equal protection under the law (otherwise known as "class-of-one discrimination") in that she was treated differently from those other deputy district attorneys who broke the law of the State of California by his or her convictions of DUI and who managed

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   to retain their jobs.

2       136.   The manner in which Plaintiff was treated by her employer and its

3   authorized agents— the individually-named defendants in this cause of action whose

4   actions were supported and ratified by their employer, Defendant RIVERSIDE

5   COUNTY, "shocks the conscience".

6       137.   As a direct result of this aforesaid Fourth Amendment violation,

7   Plaintiff has sustained, and will continue to sustain for a period of time in the future,

8   compensatory and general damages in an amount according to proof.

9       138.   Plaintiff, if the prevailing party, is entitled to her reasonable attorney's

10  fees and costs in prosecuting this cause of action in an amount according to proof at

11  trial under the statutory scheme of 42 U.S.C. §§1983, et seq.

12      139.   The individually-named defendants in this cause of action— MIKE

13  HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE

14  INVESTIGATOR— have acted maliciously, fraudulently, oppressively, and

15  despicably, and therefore Plaintiff is entitled to an award of punitive damages as to

16  each of them in an amount according to proof at the trial of this action.  Facts

17  supporting this punitive damage claim have been noted above and, further, there are

18  additional facts supporting the claim.  These facts, include, but are not limited to, the

19  following:

20          A)    Co-Defendant RIVERSIDE COUNTY, the employer of the

21  individually-named defendants in this cause of action, had an alcohol and drug testing

22  policy (Policy C-10) which did not provide for random or particularized alcohol

23  testing and drug screening.  Further, the MOU by and between Plaintiff's union and

24  Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or

25  particularized alcohol testing and drug screening.  At all times herein mentioned, the

26  individually-named defendants in this cause of action were well aware and

27  knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol

28  testing and drug screening.  Therefore, on October 31, 2016, the individually-named

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

1   defendants in this cause of action had to, and did, use trickery and artifice to obtain

2   alcohol and drug testing of Plaintiff.

3            B)      On October 31, 2016, Plaintiff MADRID was required to attend a

4   meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been

5   given his marching orders by the District Attorney of the County, Defendant

6   HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately

7   undergo an undefined "medical examination" at a County facility.  Plaintiff asked,

8   "what kind of medical examination", and the answer was "I don't know".  Plaintiff

9   was also told that, if she did not attend the "medical examination", it would be

10  considered insubordination and she would be fired.  Plaintiff was then told that she

11  would be taken to the County facility for the "medical examination" by Defendants

12  HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers

13  as district attorney investigators.  The individually-named defendants did not obtain a

14  search warrant to have the County facility conduct alcohol and drug testing on

15  Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the

16  individually-named defendants did not have probable cause to believe that Plaintiff

17  had used either alcohol or controlled substances on that particular day, or at any time

18  in the past.

19           C)      On October 31, 2016, once arriving at the County's facility for the

20  so-called "medical examination", no physician was present.  Instead, a nurse or

21  technician administered a breathalyzer exam for alcohol screening and also required

22  Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited

23  outside.  Ultimately, the drug test was positive for marijuana and negative for all

24  other controlled substances.  The positive drug test for marijuana was ultimately used

25  to terminate Plaintiff's employment, even though she was not "on duty" for at least

26  one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because

27  the drug screen test, which tested positive for marijuana, was the sole basis for

28  terminating Plaintiff, and because the drug test was taken without probable cause,

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

67

1  without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the

2  Fourth Amendment to the United States Constitution and was "fruit of the poisonous

3  tree." All of the individually-named defendants in this cause of action were law

4  enforcement officials who were well aware that the drug test was taken in violation of

5  the Fourth Amendment, yet they terminated her anyway.

6            D)     Defendants HESTRIN and, on information and belief, FABRIZIO,

7  were knowledgeable and well aware of the fact that Plaintiff MADRID, while

8  working for the District Attorney's office, had a psychological disability resulting

9  from an incident in Europe occurring to Plaintiff while on vacation in 2012. Plaintiff

10 MADRID herself was a victim of a drugging and sexual assault by a male. As a

11 result, she came back from vacation to the District Attorney's office with a lingering

12 psychological disability of anxiety and depression because of that unfortunate

13 incident in Europe. Despite this awareness and knowledge, Defendants HESTRIN

14 and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an

15 alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it.

16 In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law

17 enforcement officials in the County, knew that they were violating the Fourth

18 Amendment in procuring this alcohol and drug testing.

19            E)     By forcing Plaintiff to take an alcohol and drug test on October

20 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-

21 one" discrimination. There are at least three past and recent incidents in the District

22 Attorney's office where both were involved in letting deputy district attorneys in the

23 office "off the hook" for being arrested and then convicted for driving under the

24 influence.

25       ■    On October 25, 2015, Defendant HESTRIN's former live-in

26 girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP

27 in San Bernardino. On information and belief, she was convicted of the lesser offense

28 of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

■    On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense.  His sentence included 3 years probation and 46 days in jail to be served in home confinement.  Mr. Degonia was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position.  Mr. Degonia also was not required to submit to alcohol testing and drug screening.

■    On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense.  This arrest and conviction occurred in San Diego County.  DeLimon had also been involved in a previous incident in San Diego County in 2006 involving an altercation with the police outside a bar.  Although DeLimon was not arrested in the earlier 2006 incident, he was placed on paid administrative leave by the Riverside County District Attorney's Office, for whom he was working at the time.  By the time of the later 2013 arrest and conviction for DUI, DeLimon was working as a veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE COUNTY.  Although he was placed on administrative leave after the conviction, he was not forced to submit to alcohol and drug testing, and he was not subjected to any discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE COUNTY awarded him with the coveted Prosecutor of the Year award while he was or should have still been on probation for his 2013 DUI conviction.

■    Although not a prosecutor, Peter Scalisi was a criminal defense lawyer who was hired as the Assistant Public Defender for the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

69

time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and Substance Abuse as existed in this case before the court.  Interestingly, when Deputy District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013 (see above bullet point), he chose Peter Scalisi, then privately practicing, as the attorney to represent him.  Scalisi himself, when he was hired and retained by the Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September 2011, had been arrested and convicted for a second time DUI offense.  Nevertheless, Defendant RIVERSIDE COUNTY did not place him on probation or administrative leave with pay; rather he was allowed to continue as the Assistant Public Defender for the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too, never had to undergo either alcohol and/or drug testing by his employer.

■      Deputy District Attorney Tim Mulhere previously was a prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY, who was fired around 2008 by the former District Attorney, Rod Pacheco, for being convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy district attorney.

F)      On information and belief, from January 1, 2016 to the present date, numerous deputy district attorneys, as well as civilian staff members,. employed by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on "off duty" hours and during their leisure time.  If these marijuana-using deputy district attorneys and other staff members allowed their marijuana use to affect their job performance and/or the operations of the District Attorney's office, they too would be subjected to discipline as being in violation of Defendant RIVERSIDE COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a random or individualized basis.

G)      On December 19, 2016, Ms. Madrid was required to attend an

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

70

interview by District Attorney Investigative Commander Ed Berakovich.  She was given her *Miranda* rights prior to the interview and she agreed to waive them.  During that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In particular, she told the Commander that she had been using marijuana while she was off work on authorized CFRA/ FMLA medical leave  between September 29, 2016 and October 25, 2016.  Commander Berakovich wrote a report about that interview and his conclusions from the interview.  He made several mistakes and misstatements in that report, including, but not limited to, the following:

■      "By testing positive and being under the influence of marijuana *while on paid administrative leave*, you violated Board Policy C-10. which states in part, 'it is the county policy that employees shall not be under the influence of drugs *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff MADRID was not on paid administrative leave between the operative dates of September 29, 2016 through October 25, 2016— instead, as noted, she was on personal medical leave under the CFRA/ FMLA.

■      "[Policy C-10] further states 'an employee must not use or possess controlled substances (illegal drugs or prescription drugs without a prescription) *at any time*."  Commander Berakovich negligently or deliberately mis-cited Policy C-10.  Policy C-10 does <u>not</u> prevent an employee from using controlled substance or illegal drugs "at any time"; rather, it merely prevents the use of such substances either while on duty or which would adversely affect an employee's performance while on duty.

■      As to Plaintiff's statement of marijuana use prior to September 29, 2016, Commander Berakovich negligently or intentionally relied on the "while on duty" specification to include "standby" and/or  "on call" status as applying to Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's Office, Plaintiff MADRID has never been in a position where she was placed on either "standby" or "on call status", a fact known to management in the District

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  Attorney's office of Defendant RIVERSIDE COUNTY.

2      Defendants HESTRIN and FABRIZIO used this erroneous investigative

3  report by Commander Berakovich to terminate Plaintiff, knowing that he was

4  incorrect in his assessments, and further knowing that Plaintiff's right to be free from

5  unreasonable searches and seizures under the Fourth Amendment to the United States

6  Constitution was deliberately violated on October 31, 2016 and thereafter.

7

8              **EIGHTH CAUSE OF ACTION**

9   **(VIOLATION OF RIGHT TO PRIVACY UNDER CALIFORNIA**

10  **CONSTITUTION, ARTICLE 1, SECTION 1— CALIFORNIA BANE**

11  **ACT RE *CALIFORNIA CIVIL CODE SECTION 52.1*— BROUGHT BY**

12  **PLAINTIFF AGAINST DEFENDANTS RIVERSIDE COUNTY, MIKE**

13  **HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, DOE 1 FEMALE**

14  **INVESTIGATOR AND DOES 2 THROUGH 50**).

15      140.   Plaintiff realleges and incorporates herein those matters contained in

16  paragraphs 4-13, 14-33, and 39-139, as though fully set forth.

17      141.   At all times herein mentioned, article 1, section 1 of the California

18  Constitution provided that: "[A]ll people are by nature free and independent and have

19  inalienable rights. Among these are enjoying and defending life and liberty,

20  acquiring, possessing, and protecting property, and pursuing and obtaining safety,

21  happiness, and privacy."  Article 1, section 1 protected the "privacy" rights of

22  Plaintiff MADRID.

23      142.   At all times herein mentioned, *California Civil Code* §52.1, otherwise

24  known as the Bane Act,  provided in pertinent part as follows:

25      " (b) Any individual whose exercise or enjoyment of rights secured by

26  the Constitution or laws of the United States, or of rights secured by the Constitution

27  or laws of this state, has been interfered with, or attempted to be interfered with, as

28  described in subdivision (a), may institute and prosecute in his or her own name and

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to eliminate a pattern or practice of conduct as described in subdivision (a).

(c) An action brought pursuant to subdivision (a) or (b) may be filed either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which a person whose conduct complained of resides or has his or her place of business...."

143.   By engaging in the unlawful conduct more fully described in other paragraphs of this Complaint— in particular paragraphs 39 through 44— Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of Defendant RIVERSIDE COUNTY violated the rights of Plaintiff to be free from unreasonable and warrantless searches and seizures guaranteed to every citizen of this state.  This violation of constitutional rights directly led to Plaintiff's termination on March 29, 2017.

144.   By engaging in the unlawful conduct more fully described in other paragraphs of this Complaint— in particular paragraphs 39 through 44— Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of Defendant RIVERSIDE COUNTY violated the rights of Plaintiff to be free from invasions of the privacy interest of Plaintiff MADRID that is guaranteed to every citizen of this state. This violation of constitutional rights directly led to Plaintiff's termination on March 29, 2017.

145.   Facts supporting this claim that Plaintiff MADRID's privacy interest, guaranteed under article 1, section 1 of the California Constitution, was violated by the said actions of Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR, acting on behalf of and with the ratification of their employer— Defendant, RIVERSIDE COUNTY, include, but are not limited to, the

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

following:

A)    As noted above in this cause of action, the particular unlawful conduct set forth in paragraphs 39-44 of this Complaint;

B)    The fact that Defendant, RIVERSIDE COUNTY, did not have any drug testing policy or requirement attached to either Plaintiff's employment with Defendant RIVERSIDE COUNTY;

C)    The fact that Plaintiff's union MOU did not have drug testing policy or requirement for the conduction of a "fitness for duty" examination;

D)    The fact that Plaintiff was forced to submit to alcohol testing and a drug screen test without any reasonable cause or suspicion (i.e. she was told that she would to attend the so-called "medical examination" as part of the "fitness for duty" examination, and then her liberty was restrained by peace officers who forcibly took her to the testing site);

E)    The fact that Plaintiff was forced/ coerced, and/or by artifice and trickery, to have a so-called "medical examination" at the County's facility on October 31, 2016 (i.e. the individually-named defendants in this cause of action were law enforcement officials who lied to Plaintiff about a "medical examination" being required under the "fitness for duty" examination, and instead had peace officers accompany to her an alcohol test and drug screen against her will);

F)    The fact that, for a period of at least one month prior to the October 31, 2016 alcohol test and drug screening, Plaintiff was off work on her own time pursuant to an authorized CFRA/ FMLA medical leave (i.e. if any drug such as marijuana would have shown up on the drug screen of October 31, 2016, it would necessarily have to have been ingested or used during a period when she was "off duty", thereby demonstrating that Plaintiff could not have possibly violated Defendant RIVERSIDE COUNTY's C-10 Alcohol and Substance Abuse Policy).

G)    The fact that Plaintiff was not given her *Miranda* warnings by any of the individual defendants named in this cause of action before forcibly transporting

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

74

her to the County facility for the alcohol and drug screen on October 31, 2016; and,

H)      The fact that Plaintiff was forced to take an alcohol test and drug screen under the auspices that she was having a "fitness for duty" examination arising out of the investigation into workplace violence allegations against Plaintiff by a colleague, when in fact Plaintiff had been "cleared" of any wrongdoing as a result of that investigation.

146.  By the terms of the Bane Act, set forth above, Plaintiff is entitled to the damages and remedies provided under *California Civil Code* §52.  Section 52 allows the following types of damages in this cause of action: "actual" damages, meaning special and general damages, punitive damages, and, also, allows for attorney's fees in the court's discretion.

147.  As a direct consequence of the aforesaid violation of constitutional rights, the named defendants herein used "fruit of the poisonous tree" to terminate Plaintiff.  Further, in obtaining the drug screen sample, which tested positive for marijuana, invaded her liberty interest and her privacy interest, and denied her due process of law, as guaranteed by pertinent provisions of the California Constitution.

148.  As a direct result of her termination, Plaintiff has sustained and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

149.  Plaintiff, if the prevailing party on this cause of action, is entitled to her reasonable attorney's fees in an amount determined by the court after trial (*California Civil Code* §52[b][3]).

150.  Plaintiff is also entitled to an award of punitive damages against the individually-named defendants in this cause of action (i.e. Despite the Bane Act, Plaintiff cannot obtain punitive damages from Defendant RIVERSIDE COUNTY by virtue of the absolute immunity provided by *California Gov't Code* §818).  The individually-named defendants in this cause of action— MIKE HESTRIN, VINCE FABRIZIO, HEIDI CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR— have

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

acted maliciously, fraudulently, oppressively, and despicably, and therefore Plaintiff is entitled to an award of punitive damages as to each of them in an amount according to proof at the trial of this action.  Facts supporting this punitive damage claim have been noted above and, further, there are additional facts supporting the claim.  These facts, include, but are not limited to, the following:

A)     Co-Defendant RIVERSIDE COUNTY, the employer of the individually-named defendants in this cause of action, had an alcohol and drug testing policy (Policy C-10) which did not provide for random or particularized alcohol testing and drug screening.  Further, the MOU by and between Plaintiff's union and Co-Defendant RIVERSIDE COUNTY similarly did not provide for random or particularized alcohol testing and drug screening.  At all times herein mentioned, the individually-named defendants in this cause of action were well aware and knowledgeable of the fact that no policy or clause in the MOU allowed for alcohol testing and drug screening.  Therefore, on October 31, 2016, the individually-named defendants in this cause of action had to, and did, use trickery and artifice to obtain alcohol and drug testing of Plaintiff.

B)     On October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, who had been given his marching orders by the District Attorney of the County, Defendant HESTRIN.  Plaintiff did attend the meeting and was told that she had to immediately undergo an undefined "medical examination" at a County facility.  Plaintiff asked, "what kind of medical examination", and the answer was "I don't know".  Plaintiff was also told that, if she did not attend the "medical examination", it would be considered insubordination and she would be fired.  Plaintiff was then told that she would be taken to the County facility for the "medical examination" by Defendants HEIDI CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR, both peace officers as district attorney investigators.  The individually-named defendants did not obtain a search warrant to have the County facility conduct alcohol and drug testing on

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff.  They also did not have her voluntary and uncoerced consent.  Further, the individually-named defendants did not have probable cause to believe that Plaintiff had used either alcohol or controlled substances on that particular day, or at any time in the past.

C)     On October 31, 2016, once arriving at the County's facility for the so-called "medical examination", no physician was present.  Instead, a nurse or technician administered a breathalyzer exam for alcohol screening and also required Plaintiff to use the toilet to give a urine sample, while the nurse or technician awaited outside.  Ultimately, the drug test was positive for marijuana and negative for all other controlled substances.  The positive drug test for marijuana was ultimately used to terminate Plaintiff's employment, even though she was not "on duty" for at least one month before the test (i.e. she was on authorized CFRA/ FMLA leave).  Because the drug screen test, which tested positive for marijuana, was the sole basis for terminating Plaintiff, and because the drug test was taken without probable cause, without a warrant, or without Plaintiff's uncoerced consent, it was unlawful under the Fourth Amendment to the United States Constitution and was "fruit of the poisonous tree."  All of the individually-named defendants in this cause of action were law enforcement officials who were well aware that the drug test was taken in violation of the Fourth Amendment, yet they terminated her anyway.

D)     Defendants HESTRIN and, on information and belief, FABRIZIO, were knowledgeable and well aware of the fact that Plaintiff MADRID, while working for the District Attorney's office, had a psychological disability resulting from an incident in Europe occurring to Plaintiff while on vacation in 2012.  Plaintiff MADRID herself was a victim of a drugging and sexual assault by a male.  As a result, she came back from vacation to the District Attorney's office with a lingering psychological disability of anxiety and depression because of that unfortunate incident in Europe.  Despite this awareness and knowledge, Defendants HESTRIN and FABRIZIO orchestrated a scheme to deceive and then coerce Plaintiff to take an

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

alcohol test and drug screen, where no policy of RIVERSIDE COUNTY allowed it. In exercising this scheme, Defendants HESTRIN and FABRIZIO, as the top law enforcement officials in the County, knew that they were violating the Fourth Amendment in procuring this alcohol and drug testing.

        E)     By forcing Plaintiff to take an alcohol and drug test on October 31, 2016, defendants HESTRIN and FABRIZIO also subjected Plaintiff to "class-of-one" discrimination.  There are at least three past and recent incidents in the District Attorney's office where both were involved in letting deputy district attorneys in the office "off the hook" for being arrested and then convicted for driving under the influence.

       ■     On October 25, 2015, Defendant HESTRIN's former live-in girlfriend, Deputy District Attorney Debra Postil, was arrested for a DUI by the CHP in San Bernardino.  On information and belief, she was convicted of the lesser offense of Vehicle Code section 23103(a) (commonly known as "wet reckless"), but was never placed on administrative leave, was not subjected to an in-house investigation for an alleged violation of Defendant RIVERSIDE COUNTY's C-10 Policy for Alcohol and Drug Substance Abuse, and did not have to undergo either alcohol or drug testing by the County's facility.  Also, Ms. Postil did not receive any discipline.

       ■     On February 5, 2016, Deputy District Attorney Josh Degonia was also arrested for DUI and pled no contest to that offense.  His sentence included 3 years probation and 46 days in jail to be served in home confinement.  Mr. Degonia was placed on administrative leave by the District Attorney's Office of Defendant RIVERSIDE COUNTY, however he was allowed to come back to work in his same position.  Mr. Degonia also was not required to submit to alcohol testing and drug screening.

       ■     On August 7, 2013, Deputy District Attorney Daniel Enrique DeLimon was arrested for DUI in San Diego County, and he eventually pled guilty to that offense.  This arrest and conviction occurred in San Diego County.  DeLimon

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

had also been involved in a previous incident in San Diego County in 2006 involving

an altercation with the police outside a bar.  Although DeLimon was not arrested in

the earlier 2006 incident, he was placed on paid administrative leave by the Riverside

County District Attorney's Office, for whom he was working at the time.  By the time

of the later 2013 arrest and conviction for DUI, DeLimon was working as a

veteran prosecutor in the District Attorney's Office for Defendant RIVERSIDE

COUNTY.  Although he was placed on administrative leave after the conviction, he

was not forced to submit to alcohol and drug testing, and he was not subjected to any

discipline.  In fact, in 2015, the District Attorney's office of Defendant RIVERSIDE

COUNTY awarded him with the coveted Prosecutor of the Year award while he was

or should have still been on probation for his 2013 DUI conviction.

■   Although not a prosecutor, Peter Scalisi was a criminal defense

lawyer who was hired as the Assistant Public Defender for the Public Defender's

Office of Defendant RIVERSIDE COUNTY in or about September, 2011.  At the

time, Defendant RIVERSIDE COUNTY had the same C-10 Policy for Alcohol and

Substance Abuse as existed in this case before the court.  Interestingly, when Deputy

District Attorney DeLimon was arrested and convicted for a DUI on August 7, 2013

(see above bullet point), he chose Peter Scalisi, then privately practicing, as the

attorney to represent him.  Scalisi himself, when he was hired and retained by the

Public Defender's Office of Defendant RIVERSIDE COUNTY in or about September

2011, had been arrested and convicted for a second time DUI offense.  Nevertheless,

Defendant RIVERSIDE COUNTY did not place him on probation or administrative

leave with pay; rather he was allowed to continue as the Assistant Public Defender for

the Public Defender's Office for Defendant RIVERSIDE COUNTY.  Scalisi, too,

never had to undergo either alcohol and/or drug testing by his employer.

■   Deputy District Attorney Tom Mulhere previously was a

prosecutor for the District Attorney's Office of Defendant RIVERSIDE COUNTY,

who was fired around 2008 by the former District Attorney, Rod Pacheco, for being

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

1   convicted of a DUI offense.  Defendants HESTRIN and FABRIZIO, acting on behalf
2   of Defendant RIVERSIDE COUNTY, have since hired Mr. Mulhere back as a deputy
3   district attorney.

4          F)     On information and belief, from January 1, 2016 to the present
5   date, numerous deputy district attorneys, as well as civilian staff members,. employed
6   by Defendant RIVERSIDE COUNTY, have used and continue to use marijuana on
7   "off duty" hours and during their leisure time.  If these marijuana-using deputy
8   district attorneys and other staff members allowed their marijuana use to affect their
9   job performance and/or the operations of the District Attorney's office, they too
10  would be subjected to discipline as being in violation of Defendant RIVERSIDE
11  COUNTY's C-10 Policy on Alcohol and Substance Abuse.  Nevertheless, Defendant
12  RIVERSIDE COUNTY has not implemented an alcohol and drug testing policy on a
13  random or individualized basis.

14         G)     On December 19, 2016, Ms. Madrid was required to attend an
15  interview by District Attorney Investigative Commander Ed Berakovich.  She was
16  given her *Miranda* rights prior to the interview and she agreed to waive them.  During
17  that interview, Ms. Madrid advised the Commander of her prior marijuana use.  In
18  particular, she told the Commander that she had been using marijuana while she was
19  off work on authorized CFRA/ FMLA medical leave  between September 29, 2016
20  and October 25, 2016.  Commander Berakovich wrote a report about that interview
21  and his conclusions from the interview.  He made several mistakes and misstatements
22  in that report, including, but not limited to, the following:

23         ■     "By testing positive and being under the influence of marijuana
24  *while on paid administrative leave*, you violated Board Policy C-10. which states in
25  part, 'it is the county policy that employees shall not be under the influence of drugs
26  *while on duty* or on a standby or on-call basis."  As noted previously herein, Plaintiff
27  MADRID was not on paid administrative leave between the operative dates of
28  September 29, 2016 through October 25, 2016— instead, as noted, she was on

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1    personal medical leave under the CFRA/ FMLA.

2          ■      "[Policy C-10] further states 'an employee must not use or possess

3    controlled substances (illegal drugs or prescription drugs without a prescription) *at*

4    *any time*."   Commander Berakovich negligently or deliberately mis-cited Policy C-

5    10.  Policy C-10 does <u>not</u> prevent an employee from using controlled substance or

6    illegal drugs "at any time"; rather, it merely prevents the use of such substances either

7    while on duty or which would adversely affect an employee's performance while on

8    duty.

9          ■      As to Plaintiff's statement of marijuana use prior to September

10   29, 2016, Commander Berakovich negligently or intentionally relied on the "while on

11   duty" specification to include "standby" and/or  "on call" status as applying to

12   Plaintiff.  In fact, in her entire history with the Riverside County District Attorney's

13   Office, Plaintiff MADRID has never been in a position where she was placed on

14   either "standby" or "on call status", a fact known to management in the District

15   Attorney's office of Defendant RIVERSIDE COUNTY.

16          Defendants HESTRIN and FABRIZIO used this erroneous investigative

17   report by Commander Berakovich to terminate Plaintiff, knowing that he was

18   incorrect in his assessments, and further knowing that Plaintiff's right to be free from

19   unreasonable searches and seizures under both article 1, section 13 of the California

20   Constitution and the Fourth Amendment to the United States Constitution was

21   deliberately violated on October 31, 2016 and thereafter.

22

23                        **<u>NINTH CAUSE OF ACTION</u>**

24   **(VIOLATION OF CALIFORNIA FAMILY RIGHTS ACT—**

25   *CALIFORNIA GOVERNMENT CODE SECTION 12945.2—*

26   **BROUGHT BY PLAINTIFF AGAINST DEFENDANT RIVERSIDE**

27   **COUNTY AND DOES 2 THROUGH 50)**

28          151.   Plaintiff realleges and incorporates herein those matters contained in

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1  paragraphs 4-13, 14-33, and 39-150, as though fully set forth.

2      152.   At all times herein mentioned, the California Fair Employment and

3  Housing Act was in full force and effect.  *California Government Code* §12945.2 is a

4  section of the Act which is otherwise known as the "California Family Rights Act"

5  (CFRA).

6      153.   On September 28, 2016, Deputy District Attorney Melanie Deutsch, also

7  employed by Defendant RIVERSIDE COUNTY,  alleged that she heard Plaintiff

8  MADRID make a comment about wishing to be dead and shooting up the workplace.

9  At all times herein mentioned, Plaintiff MADRID has categorically denied making

10 those comments.    Instead, because she was overworked with a responsibility of

11 handling more than 100 open criminal case files at any one time, Plaintiff MADRID

12 claims all that she said was "just shoot me", referring in exasperation to being

13 overworked.

14     154.   On September 29, 2016, the District Attorney's Office of Defendant

15 RIVERSIDE COUNTY  opened up an investigation into the claim made

16 by DDA Deutsch.  Initially, on September 29, 2016, Plaintiff MADRID was placed

17 on administrative leave with pay pending the outcome of this investigation into the

18 claim of DDA Deutsch.

19     155.   On September 30, 2016, Plaintiff MADRID, with the consent of the

20 District Attorney's Office of Defendant RIVERSIDE COUNTY, changed her leave

21 status from paid administrative leave to leave for a medical condition under the

22 California Family Rights Act (*California Gov't. Code* §12945.2) or the federal

23 equivalent, the Family Medical Leave Act (29 U.S.C. §§2601, et seq.).   This change

24 in leave status was the result of Plaintiff's evaluation by her own LMFT at Kaiser

25 Permanent and psychiatrist at Kaiser Permanente which: (1) indicated that Ms.

26 Madrid was "not a danger to herself or others"; and, (2) that she should remain off

27 work for medical reasons under CFRA/ FMLA leave.  The District Attorney's Office

28 agreed to change her leave status from "paid admin leave" to "CFRA/ FMLA leave".

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY
TRIAL**

Consequently, Plaintiff MADRID remained on leave status under the CFRA/ FMLA until October 30, 2016 and was due to return work at the DA's Office on October 31, 2016.

156.   On October 31, 2016, Ms. Madrid's return to work date, the District Attorney's Office of Defendant RIVERSIDE COUNTY placed her on "paid administrative leave" pending Defendant RIVERSIDE COUNTY's evaluation of her ability to adequately and safely perform the functions of her deputy district attorney position— as noted above, this evaluation was to take place on November 2, 2016. At that point, the District Attorney's Office of Defendant RIVERSIDE COUNTY had completed its investigation of the alleged workplace comments made by Plaintiff MADRID on September 28, 2016.  All that remained was for Plaintiff, under relevant provisions of the MOU, to attend a fitness for duty examination by a physician selected by Defendant RIVERSIDE COUNTY and obtain a clearance to the effect that she was not a danger to herself or to others.

157.   On this same date of October 31, 2016, Plaintiff MADRID was required to attend a meeting with Chief Deputy District Attorney, Defendant FABRIZIO, and Deputy Director of Administration Ginika Ezinwa.  At this meeting, the following occurred:

A)   Plaintiff MADRID was told that she had to sign a document placing her back on administrative leave with pay effective that day.   Neither the document nor anything stated in the meeting gave notice to Plaintiff that Defendant RIVERSIDE COUNTY was requiring her to submit to a test for alcohol and/or drugs. In fact, she was only told in this meeting that she would have to immediately attend a "medical examination" at the County's Health & Wellness Facility.

B)   Plaintiff was advised that, if she did not agree to immediately attend this "medical examination", that it would be "insubordination" and a terminable offense.

C)   Plaintiff was also forced to have two female District Attorney

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Investigators drive her to the facility for the "medical examination"— Defendants CHEBATAH and DOE 1 FEMALE INVESTIGATOR.  She was not permitted to voluntarily attend the "medical examination" and was told that she could not even drive her own vehicle to the facility.

D)    Plaintiff believed the so-called "medical examination" was going to be a "mental examination" regarding her fitness for duty.  However, no representative of Defendant RIVERSIDE COUNTY at this meeting advised Plaintiff that her belief was incorrect and/or that the "fitness for duty" examination by the County's physician was not the same as this "medical examination."

158.   At all times herein mentioned, Plaintiff MADRID did not believe that she could refuse to attend the so-called "medical examination", since her refusal to do so, as told to her at this October 31st meeting, would have resulted in her discharge from the employment.  In other words, Plaintiff had no rational choice but to attend the "medical examination" and to be accompanied by two District Attorney Investigators— Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR.

159.    On October 31, 2016, Defendants CHEBAHTAH and DOE 1 FEMALE INVESTIGATOR drove Plaintiff MADRID to the designated County facility for the "medical examination".  Plaintiff was not permitted to leave the sight of the two District Attorney investigators and was forced to do what they said.

160.    On October 31, 2016, upon arrival to the County's facility for the "medical examination", Plaintiff MADRID learned that no "medical examination" would in fact occur.  In fact, no physician was present and a "medical examination" did not occur.  What did occur was that Plaintiff was, under threat of losing her job, forced to submit to an alcohol and drug screen test.  Plaintiff's blood was drawn for the alcohol test by a nurse or technician and she was coerced into submitting to a urine sample test.  The nurse stood outside the bathroom door while Plaintiff was urinating into the test capsule.

161.   After completing the alcohol and drug screen test, the nurse advised

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff MADRID that her "fitness for duty" examination by a mental health professional selected by Defendant RIVERSIDE COUNTY nwould take place on November 2, 2016.  The mental health professional selected was Dr. Elizabeth White.

162.   On November 2, 2016, Plaintiff MADRID attended the fitness for duty examination with Dr. White, Defendant RIVERSIDE COUNTY's  designated mental health professional.  She was there for about 8 hours.  Plaintiff took personality tests and submitted to a long interview.  To this date, Plaintiff  has never been provided with a copy of Dr. White's report of this fitness for duty examination.  On information and belief, Dr. White's report ultimately informed Defendant RIVERSIDE COUNTY that Ms. Madrid was "not a danger to herself and/or to others."

163.   As of November 2, 2016, when Plaintiff was declared "fit for duty" by the County's mental health professional, this was the first opportunity for Defendant RIVERSIDE COUNTY to return to work from CFRA medical leave.  As of this date, the investigation into the workplace violence allegations against Plaintiff had been determined in her favor and she was declared "fit for duty".  However, at that point Defendant RIVERSIDE COUNTY apparently was waiting for the official results of the alcohol and drug screen test that is the subject of the constitutional and statutory causes of action alleged in this Complaint.  Defendant RIVERSIDE COUNTY did not officially learn that Plaintiff had tested positive for marijuana use until November 28, 2016.

164.   Plaintiff was never returned to her same position as Deputy District Attorney, Step IV, at any time after her CFRA medical leave expired on October 31, 2016.  From October 31, 2016 to the date of her termination on March 29, 2016, she had been placed on administrative leave with pay.  Plaintiff was informed in writing that she was terminated because of the drug screen test that was purportedly positive for marijuana on October 31, 2016, which was forcibly taken in violation of her constitutional and statutory rights as alleged herein in other causes of action.

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1   Because, as alleged in this Complaint, the positive marijuana test was "fruit of the
2   poisonous tree", the second and last opportunity for Defendant RIVERSIDE
3   COUNTY  to allow Plaintiff to return to work from authorized CFRA leave was on
4   November 28, 2016.

5        165.   Pertinent provisions of the California Code of Regulations require an
6   employer in this state, after granting a requested CFRA leave, to allow the employee
7   on leave to return to his or her same or comparable position upon the end of the
8   CFRA leave.  (2 CCR §11089[a][1]).  It is an unlawful employment practice in this
9   state for an employer, after granting the request for a CFRA leave, to refuse to
10  reinstate the employee to the same or comparable position at the end of the leave,
11  subject to specific defenses.  (2 CCR §11089[a][2]).  There are only two defenses for
12  the employer.  2 CCR §11089(d)(1) provides that reinstatement to the same or
13  comparable position is an employer's defense if the employee's employment would
14  have ceased or his or her hours would have been reduced.  2 CCR §11089(d)(2)
15  provides that reinstatement to the same or comparable position is an employer's
16  defense is that the employee is what is known as a "key employee"— as to this
17  second "key employee" defense, it is the employer's burden by a preponderance of
18  the evidence to demonstrate that <u>all</u> seven (7) different requirements for the defense
19  exist.

20       166.   Neither of the two employer defenses as noted in the immediately above
21  paragraph are available to Defendant RIVERSIDE COUNTY in this action.  As to the
22  "key employee" defense, there are absolutely no facts to suggest that Defendant
23  RIVERSIDE COUNTY relied on it when the County terminated her on March 29,
24  2017.  As to the first defense noted above— "if the employment would have
25  ceased....", the constitutional and statutory violations alleged in the other causes of
26  action in the Complaint, if true and accurate, would mean that Defendant
27  RIVERSIDE COUNTY could not rely on the same.

28       167.   On January 7, 2018, Plaintiff timely filed an administrative complaint

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

with the Department of Fair Employment and Housing, alleging violations of the California Family Rights Act and/or FMLA.  The DFEH issued a "right to sue" notice on the same date.  True and correct copies of the administrative complaint with the DFEH and the "right to sue" notice are collectively attached hereto as **Exhibit D**.

168.   As a direct result of Defendant RIVERSIDE COUNTY's violation of pertinent provisions of the CFRA, Plaintiff has sustained, and will continue to sustain for a period of time, compensatory and general damages in an amount according to proof at the trial of this action.

169.   Plaintiff, if the prevailing party, is entitled to her reasonable attorney's fees and costs pursuant to *California Government Code* §12965(b) in an amount according to proof at the trial of this action.

WHEREFORE, Plaintiff prays for the following relief:

On the First and Seventh Causes of Action:

1.   For compensatory and general damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

2.   For attorney's fees pursuant to 42 U.S.C. Sections 1983, et seq.

3.   For punitive damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

On the Second, Sixth, and Eighth Causes of Action:

1.   For compensatory and general damages against Defendants RIVERSIDE COUNTY,  HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

2.   For attorney's fees pursuant to *California Civil Code* §52(b)(3).

3.   For punitive damages against Defendants HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

On the Third Causes of Action:

1.   For compensatory and general damages against Defendants HESTRIN,

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1 FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

2     2.    For attorney's fees pursuant to 42 U.S.C. Sections 1983, et seq.

3     <u>On the Fourth and Fifth Causes of Action</u>:

4     1.    For compensatory and general damages against Defendants RIVERSIDE

5 COUNTY,  HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE

6 INVESTIGATOR.

7     2.    For punitive damages against Defendants HESTRIN, FABRIZIO,

8 CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

9     <u>On the Ninth Cause of Action</u>:

10     1.    For compensatory and general damages against Defendants RIVERSIDE

11 COUNTY,  HESTRIN, FABRIZIO, CHEBAHTAH, and DOE 1 FEMALE

12 INVESTIGATOR.

13     2.    For attorney's fees and expenses/ costs pursuant to *California*

14         *Government Code* §12965(b).

15     3.    For punitive damages against Defendants HESTRIN, FABRIZIO,

16 CHEBAHTAH, and DOE 1 FEMALE INVESTIGATOR.

17     <u>On All Causes of Action</u>:

18     1.    For costs of the suit herein incurred.

19     2.    For such other and further relief as this court may deem proper and just.

20

21 Dated: January 8, 2018         LAW OFFICES OF JOEL W. BARUCH, PC

22

23                 By

24                   Joel W. Baruch, Counsel for Plaintiff

25 ///

26 ///

27 ///

28 ///

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

## **DEMAND FOR JURY TRIAL**

1.      Plaintiff herein demands a trial by jury.

Dated: January 8, 2018                    LAW OFFICES OF JOEL W. BARUCH, PC


By _____

    Joel W. Baruch, Counsel for Plaintiff

**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1

**PROOF OF SERVICE**

2

3            I am employed in the county of Orange, State of California at **THE LAW OFFICES OF JOEL W. BARUCH.** I am over the age of 18 and not a party to the within action; my business address is 2020 Main Street, Suite 900, Irvine, CA 92614.

4

5            On January 8, 2018, I served the foregoing documents described as **FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed as follows:

6

7            Douglas C. Smith, Esq.
             SMITH LAW OFFICES
             4204 Riverwalk Parkway, Suite 250
8            Riverside, California 92505
             (951) 509-1355
9            (951) 509-1356 FAX
             DSmith@smitlaw.com
10

11           *Attorneys for Defendants*

12

13           **BY MAIL:** I enclosed the documents in a sealed envelope or package addressed to the persons listed above and (1) deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid, or (2) placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

14

15

16

17    XX     **BY COURT'S CM/ECF EFILING SERVICE:** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

18

19           **BY OVERNIGHT DELIVERY:** I enclosed the documents in a sealed envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses indicated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

20

21

22           **BY FAX TRANSMISSION:** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax number of the parties indicated above. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

23

24           **BY PERSONAL SERVICE:** I personally delivered the documents to the persons at the addresses indicated above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2)

25

26

27

28

                                                    1
                                                  POS

1  For a party, delivery was made to the party or by leaving the documents at the party's
2  residence with some person not younger than 18 years of age between the hours of eight in
   the morning and six in the evening.

3  **BY MESSENGER SERVICE:** I served the documents by placing them in an envelope or
4  package addressed to the persons at the addresses indicated above and providing them to a
   professional messenger service for service.

5  XX  **BY EMAIL TRANSMISSION**: I caused the aforementioned document(s) to be served
6  via electronic mail to the electronic addressee(s) listed on the attached mailing list. Such
   document was transmitted successfully from my e-mail address to the indicated
7  addressee(s).

8  I declare under penalty of perjury under the laws of the State of California that the above is
   true and correct.

9  Executed on January 8, 2018, at Irvine, California.

10

11                                                    Amy Land, Declarant

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
                                2
28                             POS